UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

UNITED STATES OF AMERICA

        - against -                        Docket No. 14 Cr.  130 (RPP)

TERRELL RATLIFF

              Defendant.
-------------------------------------------------------------x

**SENTENCING MEMORANDUM (LETTER)**

                                                        Natali J.H. Todd, Esq.
                                                        Attorney for Terrell Ratliff
                                                        26 Court Street, Suite 413
                                                        Brooklyn, New York 11242
                                                        (718) 797-3055
                                                        *natali_todd@yahoo.com*

LAW OFFICES OF
**NATALI J.H. TODD, P.C.**

---

**NATALI J.H. TODD**                                             26 COURT STREET
**MEMBER: NY & MA BAR**                                          SUITE 413
                                                                 BROOKLYN, NY 11242-1134

                                                                 Tel:  718-797-3055
                                                                 Fax: 718-504-3900
                                                                 E-mail: natali_todd@yahoo.com
                                                                 www.natalitoddlawyer.com

October 3, 2014

Filed via E.C.F.
Honorable Robert P. Patterson
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *U.S. v. Terrell Ratliff, 14 Cr. 130 (RPP)*
            *Letter in Aid of Sentencing*

Dear Judge Patterson:

      Terrell Ratliff is scheduled to appear before your Honor on October 23, 2014 to be sentenced, pursuant to his plea of guilty to Count One of the indictment which charges him with Conspiracy to commit Hobbes Act Robbery, in violation of Title 18 U.S.C. §1951 and 18 U.S.C. §3571.  This letter is submitted pursuant to Rule 32(f) of the Federal Rules of Criminal Procedure on behalf of Mr. Ratliff, and in an effort to aid the Court in the determination of the appropriate and reasonable sentence to be imposed upon Mr. Ratliff.

      As discussed more fully below, Mr. Ratliff respectfully requests that since the United States Sentencing Guidelines are not mandatory and should not be applied to the exclusion of other compelling and important factors, that the Court impose a sentence consistent with all of the factors set forth in Title 18 U.S.C §3553(a), Gall v. United States, 128 S.Ct. 586 (2007), Kimbrough v. United States, 128 S. Ct. 558 (2007); United States v. Booker, 125 S.Ct. 738

LAW OFFICES OF
**NATALI J.H. TODD, P.C.**

---

*U.S. v. Ratliff, 14 Cr. 130 (RPP)*

(2005), United States v. Cavera, 550 F.3d 180 (2d. Cir. 2008). In applying these factors, counsel urges the Court to sentence Mr. Ratliff to a below-guideline sentence given all of the circumstances, which includes a mandatory five year minimum sentence upon conviction of an open New York State robbery charge that is relevant conduct to this offense. Accordingly, the suggested below-guideline sentence is a reasonable sentence that is not greater than necessary to comply with the sentencing objectives described in Title 18 U.S.C §3553(a), as well as in Booker and its progeny, and is also a just and fair sentence.

## Procedural History

Twenty-three year-old Terrell Ratliff was arrested on a criminal complaint on February 18, 2014 while he was in state custody as of November 8, 2013, on an open robbery charge that is relevant conduct to the instant offense. He was brought to the Southern District of New York on February 18, 2014, pursuant to a writ and presented to the Magistrate Judge. He has remained in custody at the Metropolitan Correction Center since his presentment. Mr. Ratliff was subsequently indicted and arraigned on the instant indictment on February 27, 2014 for engaging in a conspiracy to commit Hobbes Act Robbery and the substantive act of committing a robbery in Atlantic City, New Jersey, on July 1, 2013.

Pursuant to a plea agreement dated June 17, 2014, Mr. Ratliff entered a guilty plea to count one of the indictment on July 7, 2014. The plea agreement provides for a stipulated guideline range of 33-41 months of imprisonment, based upon an adjusted offense level of 19 and given Mr. Ratliff's Criminal History Category of II. Either party is permitted to seek a non-

Law Offices Of
**NATALI J.H. TODD, P.C.**

---

*U.S. v. Ratliff, 14 Cr. 130 (RPP)*

guideline sentence based upon factors outlined in 18 U.S.C. §3553(a).

### The Pre Sentence Report

While there are statements of facts contained in the Pre sentence Report (hereinafter P.S.R.) to which Mr. Ratliff has no knowledge, Mr. Ratliff does not have any objections material to the guideline calculation.

