Ean0rats                    Sentence

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                          14 CR 00130

TERRELL RATLIFF,

            Defendant.

------------------------------x

                                    New York, N.Y.
                                    October 23, 2014
                                    12:00 p.m.


Before:

                HON. ROBERT P. PATTERSON, JR.,

                                    District Judge


                        APPEARANCES

PREET BHARARA
    United States Attorney for the
    Southern District of New York
RICHARD ALAN COOPER
Assistant United States Attorney

NATALI J.H. TODD
Attorney for Defendant

Ean0rats                          Sentence

1              (In open court; defendant present)

2              THE COURT:  All right.

3              THE DEPUTY CLERK:  United States v. Terrell Ratliff,

4     government ready?

5              MR. COOPER:  Richard Cooper, for the government.

6              THE COURT:  Good afternoon, Mr. Cooper.

7              MS. TODD:  Good afternoon, Natali Todd, your Honor,

8     for Mr. Ratliff, also present before the Court.

9              THE COURT:  Good afternoon, Ms. Todd, and good

10    afternoon, Mr. Ratliff.

11             THE DEFENDANT:  Good afternoon.

12             THE COURT:  I have a presentence report, Mr. Ratliff.

13    It was received by me on September 24th.  Have the parties

14    received the presentence report?

15             MR. COOPER:  Yes, your Honor.

16             MS. TODD:  Yes, your Honor.

17             THE COURT:  Any changes to be made in it?

18             MR. COOPER:  No, your Honor.

19             MS. TODD:  No, your Honor.

20             THE COURT:  I still haven't gotten -- Robert.  Oh, did

21    he walk out?

22             THE CLERK:  Yes.

23             THE COURT:  I still have not gotten the Roberto Grant

24    minutes for review.

25             In addition to the presentence report, I have been

Ean0rats                          Sentence

1    handed a work performance rating for Mr. Ratliff, dated

2    October 10th, and showing his work as a sanitation orderly from

3    March 1st to the present.

4            I still haven't gotten the Roberto Grant --

5            THE DEPUTY CLERK:  Right.  I'll go up and get it right

6    now, Judge.

7            THE COURT:  I'm showing that from March 1 to the

8    present, he has worked as a sanitation orderly.  And that the

9    quality of his work is outstanding.  And he needs little

10   supervision.  And he has a record of dependability and

11   promptness.  Makes a real effort to please the instructor.

12   Works well with others.  And he is proficient at his job.  He

13   has the recommendation that his pay be raised, but that he be

14   kept at the same job.  It's signed by Mr. Wingate, October 9th.

15           And then I also have a sentencing submission from

16   Mr. Cooper, which I received on October 21st.  And a sentencing

17   memorandum from Ms. Todd filed October 3.

18           Should I have any other documents?  I have read those

19   documents.  Should I --

20           MS. TODD:  Not from the defense, your Honor.

21           MR. COOPER:  Nor from the government, your Honor.

22           THE COURT:  Okay.  And I have Mr. Grant's plea

23   allocution.  And I see that I did approve it on October 3rd.

24           Is there anything else that should be before me?

25           MR. COOPER:  Sorry, your Honor.  Were you referring to

1    Mr. Ratliff's plea allocution?

2             THE COURT:  No, Mr. Grant's, the co-defendant.

3             MR. COOPER:  I see, thank you.

4             THE COURT:  Okay?  Anything else.

5             MR. COOPER:  No, your Honor.

6             THE COURT:  Anything else, Ms. Todd?

7             MS. TODD:  No, your Honor.

8             THE COURT:  All right, then.  I'll hear from you on

9    sentence.

10            Ms. Todd.

11            MS. TODD:  Thank you, your Honor.

12            Your Honor, first, I want to acknowledge Mr. Ratliff's

13   family who is seated in the audience in the second row and

14   third row.  It's his mother, and to the right of the Court is

15   his brother, and to the left of his brother is two cousins who

16   are here today in support of him.

17            THE COURT:  All right, thank you.

18            MS. TODD:  Judge, Mr. Ratliff does recognize that he

19   committed a crime and, for that, he expresses deep remorse and

20   he takes full responsibility for his conduct in the crime that

21   he pleaded guilty to before this Court.

22            Judge, we have expressed a lot in our written

23   submission.  And I certainly do not want the Court to take that

24   as an excuse for what Mr. Ratliff did, up to the point when he

25   engaged in the robbery, that he was homeless, but that

information was provided to the Court so the Court has a full

understanding of his journey and the circumstances which led

him to be before you at this time.

          Judge, I have come to know Mr. Ratliff over the

duration of the time that I have been representing him.  Not

only is he disappointed, particularly because his mother has

tried very hard with him.  In fact, she has had occasions where

she has worked three jobs just to make sure that he and his

brother did the right thing.  She has moved several times, as I

have stated in my written submission, just to make sure that

they walked a straight line and they didn't become a product of

the streets.  In fact, she would often say to me I moved so

many times, I worked as hard as I did, because I didn't want

the streets to get my child.  But here we are, Judge.