### Defendant's Participation in the Instant Offense

Terrell Ratliff's participation in the instant offense includes conduct which occurred during this conspiracy and for which he is being prosecuted by the New York State authorities for conduct that is relevant conduct to the instant offense (*i.e.,* conduct that is part of the instant conspiracy conviction under U.S.S.G. §1B1.3). Mr. Ratliff recognizes and acknowledges that he violated the law and he makes no excuses for his involvement. He quickly accepted responsibility for his participation in the offense, thereby assisting the government in the timely prosecution of his own conduct which allowed for the court and the government to allocate well-needed resources elsewhere. In addition to any term of imprisonment that this court deems appropriate, there is the certain punishment that he will be serve a mandatory five years upon conviction of the state open case, and five years of parole supervision. All of these factors combined constitute a substantial punishment for his crimes.

Mr. Ratliff is not considered a leader or a manager and the two-level enhancement is driven by the estimated loss amount. Mr. Ratliff participated in the Atlantic City robbery during a period of his life when he was homeless, and sleeping in stairwells and hallways in various

U.S. v. Ratliff, 14 Cr. 130 (RPP)

apartment buildings. He was approached and asked if he wanted to make some money and without a dime in his pocket and his next meal uncertain, he responded yes and asked no questions. He was assured that no one would get hurt. The plan was disclosed to him within minutes of his arrival to the jewelry store and he followed the instructions that were given to him. In hindsight and given his current predicament, he wished he had simply said no but the idea of *easy* money at a time when he felt hopeless was far too alluring to him.

Mr. Ratliff has had a lot of time to think about his life and can envision no circumstance where he will appear in any court in his present posture as a criminal defendant, because he is determined to be the example for his son that his father never was to him.

### **Application of Title 18 U.S.C. 3553(a)**

The United States Sentencing Guidelines are not mandatory and should not be applied to the exclusion of other compelling and important factors. See U.S. v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). Given that the Guidelines are merely advisory, Gall v. United States suggest that a district court should begin sentencing proceedings by correctly calculating the applicable Guidelines Range which should "provide the starting point and the initial benchmark" for sentencing. Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 596 (2007). Beyond the mere mechanical calculation of the Guidelines which often result in bloated numbers, and in this case, driven by the loss amount, the sentencing court is free to fashion a sentence that is reasonable and appropriate based upon all of the sentencing factors set forth in §3553(a). Thus, the particularized circumstance of a defendant's case is important in determining the ultimate sentence, and may

LAW OFFICES OF
NATALI J.H. TODD, P.C.

U.S. v. Ratliff, 14 Cr. 130 (RPP)

warrant a departure from the guidelines.  United States v. Rivers, 50 F.3d 1126, 1130-31 (1995).

Mr. Ratliff asks that in sentencing him, that the court make an "individualized assessment" of him, recognizing that no one was hurt, and that he was not the mastermind behind his conviction.  See United States v. Jones, 531 F.3d 163, 170 (2d Cir. 2008).  Additionally, the Supreme Court in Pepper v. United States, 131 S. Ct. 380 (2011) has reaffirmed the principle that judges are free to impose a non-guidelines sentence on the basis of policy disagreements with the guidelines.

Mr. Ratliff urges the Court that in making an individualized assessment of him, and by applying the 3553(a) factors, that a below-guideline sentence is a reasonable sentence which is sufficient but not greater than necessary to comply with the sentencing objectives described in Title 18 U.S.C §3553(a), as well as following the directive in Booker and its progeny.  *See also*, United States v. Koon, 518 U.S. 81, 113 (1996) (holding that "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case a unique study in human failings that sometimes mitigate ... the crime and punishment to ensue").  Indeed, the Second Circuit has further observed that:

> [a]though the sentencing judge is obliged to consider all of the sentencing factors outlined in section 3553(a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all circumstances.

United States v. Jones, 460 F.3d 191, 195 (2d. Cir. 2006).

LAW OFFICES OF
**NATALI J.H. TODD, P.C.**

---

*U.S. v. Ratliff, 14 Cr. 130 (RPP)*

## Mr. Ratliff's Personal History and Characteristics

Twenty-three year-old Terrell Ratliff was born in Bedford Stuyvesant ("Bed-Stuy") during a period of time when Bed-Stuy boasted a level of constant, and daily violent crimes. This was the norm. Bed-Stuy became one of the largest African American communities in New York City in the 1960s after an overcrowded Harlem flocked to Bed-Stuy for greater housing availability. Between the 1960s-1990s, gang wars were common and social and racial divisions in the city contributed to the ongoing tensions which became a fabric of Bed-Stuy. When Rober F. Kennedy was elected senator in New York in 1964, he launched a study facing the urban poor in Bed-Stuy, which received almost no federal aid. Economic and social progress was slow to Bed-Stuy and the gangs took hold of the community which brought the usual proliferation of drugs and senseless violence. This was Terrell Ratliff's handicap, having been born in 1991 Bed-Stuy and being plagued by all of the social unrest, economic deprivation, gun violence, drugs, poverty and hopelessness that were not unique to his family.