          And, you know, she's -- I would think she's succeeded

significantly with that, because for a large part of his life,

he was a star basketball player with great possibilities ahead

of him.  So much so that he was also asked to coach the younger

inner city kids.  And so Mr. Ratliff sits here and recognizes

his predicament before the Court, and recognizes the crime that

he has committed.  I have asked him on many occasions:  Having

been here now, what is it that you want to do with your life.

          And, first and foremost, he has expressed to me that

he wants to be the father to his son that his father never was

to him.  I have asked him, what exactly does that mean.  And he

Ean0rats                          Sentence

1    has expressed to me that he wants to be a role model for his

2    son.  And I challenged Mr. Ratliff on a very fundamental level

3    that if you are going to walk the walk and talk the talk, to

4    start somewhere.  And I challenged him to get his GED in short

5    order.  And I am very proud to stand here and say he did.  I do

6    not have the certificate with me, he got it last week.  But

7    apparently this morning he was informed by the Bureau of

8    Prisons that it is not legal paperwork, so he couldn't take it.

9    But as an officer of the Court, I am standing here and telling

10   you that he, in fact, did get his GED.

11             THE COURT:  I don't quite understand.

12             MS. TODD:  Took his GED and passed it, but as the

13   Court will recall from my submission, he dropped out of high

14   school --

15             THE COURT:  I remember.

16             MS. TODD:  And so he actually enrolled in the classes

17   and took the classes, took the exam, and was awarded a

18   certificate.

19             Was it last week?

20             THE DEFENDANT:  Last Monday.

21             MS. TODD:  Last Monday.

22             THE COURT:  And then but I --

23             MS. TODD:  He wanted to bring it today as proof, but

24   he was told that it is not legal paperwork and so he couldn't

25   take it to Court.  That's what he represented to me.

Ean0rats                    Sentence

1       THE COURT:  It is not legal to what?

2       MS. TODD:  Legal paperwork.  So he was not allowed to

3   bring it to Court this morning.

4       THE COURT:  Oh.

5       MS. TODD:  But I'm representing to the Court, that he

6   in fact succeeded --

7       THE COURT:  You mean the Bureau of Prisons regulations

8   prevented him from bringing evidence of his GED to the Court?

9       MS. TODD:  That's what he told me.  And I don't know

10  if it is a regulation, because my experience, I have had other

11  individuals bring it to Court.  So it might be just that

12  particular individual that he interacted with today.

13      And so, Judge, I just wanted to highlight that for the

14  Court because, for him, that's quite an achievement.

15      THE COURT:  Yes, it is.

16      MS. TODD:  And as the Court reviewed his work

17  performance sheet, it is nothing but excellent.  He follows

18  orders, does what he is told to do, does it with little

19  supervision, and is considered a good worker.

20      Your Honor, the Department of Probation has suggested

21  a guidelines sentence.  And they recommended the 33 months.  I

22  am asking the Court to consider the circumstances of Mr.

23  Ratliff's life, his journey before the Court and the real fact

24  that he also has an open case in state Court, in all candor, I

25  have spoken with the judge who is presiding over this case and

Ean0rats                    Sentence

1   Mr. Ratliff will be entering a plea very shortly within the

2   next several days.  And he is exposed to a mandatory minimum of

3   five years.  So in conjunction with this sentence, he is

4   looking at a significant amount of time.  And so, Judge, given

5   the fact --

6           THE COURT:  What is the charge, what is the charge in

7   the State?

8           MS. TODD:  Attempted robbery.

9           He was, as the Court recalls, he was brought in -- he

10  was incarcerated on that charge when he was brought into

11  federal custody.

12          And so, Judge, I would ask the Court to consider --

13          THE COURT:  What is the date of that charge that he is

14  charged in, what date is involved?

15          MS. TODD:  The attempted robbery was sometime in

16  October of 2013, I believe.

17          THE COURT:  And this one was?

18          MS. TODD:  July of two thousand --

19          MR. COOPER:  July 1, 2013, your Honor.

20          MS. TODD:  And so, Judge, I'm asking you to consider

21  all of the circumstances.  He was not a manager in this case,

22  not a leader, didn't get any money or any of the spoils from

23  the robbery.

24          THE COURT:  Which one are you talking about?

25          MS. TODD:  I'm speaking of the case before the Court,

Ean0rats                          Sentence

1   this case.  The attempted robbery was a failed robbery.  They

2   did not steal anything in that case.

3           Similar to this type of robbery.  I'm being very

4   candid with the Court.

5           THE COURT:  Well, I thought there was $200,000 that --

6           MS. TODD:  On this case, Judge.

7           THE COURT:  On this case.

8           MS. TODD:  But what I'm saying is, he was not a

9   leader, not a manager, and he got $500 on this case.

10          THE COURT:  And what about the other case?

11          MS. TODD:  The other case, the robbery was not

12  successful, which is why he was charged with, along with the

13  other defendants, attempted robbery.

14          So Judge, I'm asking you to take all of the

15  circumstances into consideration, and I'm asking the Court to

16  sentence Mr. Ratliff to a below-guidelines sentence.  Because I

17  believe that, given all of the circumstances, his role, nobody

18  was physically harmed, that a below guidelines sentence is a

19  reasonable sentence and would not be greater than necessary in

20  punishing him.