When asked to describe what it was like growing up in Bed Stuy, Terrell describes witnessing constant violence up close and personal; people getting shot, stabbed, bitten by dogs, violent robberies, friends shooting each other for no reason at all, and a level of anger and despair that he thought was normal because this was his everyday experience. There were drugs everywhere; one did not have to go looking for it and the police were always in his neighborhood; as aggressive as they wanted to be. He would often visit his maternal grandmother in Brownsville and his paternal grandmother in East New York and witnessed the

LAW OFFICES OF
**NATALI J.H. TODD, P.C.**

---

*U.S. v. Ratliff, 14 Cr. 130 (RPP)*

same intense violence and aggressive police presence.  He thought this was normal because he knew nothing else.

  Terrell has a brother who is 24 years old and a sister who is twenty years old and has seen his father approximately seven times in his life.  Suffice to say he has no relationship with his father and terrible memories of his childhood when his father would infrequently appear after a long absence, and then disappear again.  He recalls when he was approximately five or six years old, his father showed up and promised to come back shortly to visit with him and his paternal siblings but never came back after Terrell got dressed and waited, and waited...  The next time he saw his father was when he was about to start Junior high school and attended his paternal brother's funeral at his mother's insistence.  He also figured he would get a chance to see his father whom he had not seen since he was a young child.  At the funeral, he learned his father had five other children and was constantly in and out of jail and in fact, his father was brought to his son's funeral from jail in shackles.  This image had a profoundly disturbing and lasting effect on Terrell.  His father never acknowledged him and that broke his heart but still held out hope that he could have a relationship with his father if he tried harder.  He last saw his father when he was in high school and finally came to the realization that his father has never cared or will ever care about him.  He believes that if his father had been a dad, and took the time to guide him through life, his life would have been positively and certainly different.

  Terrell and his two siblings were raised entirely by his mother who oftentimes worked double or tripple shifts to support and provide for him and his siblings.  This allowed him to be

LAW OFFICES OF
**NATALI J.H. TODD, P.C.**

---

*U.S. v. Ratliff, 14 Cr. 130 (RPP)*

on the streets on his bicycle, unsupervised for along hours after he got out of school at 3:00 p.m. Although there was a baby sitter, the baby sitter would simply tell Terrell and his brother not to go too far on their bikes. However, they would disappear for hours on their bicycles, oftentimes taking the train into Manhattan and simply wandering around the street and stores aimlessly for hours. This independence allowed him to forge relationships with the older boys and men in the community who were up to no good and offered to mentor him. Through these relationships, he was offered marijuana at 16 years old and has been smoking it since. Up until the time of his arrest in November 2013, he was smoking up to twenty marijuana cigarettes per day ( about 1/4 of an ounce per day). He does not drink alcohol or ingest any other controlled substance.

      Terrell's mother tried to protect her children from the streets and feared that the random gun violence was oftentimes too close so she moved her family (Terrell was approximately 12+ years old) to North Carolina but returned to Crown Heights, Brooklyn after a year. She had left a familiar violent neighborhood for the unknown violent neighborhood in North Carolina. Five years later, in seeking a semblance of normalcy, peace, and safety for her children, Ms. Ratliff left Crown Heights again, and moved to Allentown, PA. Terrell was about 19 years old. The first night of their arrival, there was a double homicide a few steps from their door-way. After a year of constant gun violence and living in fear, Ms. Ratliff returned to Crown Heights one year later in 2011. The family was homeless and lived in a shelter until September 2012.