21          Thank you.

22          THE COURT:  What --

23          MS. TODD:  I'm sorry, go ahead.

24          THE COURT:  Does he have any other convictions than

25  those two, the two crimes that you are mentioning?

Ean0rats                         Sentence

1              MS. TODD:  On November 17, 2011, he was sentenced as a

2      youthful offender in King's County Criminal Court, your Honor.

3      And that was for robbery in the third degree.

4              My understanding is the facts of that case involved

5      delivery of food; not paying for food.

6              THE COURT:  I see.  And he wasn't charged with

7      possession of a weapon at that time.

8              MS. TODD:  If the Court will give me a minute, Judge.

9              He was not charged with possession of the gun.

10             THE COURT:  And I gather as a youthful offender.

11             MS. TODD:  Yes, your Honor.

12             THE COURT:  So it is under 20 or 19?

13             MS. TODD:  At the time?

14             THE COURT:  Yeah.

15             MS. TODD:  Nineteen.

16             THE COURT:  What about this marijuana charge.

17             MS. TODD:  He received an adjournment in contemplation

18     of dismissal.

19             THE COURT:  Not a large amount.

20             MS. TODD:  No, Judge.  Cigarette.  So the case was

21     dismissed after six months.

22             THE COURT:  So he faces a mandatory five years in the

23     State.

24             MS. TODD:  Yes, your Honor.  And the judge has

25     promised that is what he will give him.  And, at some point,

Ean0rats                           Sentence

1   Mr. Ratliff wishes to address the Court.

2            THE COURT:  He is going to.  I am just trying to

3   think, and trying to think about the consequences here.  And

4   the impact of the federal conviction over what is apparently --

5   I mean this conviction, and whatever I impose in a way of

6   punishment, or whether I should impose punishment terms, when

7   he is facing this five years on the attempted robbery.

8            MS. TODD:  Let me go back, just so the Court knows.

9            THE COURT:  And maybe you could -- you must have

10  thought about this, so what guidance can you give me?

11           MS. TODD:  I'm sorry, your Honor?

12           THE COURT:  You might have thought about this.

13           MS. TODD:  I have, your Honor.  And the argument that

14  I have been trying to convince the Court is that when the Court

15  takes everything together, whatever the Court -- a sentence

16  below the guidelines, in addition to the five years that he

17  will get, is a substantial sentence.  And I know the government

18  is likely thinking you should focus only on this case.  But the

19  case law says that the Court should take into consideration the

20  history and characteristics of the defendant.

21           THE COURT:  I know that.

22           MS. TODD:  Which includes everything.  And so I am

23  thinking the five years and a below guidelines sentence is a

24  substantial sentence.

25           THE COURT:  Yes.

1           MS. TODD:  33 months is a significant sentence.  And

2     I'm not asking the Court to give him time served or anything

3     like that.

4           THE COURT:  But what you are asking me, what you're

5     asking me is to -- I guess I should leave the rehabilitation of

6     this defendant to the State prison system.  And what I'm

7     concerned about is whether -- what I'm interested in is this

8     man taking steps to turn himself around.

9           MS. TODD:  And --

10          THE COURT:  To get out of this trouble he is in.

11          MS. TODD:  And --

12          THE COURT:  And he has got to.

13          MS. TODD:  I'm sorry?

14          THE COURT:  He has problems.  Because it's hard to get

15    a job, once you have got these robberies on your record.  You

16    won't be employable.  Many employers, the State wouldn't employ

17    you.  A lot of government programs wouldn't employ you.  So you

18    have to look to where you can get employment, and what kind of

19    skills you want do develop to be able to accept a job in those

20    circumstances.

21          But you've got to train yourself.  Now, you have a

22    GED, that's good.  You may have other problems, I don't know.

23    Do you have an anger management problem?  Do you have a problem

24    with attitude?  I don't know.  In other words, the people who

25    come before me who have lived in the hood for a number of years

Ean0rats                         Sentence

and dropped out of school they are "their own man."  And they

don't want to be told anything by anyone.  They think that is

manly.  Can't take orders from women.  They think that's manly,

because that shows they are their own man.  But you can't get a

job and hold it if you have those attitudinal problems.

        Now, I don't know whether you have those problems or

not.  But now is the time when you want to address them, if you

do.  For instance, I mean --

        MS. TODD:  I do want to address one thing.

        THE COURT:  You were in the MCC, evidently.  And you

were in the, I guess in the GED, in the GED group.  I have been

over there several times.  And you may have been there while I

was there.  But you have to have more than a GED.  And one of

the things you have to have is something that has got an awful

name.  It's called cognitive behavior training.  And what's

that mean?  Well, it means what I have been talking about.  Do

you have an anger management problem, do you have a male/female

problem, that you have to be your own man and show you're a man

at all times.  Because, nowadays in jobs, there are a lot of

women that are your boss.  And you have got to take orders from

women now, like Ms. Todd here.

        Now, I don't know what you need, and I don't know

whether it is wise for -- I'm willing to give you the tools.