      Mr. Ratliff describes that in order to stay in the shelter, they must sign in daily by a certain time. Because his mother was working a variety of jobs just to make ends meet, she

LAW OFFICES OF
**NATALI J.H. TODD, P.C.**

---

*U.S. v. Ratliff, 14 Cr. 130 (RPP)*

missed a daily sign in and they were asked not to return to the shelter. Homeless and sleeping in different friends and family's homes every night, they finally ran out of places where everyone could stay together. Completely homeless and with nowhere to go, Terrell started sleeping on roofs, in hallways and in stairwells of buildings. He was supported by strangers who would feed him or give him money. He describes this as a depressing and hopeless time for him. So on July 1, 2013, when he was asked if he wanted to make some money, given the fact that he was homeless and hopeless, he thought why not. Although he had no idea of how much money or what he had to do at that moment to get the money, he was too desperate to give the idea any serious thought.

Education/Athletic Achievements

Around the age of nine or ten years old, Terrell displayed athletic prowess at Basketball and later received two scholarships to Bishop Ford Catholic High School and was a member of the All Star Traveling Basketball Teams in the five Boroughs. Up until the age of eighteen he was a shooting guard and played for the Brooklyn USA team, Anisas All Stars, Juice All Stars and Staret City teams. He left the teams when his mother moved to Allentown, PA for one year.

Terrell graduated from PS-20 when he was twelve years old but attended Junior high school in North Carolina because his mother moved the family to get away from all of the gun violence in Bed-Stuy. A year later, the family returned to Brooklyn and enrolled Terrell at McClintock Junior High School and he graduated. He then attended Teacher's Prep High School in Brownsville, Brooklyn but was transferred to Frederick Douglas in the same school and later

LAW OFFICES OF
**NATALI J.H. TODD, P.C.**

---

*U.S. v. Ratliff, 14 Cr. 130 (RPP)*

to Bishop Ford. He eventually dropped out during the 11th grade because by then, he was smoking marijuana, hanging out with an older crowd, and had simply lost interest. He is currently preparing for the GED and has been taking classes since June 2014 at MCC. He is now in the step-2 level of his preparation. He has also enrolled in a drug abuse program since July 2014 and is expecting a certificate of completion sometime in September/October 2014.

Employment History

Terrell's mom has always worked; sometimes working three jobs. She has always instilled in him that employment brings independence and possibilities that can change his life, even if slowly. He believed her because she has done a terrific job at providing for him and his two siblings who are working and are self-sufficient.

In 2012, Terrell worked for one year at Justice Construction company renovating houses in Brooklyn. He also assisted with the basketball after-school program for several years from 2007 through 2011. His then coach felt he was so "gifted" and that Terrell could positively influence the lives of the younger kids. Terrell describes this period of his life as one of the most rewarding and defining periods of his young life. He was also happy to assist because he felt he had been given so much, and was grateful to be in a position to give back to a community that was supporting his dreams and aspirations

Future Goals

Terrell is the proud father of a three-year-old son and is determined to be a father that his son can look up to and be proud of, in spite of the lack of relationship with his father that he

LAW OFFICES OF
**NATALI J.H. TODD, P.C.**

---

*U.S. v. Ratliff, 14 Cr. 130 (RPP)*

sincerely believes has a direct impact upon where he is in his life. Being incarcerated for as long as he has, has given him the opportunity to reflect upon his conduct in the past, the underlying offense, and how he can change his direction upon his release. Although he grew up in a rough neighborhood, basketball was an escape and he wished he had understood what that meant at the time, given his age and raw talent. Upon his release, he would like to counsel inner-city "at risk" kids who are like him, and use his life as a teaching mechanism to encourage them to make better choices. He also wants to obtain his GED and ultimately take courses to prepare him to become a web page developer and computer repair technician.

Mr. Ratliff recognizes that he must be punished for his crimes. He however hopes that the court will take into consideration his entire life journey and exercise compassion in sentencing him, giving due consideration to his minimal role in the offense and although there was financial harm, there was no physical harm to anyone.

### §3553(a)(2) The Need for the Sentence Imposed

(A)   To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to provide Just Punishment for the offense;

Mr. Ratliff is deeply remorseful, and regretful for his role in the offense, and he knows better than anyone else, the life altering consequences of his choice, including the loss of being a father to his son at this critical stage of his young life, as well as the difficulty of finding gainful employment as an ex-convict. His involvement in the instant offense, giving rise to this conviction has caused his mother tremendous stress and embarrassment because his other two

LAW OFFICES OF
**NATALI J.H. TODD, P.C.**

*U.S. v. Ratliff, 14 Cr. 130 (RPP)*

siblings have never had any conflict with the law.