In other words, to order them.  That means you would be in

the -- you would get your training by the U.S. prison system.

Ean0rats                    Sentence

1   But maybe you should get state prison system, maybe that is

2   better.  They can give training, too.  And they have training,

3   too.  But I don't know how to fit my sentence, whatever it may

4   be, in with their sentence so that it is to your benefit.  And

5   that's what I am asking Ms. Todd about.

6           MS. TODD:  I think it's a difficult task.  I've spoken

7   with the judge in state court.  And I have been led to believe

8   that whatever sentence your Honor imposes, the judge in the

9   State Court will run it concurrent.  He did feel that the five

10  year mandatory minimum for an attempted robbery was

11  substantial, but he is bound by the law and so there is nothing

12  he can do about that.

13          THE COURT:  That's right.

14          MS. TODD:  And so that's where we are.  But I wanted

15  to just express two other points that the Court raised.

16          THE COURT:  But what kind of programs do they have

17  over there?

18          MS. TODD:  Educational programs.

19          THE COURT:  What kind of programs?

20          MS. TODD:  They have got computer programs.

21          THE COURT:  Are they programs that will help this man?

22          MS. TODD:  Yes, your Honor.  They have computer

23  programs, which he has expressed a desire to learn computers.

24          THE COURT:  I saw that.

25          MS. TODD:  That, he wants to do.  To the extent

Ean0rats                        Sentence

1    specifically what he wants to do with that, he does not know.

2    But they have programming.  They have repairs in computers,

3    repair classes, which he is very much interested in computer

4    repairs.  They also have social work type programs.  His

5    alternative, he expressed to me, was that he wanted to be able

6    to speak to at risk kids like himself, and explain to them that

7    they shouldn't take the path that he has taken.  And he is very

8    much interested in that.

9            I have had numerous conversations with him.  And I

10   can't tell the Court that it will work out exactly as what he

11   says, because we don't know that.  But what I have found in

12   speaking with him, is a genuine desire to be a different person

13   going forward.  And his mom has moved out of the neighborhood

14   and now lives in New Jersey, so that might help somewhat.  And

15   Judge, that's pretty much all I can say.  I don't know what

16   other programs, but the programs he has expressed I have made

17   some phone calls and inquired and they exist and they do --

18           THE COURT:  You don't know whether the federal

19   computer programs that are given in prison are superior or

20   worse than the State programs?

21           MS. TODD:  I do not know that, your Honor.  I don't

22   know that.

23           THE COURT:  Okay.  All right.

24           MS. TODD:  Thank you.

25           THE COURT:  Mr. Cooper.

1           MR. COOPER:  Yes, your Honor.

2           I just want to make a few points, in addition to the

3     sentencing submission.  I won't belabor the points that were in

4     the government's submission.

5           First, on this issue about the potential state

6     sentence.  Obviously, as stated in the government's sentencing

7     submission, we believe that a guidelines sentence is

8     appropriate here, a sentence within the guidelines range.

9           This Court is the first sentencing court for the

10    defendant.  We're not in a situation where the State Court has

11    already sentenced the defendant to a term of imprisonment.  If

12    that had happened, then the defendant's criminal history would

13    be different from what his criminal history is now, and his

14    guidelines would likely be higher.  So we're not in that

15    situation.  And the government would urge the Court to issue a

16    sentence that the Court would give, absent that pending state

17    case, because as Ms. Todd acknowledged, the state Court could

18    very well run the state term of imprisonment concurrent to the

19    federal term of imprisonment.  And that's a decision that the

20    latter sentencing Court, which here would be the state court,

21    is in a position to do.

22          What your Honor has before the Court now, is a

23    defendant who has pled guilty in this case, and is being

24    sentenced on this case.  And down the road at some point,

25    apparently in November, he may plead guilty and may be

Ean0rats                              Sentence

1    sentenced on a separate case.

2           So we believe that all that speaks to the importance

3    of the Court pronouncing a sentence in this case, based on the

4    characteristics of the defendant as Ms. Todd points to in her

5    submission, and the defendant's criminal history, and the very

6    serious nature of this crime.

7           So on that front, your Honor, I would like to make two

8    additional points.

9           First, as your Honor can see from the defendant's

10   criminal history, there is a 2011 conviction for robbery in the

11   third degree in the state for which the defendant was sentenced

12   to one year of imprisonment, and probation after that.

13          Obviously, something has not gotten through to the

14   defendant, as a result of that term of imprisonment, and that

15   experience with the criminal justice system which we believe

16   only speaks to the need for a sentence of imprisonment within

17   the guidelines range here, for deterrent purposes, because

18   prior efforts at deterrence have obviously not been successful.

19          Second, I want to underscore what we say in our

20   sentencing submission about the seriousness of this offense.

21   Because I believe that when looking at the complaint and the

22   presentence investigation report here, and even reading the

23   sentencing submissions, the inherent dangerousness of these

24   types of robberies is not entirely clear.

25          Now, the defendant pled guilty to his participation in

Ean0rats                        Sentence

1    a robbery in Atlantic City in July of 2013.  It was a daylight

2    robbery.  It was in a crowded jewelry store and crowded casino

3    in Atlantic City where hammers were used to smash the glass by

4    the robbers, take the watches, and run from the store.