In speaking with his mother, she is clearly frustrated because although her children grew up amidst violence in the neighborhood and she tried to get away from it twice by moving to two different states, she always encouraged her children to stay away from the influences that could land them in jail. But here we are. Although Terrell reflects that it was only a matter of time before he ended up in jail and facing serious time in prison, he cannot foresee any circumstance that can cause him to engage in any future criminal conduct. He hopes never to be in his present posture as a defendant in any future criminal proceedings. These life altering consequences can serve as an effective deterrent and a lengthy prison term is not necessary in this case.

A sentence below the guideline range can accomplish all of the goals and objectives of this §3553(a) factor. The court should bear in mind that he is facing a mandatory sentence of at least five years upon a conviction of his open state case, and five years of parole supervision. As such, the sentence proposed - with or without the consideration of the state conviction - is an appropriate sentence to sufficiently reflect society's displeasure of the act of robbery as a serious offense, and will promote respect for the law and provide just punishment.

(B)   To Afford Adequate Deterrence to Criminal Conduct and ( C ) to Protect
      the public from further crimes of the defendant;

Mr. Ratliff's punishment should be tempered with fairness with the expectation that he is capable of rehabilitation. There is no doubt that Mr. Ratliff faces a significant sentence in toto

**LAW OFFICES OF**
**NATALI J.H. TODD, P.C.**

---

*U.S. v. Ratliff, 14 Cr. 130 (RPP)*

because he will be sentenced separately on his open state case to at least a mandatory minimum of five years upon conviction, in addition to his sentence in this case. In applying the 3553(a) factors and giving due consideration to what is fair and just, a sentence below the guideline range, to be served in addition to his state sentence, followed by a period of supervision to be served in addition to five years of parole on his state conviction, is sufficient but not greater than necessary to comply with the sentencing objectives described in Title 18 U.S.C §3553(a), as well as in Booker and its progeny. Such a sentence is not only appropriate, but would serve the ends of justice.

The suggested punishment will protect the public from any further crimes by Mr. Ratliff. We are reminded that punishment should not be more severe than necessary to satisfy the goals of punishment. U.S. v. Carvajal, 2005 WL 476125, at 6, 2005 U.S. Dist. LEXIS 3076, at *15-16 (S.D.N.Y. 2005).

(D) To Provide the Defendant with the needed educational training, medical care, or other correctional treatment in the most effective manner

Mr. Ratliff's history reveals that he is in dire need of educational training and treatment for his marijuana dependency. To the extent that either educational and/or vocational training programs are available, the Court is encouraged to recommend that Mr. Ratliff is given an opportunity to participate in any such programs offered by the Bureau of Prisons. The ability to participate in a vocational training program and drug treatment would provide Mr. Ratliff with the foundation and skills he needs to increase his employment possibilities and substantially

LAW OFFICES OF
**NATALI J.H. TODD, P.C.**

---

U.S. v. Ratliff, 14 Cr. 130 (RPP)

decrease the likelihood of his recidivism.

### §3553(a)(3) and (4) The Kinds of Sentences Available and the Guideline Range and Sentence

The presumptive guideline sentence for Mr. Ratliff is 33-41 months of incarceration based upon a Criminal History Category of II with two points and an offense level of 19, which is primarily driven by the loss amount. In the absence of the mandatory provisions which resulted in the mechanical adherence to the sentencing guidelines, the statutory sentencing scheme provides that:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing a sentence.

See, Title 18 U.S.C. 3661. Accordingly, a below guideline sentence is a reasonable and fair sentence.

### Conclusion

Mr. Ratliff accepts full responsibility for his involvement in the offense and prays that the court will be lenient in punishing him. He does not make light of his involvement in this case and recognizes that it is indeed serious. However, he asks that the Court consider the history and circumstances of his life, his role in the offense, his acceptance of responsibility early in the case, and exercise restraint and compassion in punishing him.

Mr. Ratliff is indigent and cannot pay a fine. (See PSR, ¶68). He wishes to be near his

LAW OFFICES OF
**NATALI J.H. TODD, P.C.**

*U.S. v. Ratliff, 14 Cr. 130 (RPP)*

family so that his mother can continue to visit him with his young son. Accordingly, Mr. Ratliff respectfully requests that this Court recommend a designation closest to the New York City area such as FCI Otisville, FCI Wallkill, or FCI Fort Dix which are all accessible to the family.

  I thank the Court for his attention and consideration to this submission.

Respectfully,

/s/_____
Natali Todd, Esq.

cc: AUSA Richard Cooper (*via E.C.F.*)
  Mr. Terrell Ratliff