5          There are, as your Honor is well aware, other

6    robberies that are charged as part of this conspiracy.  To be

7    clear, this defendant is not charged in those robberies, so we

8    do not believe he participated in them.  But the circumstances

9    of how some of those other robberies went, I believe, are

10   relevant to the determination of how dangerous it is to go into

11   a jewelry store during working hours and commit one of these

12   robberies.

13         There was a robbery -- and, again, the defendant is

14   not charged in this robbery.  We do not believe he participated

15   in it.  But there was a robbery in Cranford, New Jersey that's

16   part of this conspiracy.  And other defendants are charged in

17   where, when the robbers went in, your Honor, one of the stores

18   employees was so frightened, he took a gun that he had for

19   protection and fired it.  Luckily, nobody was hit.

20         There is another robbery that is part of this

21   conspiracy, and we point to this in our sentencing submission,

22   in September of last year.  Again, this defendant was not a

23   part of that robbery, but as part of this conspiracy --

24         THE COURT:  Is it part of this conspiracy?

25         MR. COOPER:  It's part of the broader conspiracy that

Ean0rats                         Sentence

1   is in this indictment.

2              THE COURT:  But is he a participant?

3              MR. COOPER:  No.  To be clear, no.

4              THE COURT:  All right.

5              MR. COOPER:  But I think it underscores how dangerous

6   these types of robberies are.  And that's really the only point

7   that I am trying to make.

8              THE COURT:  No question about it, robberies being

9   dangerous.  But robbery involves the use of force.  And, well,

10  they are dangerous, there is no question.  Especially if they

11  are carried out with a weapon.  But that's one of the problems

12  I have with the presentence report.  It's sloppy.

13             Look at the way they -- and you quoted it, the sloppy

14  part, in your sentencing memorandum.  It encompasses all of

15  these people who have individual responsibilities for what they

16  did, no question about it.  And they have had to be held

17  accountable.  But my recollection is that this is the one that

18  copies the section Mr. Thomas has here -- Mr. Thomas, being the

19  probation officer.  And I think it is the offense conduct.  The

20  offense conduct, page 4:  In late 2013, law enforcement agents

21  began investigating a pattern of robberies of jewelry stores

22  across several states that included New York, New Jersey, and

23  Virginia.  During the course of these robberies, the robbers

24  identified as Alan Williams, Roberto Grant, Tyrone Dehoyes

25  Rollie Hanson, Terrell Radcliffe, Ronald McIntyre, and Kendal

1   Thompson, and Shawn Robinson, would enter jewelry stores during

2   business hours when customers, employees were present, target

3   the high end watch display cases, take out hammers that are

4   concealed, and use those hammers to the smash the cases.  They

5   would grab as many watches as they could, and then run out of

6   the store into awaiting cars.

7           Well, that's a generalization of what happened on all

8   of the robberies, supposedly.  Well, it is not quite accurate.

9   And when I was brought up as a prosecutor, accuracy was the

10  essence of what you had to be.

11          Now, this man was engaged in an Atlantic City robbery.

12  I have to look at his October 23rd, 2000 -- oh, that's a

13  sentence.

14          MS. TODD:  July 1st robbery, your Honor.

15          THE COURT:  It is July 1st.  And what are the others,

16  what dates are the others?  I don't have the charging

17  instrument, the indictment.  But I think they were on different

18  dates.

19          MS. TODD:  They are on different dates.  But to be

20  clear, Mr. Ratliff was not involved in any of the other

21  robberies.

22          THE COURT:  I know.

23          MS. TODD:  Does the Court wish to -- I do have a copy

24  of the indictment.

25          THE COURT:  That's what I'm pointing out.  And what

1   I'm here to see is he is not prejudiced by that, the way it is

2   worded.  Now, so I'm not going to sentence him in connection

3   with those other robberies, or the guns that were carried in

4   the other robberies but, apparently, were not carried -- or

5   were not fired here.

6           MR. COOPER:  To be clear, your Honor, the only point

7   that I was trying to make was that these robberies carry with

8   them an inherent danger and inherent risk and I --

9           THE COURT:  I know that.

10          MR. COOPER:  -- I can see I have made that point.

11          Unless the Court has any other questions, we'll rest

12  on that and our submission.

13          THE COURT:  All right.

14          Mr. Ratliff, would you like to say something in your

15  own behalf --

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  -- before I try and wrestle with this

18  thing.

19          THE DEFENDANT:  First of all, I want to apologize.

20          THE COURT:  You have to talk up a little louder,

21  because I am not -- you're taller than the microphone.

22          THE DEFENDANT:  First of all, I want to apologize to

23  the Court and my family for putting them through this.

24          THE COURT:  You want to apologize for?

25          THE DEFENDANT:  For my wrongs in this case that I'm

Ean0rats                         Sentence

1    in.  This is a lesson learned.  I'm learning.  I'm still a

2    young man.  I'm not going to use that as an excuse, but I'm

3    learning.  And all I want to do is say thank you to the Court

4    for me being here to learn this lesson.  Because if I wasn't

5    here, I don't know where I would be at right now.

6             So that's all I want to say, is that I apologize for

7    everything I did wrong.

8             And I just want to be the best father I can be to my

9    son.  That's all.  I don't want to be nothing else, but a dad

10   to my son.  So, I just want to apologize for my wrongs, again.

11            And that's it.

12            THE COURT:  What kind of a life do you want to live?

13            THE DEFENDANT:  I want to live a life that I don't

14   have to worry about coming to jail, or somebody trying to take

15   my life away from me.  I just want to live a straight and

16   narrow life.

17            THE COURT:  So how are you going to go about changing

18   it?

19            THE DEFENDANT:  By keep doing things I have been doing

20   while I have been in here, which is walking straight and not

21   walking sideways no more.

22            THE COURT:  So what are you going to do about it?

23            THE DEFENDANT:  I'll make sure I do that; programming,

24   working.  Just everything that is gonna keep me away from the

25   streets.

Ean0rats                          Sentence

1          THE COURT:  And how are you going to go about trying

2     to make sure you don't get into this -- what I call a -- well,

3     just doing this again and again because it's the easy way to

4     get money.

5          THE DEFENDANT:  I'm just going to just make sure

6     that -- that if it's leaning that way, I'll just walk about the

7     other way.

8          THE COURT:  What about programs, what about education?

9          THE DEFENDANT:  Yeah, that's what --

10          THE COURT:  What about something that you could learn

11     a trade?

12          THE DEFENDANT:  That's what I'm interested in;

13     computers, repairing them and all that.  I just -- I just --

14          THE COURT:  You got an interest in computers?

15          THE DEFENDANT:  Yeah, a lot.

16          THE COURT:  What else?  Anything else?

17          THE DEFENDANT:  Other than that, and just working with

18     kids that was going where I was going.

19          THE COURT:  Uh-huh.

20          THE DEFENDANT:  But I feel that would be my blessing.

21          THE COURT:  Well, you know, they are going to have

22     problems with you working with kids.  The government runs most

23     of those programs.  And they'll say this man has a criminal

24     record, we don't want him working with the kids.  And so you --

25     I don't know that that is true in every case, but a lot of

places, you got to -- now, you have made a record, they won't

employ you.  And so you have to find places where they will

employ you.  And that's hard to know.

         Now, if this was my case, because it really isn't, it

is really the State Court judge that comes after me.  If this

were my case, I would get you into a program that -- well,

there are several.  But I would get you into a program where

you would learn computers.  And they would help move you into

the right place to apply for jobs so that you don't have your

criminal record as a absolute bar.

         I had a man in here, older than you in another case.

It was Hobbs Act robbery case.  And he was 43 or so.  And he

was married.  And, luckily, his wife was, well, pretty well

employed.  And she had a computer in the home.  So he made all

his applications for jobs through the computer.  So his lawyer

was able to pull up all of the applications he had made for

jobs and had been turned down on.  And, as a result, I saw how

hard it is when you have a criminal record to get a job at all.

I sent him to a place where you get retrained, he could get

education.  And that place was called The Fortune Society.  And

they -- they have work programs for people to learn skills,

know how to present yourself for a job; things like that.  So

if I were the person who was calling the shots -- and I can't

be, the state Court judge is the judge who will call the shots

here.  But this man got, well,we thought it was a strained

Ean0rats                         Sentence

1    ankle.  But the doctors looked at it and turned out to be a

2    broken ankle.  And he -- so I released him to go into this

3    program.  So he went to the program on crutches, all of the way

4    from Newark, where he lived, to Queens, where the Fortune

5    Society was.  And he attended all of the programs.  And he

6    attended what he needed in order to be a good employee.  And he

7    got a job.  Now, it took six months, but he got a pretty good

8    job, and everything is working out all right.

9          But that's the call of the next judge.  And all I can

10   do is give you the sentence that you have, and assistance in

11   getting some programs that may help you.

12         Now, does this man need anything in connection with

13   anger management?

14         MS. TODD:  No, your Honor.  My interaction with him,

15   he has been nothing but a gentleman.  I have detected nothing

16   like that at all.

17         THE COURT:  Does he resent instruction from women?

18         MS. TODD:  No, I would say that we had a pretty good

19   relationship.  He listens.  I did express that, when he comes

20   out, if he needs help, I am here.  And I mean that.  Because I

21   see, in him, a determination to make a change.

22         THE COURT:  All right.

23         THE DEPUTY CLERK:  I'm not sure if Mr. Ratliff is

24   finished.

25         MS. TODD:  He's done.

Ean0rats                        Sentence

1              THE COURT:  Oh, okay.  I'm going to sentence you to --

2          Are you ready?

3              THE DEFENDANT:  Yes.

4              THE COURT:  -- to the minimum, 33 months, due to the

5     fact you have got a state sentence.  I don't mind.  I am

6     perfectly happy, if it is not consecutive with your State

7     incoming state sentence, because it is concurrent with it.  But

8     that's up to the judge in the State Court system.  But just so

9     you have the record, Ms. Todd, I would have no objection to it.

10             MS. TODD:  Thank you, your Honor.

11             THE COURT:  I do want you to engage in prison and

12    computer training, learning about computers, whatever programs

13    they have.  And any other programs you have an interest in.

14             So, while you are in prison, there is another -- I

15    think -- I hope that they will offer you those programs,

16    because they don't have them at every prison.  This would give

17    you a head start on -- you have got quite a time ahead of you.

18    Give you a head start of getting a trade.  And I think it would

19    be wise to take something that teaches you how to present

20    yourself as a person who as who has a record, but who wants

21    work.  There are ways you can do that.  You don't have to learn

22    them on your own.  People can teach you how you should present

23    yourself, so you have a fair chance of getting a job.

24             So the sentence on count one is 33 months.  And I

25    don't think it is wise for me to -- I don't know, supervised

1   release, I guess, for two years.

2            Is the government seeking restitution?

3            MR. COOPER:  Yes, your Honor.  I have discussed the

4   restitution amount with defense counsel.  I know in the

5   presentence report it says $200,000.  We are attempting to

6   determine, from the store, the precise value of the watches

7   that were stolen.  So we would ask both for forfeiture and

8   restitution, that the Court orally pronounce those as part of

9   Mr. Ratliff's sentence, with a conforming order to be submitted

10  to the Court after this proceeding.

11           THE COURT:  Would that be joint and several with the

12  other defendants?

13           MR. COOPER:  I believe that the restitution portion of

14  it would be joint and several, your Honor.  I believe so.

15           THE COURT:  Joint and several with Alan Williams, I

16  don't know, is he in count one?  Not sure which defendants it

17  would be joint and several with.  He was only in one robbery.

18           MR. COOPER:  That's right, your Honor.  And I believe,

19  I don't have the charging instrument in front of me, but I

20  believe four defendants are charged as participating in that

21  robbery.  Mr. Ratliff, as well as Alan Williams, Roberto Grant,

22  and Sean Robinson.  Mr. Williams and Mr. Grant have already

23  pled guilty in this case.  Mr. Robinson has not pled guilty.

24           THE COURT:  I don't want to make any mistakes.  I have

25  the charging instrument right here, so you can look at it,

Ean0rats                          Sentence

1    Mr. Cooper.

2              Do you want to look at the charging instrument?

3              MR. COOPER:  Thank you, your Honor.  So, your Honor,

4    just to clarify --

5              THE COURT:  Yes.

6              MR. COOPER:  -- the robbery in which Mr. Ratliff

7    participated was the July 1st, 2013 robbery of a jewelry store

8    in the Borgata Casino in Atlantic City.  The substantive count

9    relating to that robbery is count three.

10             Now, the count of conviction here is count one, which

11   is the conspiracy.  But the government is seeking restitution

12   in the forfeiture from Mr. Ratliff in connection with the

13   robbery that he participated in, which was the Atlantic City

14   robbery.  Four individuals are charged in that robbery right

15   now.  Those four are Mr. Ratliff, Mr. Williams, Mr. Grant, and

16   Mr. Robinson.  The first three defendants have already pleaded

17   guilty.  Mr. Ratliff is the first to be sentenced.

18             THE COURT:  All right.  Restitution would be joint and

19   several with Alan Williams, Roberto Grant, Sean Robinson, and

20   Mr. Ratliff.

21             And if you need job training when you leave, I will

22   refer you to The Fortune Society.  And you can ask me to --

23   which specializes in people who have convictions and training

24   them for jobs.  So you can resort to that if you don't have

25   other employment.

1           And let me see if I have a couple of more.

2           Did I give you supervised release for two years?

3           THE DEPUTY CLERK:  Yes.  I don't think you gave the

4    conditions of supervised release or the mandatory special

5    assessment.

6           THE COURT:  For up to two years, if you don't have

7    supervised release with the state.

8           MS. TODD:  The state is different, your Honor, I'm

9    sorry.

10           THE COURT:  I know.

11           MS. TODD:  He gets five on the state, mandatory.

12           THE COURT:  Mandatory supervised release?

13           MS. TODD:  Mandatory five years jail, mandatory five

14    years supervision.

15           THE COURT:  Okay, then I won't give it.  Except it

16    could be concurrent with -- I don't know whether the programs,

17    it's matter of knowing about programs --

18           MS. TODD:  If I may, Judge, the --

19           THE COURT:  -- that are overwhelmed.  When I was

20    practicing --

21           MS. TODD:  The jail sentence will be concurrent, but

22    the supervision will not.  That's been my experience.  So

23    whatever it is that this Court decides on supervision, that is

24    what he will be supervised, that period of time.  And whatever

25    it is that is decided in state Court, which is going to be five

Ean0rats                    Sentence

1    years, that's what it is.  So it will be seven years, combined.

2              THE COURT:  I don't want to impose any supervised

3    release, then, in this Court.  That's enough.

4              The mandatory conditions, does he have a drug problem?

5              MS. TODD:  Marijuana, your Honor.

6              THE COURT:  The condition of his sentence will be that

7    he take drug treatment from for marijuana or any other --

8              MS. TODD:  No, your Honor.

9              THE COURT:  Oh, a condition will be that he be treated

10   for marijuana use while he is in prison.  Since he is gonna be

11   supervised there, I'm not going to impose the conditions of

12   supervision that I normally impose.

13             Special assessment of $100 is mandatory.

14             How long do you want to pay that, Ms. Todd?

15             MS. TODD:  Just a moment, your Honor.

16             A month, your Honor.

17             THE COURT:  All right.  It will be payable in 30 days.

18             And the defendant will notify the United States

19   Attorney's Office for this district within 30 days of any

20   change of mailing or resident address that occurs while any

21   portion of the restitution remains unpaid.

22             If the defendant is engaged in the Bureau of Prisons

23   non UNICORE work program, he will pay $25 per quarter toward

24   the criminal financial penalties.

25             However, if he participates in Bureau of Prison's

Ean0rats                        Sentence

UNICORE program as grade one through four, he shall pay

50 percent of his monthly UNICORE earnings towards the criminal

financial penalties, consistent with BOP regulations at 28 Code

of Federal Regulations, paragraph 54511.  And it will be

forfeiture of up to the forfeiture amount set by the Court.

A forfeiture and order in 90 days.

I don't think the defendant has the ability to pay a

fine, and I'm not going to order a fine in view of the other

financial penalties.

I guess that's the sentence of the Court, Mr. Ratliff.

And I don't know what to say to you.  I always try and

say something.  But, now is the time to turn yourself around.

Now is the time to make -- it's hard.  And it's hard because,

for one thing, you have friends wherever you come from.  And

those friends may not be trying to turn themselves around.  So,

they will a say, well, come on, come on, let's have a smoke,

pot, let's have a drink.  Well, you've got to stay away from

those guys.  Because when they smoke pot, they dream up some

scheme or something to get into, that isn't good.  And you

gotta be wary of your friends, unfortunately.  Because they are

the ones that will get you back into trouble.  And a lot of

people say the best thing to do is move out of the

neighborhood, go to some other neighborhood where you don't

know anyone and you have a better chance of living crime free.

Unfortunately, your old friends who have committed

1   crimes are bad companions, usually, because not all of them,

2   very few of them, make the real fight.  It takes a fight, it

3   takes strength of character to say, no, I'm not getting

4   involved; no, I'm not going to do that, I'm thinking of my kid,

5   I want the take care of my kid; and I'm thinking of my mother

6   and all of the sacrifices she did for me.  And I want to live

7   up to her standard, and my standards, for being a father.  And

8   I wish you luck, I think you can do it.  You have to be strong.

9   That's why I bring up the fist and say it that way.  That's the

10  kind of strength you have to show.

11          THE DEFENDANT:  Thank you.

12          THE COURT:  Okay.  Good luck over in State Court.

13          THE DEFENDANT:  Thank you, your Honor.

14          MS. TODD:  Thank you, your Honor.

15          I have one more request for the Court.  That I would

16  ask that the Court designate the New York City area for

17  placement, would recommend that to the BOP so that his family

18  can have access to him.  I also ask the Court to have him stay

19  at MCC, so that it will be easy for the Court to get him in the

20  next several days.

21          THE COURT:  What's his schedule?

22          MS. TODD:  November 5th, we go back to the State

23  Court.  So I would ask that the -- Court I don't know how to do

24  that, but stay the order so that he is not transferred.

25          THE COURT:  I'll ask the Bureau of Prisons to stay his

```
 1   removal from the MCC.

 2               MS. TODD:  Thank you, your Honor.

 3               THE COURT:  For a month.  How's that?

 4               MS. TODD:  Yes, thank you.

 5               THE COURT:  Okay.  Anything else.

 6               MR. COOPER:  No, your Honor.

 7          Two things.  First, there was a plea agreement here

 8   but.  We would ask the Court to advise the defendant, to the

 9   extent he retains a right to appeal, of his right to appeal

10   from the sentence.

11               THE COURT:  Yeah.

12          You have 14 days to file a notice of appeal.  And all

13   you have to do is write to the Court and say, I appeal.  From

14   your sentence or from your conviction, either one.  And that

15   will be sufficient.  But you have to do that within 14 days.

16   If you don't, the Court of Appeals will say that you lost your

17   right, because you didn't file within that 14 day period.

18          So, if you want to appeal anything about your

19   conviction, just write the Clerk, United States District Court,

20   Southern District of New York, and say, I appeal.  That will

21   save you from, if you want to appeal anything about this case.

22               MR. COOPER:  Your Honor, the government would also

23   move to dismiss all open counts and underlying indictments with

24   respect to Mr. Ratliff.

25               THE COURT:  Motion granted.
```

Ean0rats                           Sentence

1             MR. COOPER:  Thank you, your Honor.

2             THE COURT:  Uh-huh.  All right, Ms. Todd?

3             MS. TODD:  Yes, your Honor, thank you.

4             THE COURT:  All right.

5             THE DEFENDANT:  Thank you.

6             THE COURT:  Thank you, Mr. Ratliff.  And Ms. Todd.

7             (Adjourned)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25