F3idwils
                              Sentence

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,                New York, N.Y.

4              v.                             14 Cr. 0130(LAP)

5    ALLEN WILLIAMS,

6                  Defendant.

7    ------------------------------x

8
                                             March 18, 2015
9                                            3:06 p.m.

10
     Before:
11
                         HON. LORETTA A. PRESKA,
12
                                             District Judge
13

14                          APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     BY:  RICHARD COOPER
17        Assistant United States Attorney

18   MARK DeMARCO
          Attorney for Defendant
19

20

21

22

23

24

25

2

F3idwils
Sentence

1   THE COURT:  Good afternoon, ladies and gentlemen.

2   Won't you be seated.

3   United States against Allen Williams.  Is the

4   government ready?

5   MR. COOPER:  Yes.  Good afternoon, your Honor.

6   Richard Cooper for the government.

7   THE COURT:  Good afternoon.

8   And is the defense ready?

9   MR. DeMARCO:  Yes, your Honor.  Mark DeMarco for

10  Mr. Williams.  Good afternoon.

11  THE COURT:  Good afternoon, Mr. DeMarco.

12  In reviewing the file, there seemed to have been --

13  there was a request some time ago for new counsel and

14  Mr. DeMarco was appointed.

15  MR. DeMARCO:  That's right.

16  THE COURT:  I just want to be sure that Mr. Williams

17  is happy with his counsel.

18  THE DEFENDANT:  Yes, ma'am.

19  THE COURT:  Thank you, sir.

20  Counsel, there seems to be a disagreement with respect

21  to paragraph 59.  That is the specific offense characteristic

22  of the bodily injury.  How would you like to proceed on that,

23  counsel?

24  MR. COOPER:  Your Honor, with respect to that

25  paragraph and the bodily injury that resulted from this

F3idwils
Sentence

1   August 3rd robbery in Richmond, in the parties' plea agreement

2   we had agreed that the two-level enhancement for bodily injury

3   was appropriate.  In reviewing the PSR after Mr. DeMarco's

4   letter, it appears that what Probation did was not include that

5   two-level enhancement, but then on the bottom line, when they

6   got to the end, they came to the same result that we did

7   through an arithmetical error on Probation's part.

8          THE COURT:  So what is it you would like to do?

9          MR. COOPER:  Right.  So our request would be to have

10  the two-level enhancement applied and for paragraph 59 to be

11  amended.  I believe that there is no objection from the defense

12  given that that was stipulated to in the plea agreement.  In

13  effect, your Honor, that would not affect the remaining

14  guidelines calculations after paragraph 59 of the PSR.

15         THE COURT:  Well, if we add plus two at paragraph 59,

16  when we get to 64, it will go up, right?

17         MR. COOPER:  Yes, your Honor.

18         THE COURT:  That should be 28.

19         MR. COOPER:  Right.  And then in paragraph 85, which

20  lists the multiple counts.

21         THE COURT:  Yes.

22         MR. COOPER:  Under group number 2, the adjusted

23  offense levels would be 28.

24         THE COURT:  All right.  And so then paragraph 86 would

25  be?

F3idwils
Sentence

1      MR. COOPER:  Paragraph 86 is correct as is.

2      THE COURT:  OK.  Mr. DeMarco, do you agree?

3      MR. DeMARCO:  I agree with the calculations, your

4  Honor.  I just want to -- we did agree in the plea agreement to

5  the two-level enhancement for physical injury or bodily harm to

6  one of the victims.

7      THE COURT:  Yes, sir.

8      MR. DeMARCO:  That was based on representations made

9  to us by the government.  Probation -- your Honor, if there was

10  physical injury, we consent to the stipulation to the two-level

11  enhancement, and if the government is representing that there

12  was, as they have up until this point, we will agree -- we will

13  abide by our agreement as well.

14      THE COURT:  And as I read the PSR, the guidelines'

15  range, as a result of the PSR calculation, is the same as the

16  guidelines' range resulting from the plea agreement.

17      MR. DeMARCO:  Yes.  With the error that was pointed

18  out to the Court by Mr. Cooper, yes.

19      THE COURT:  OK.

20      MR. DeMARCO:  Does that make sense, Judge?

21      THE COURT:  I think so.  Is there anything else you

22  want to say about the guidelines' calculation in the PSR?

23      MR. DeMARCO:  No.

24      THE COURT:  All right.  Mr. DeMarco, have you had

25  adequate time to review the PSR with Mr. Williams?

F3idwils
                                Sentence

 1              MR. DeMARCO:  I have, your Honor.

 2              THE COURT:  And is there any reason it should not be

 3    made part of the record?

 4              MR. DeMARCO:  Well, Judge, I believe your Honor asked

 5    if there was any objections to the final calculation, and there

 6    are none and I stand by that.  However, there is an objection

 7    to paragraphs 72 through 78 of the PSR.

 8              THE COURT:  Yes, sir.

 9              MR. DeMARCO:  Those are on page 11 and 12 of the PSR.

10              THE COURT:  OK.

11              MR. DeMARCO:  Those are for a robbery that took place

12    on January 19, 2014, in Cranford, New Jersey.

13              THE COURT:  All right.

14              MR. DeMARCO:  Now, if the government wishes for the

15    defense to abide by the plea agreement, we're going to ask the

16    government to do the same.  Mr. Williams did not plead guilty

17    to that crime.  In fact, Mr. Williams knew nothing of that

18    crime until after he was arrested, when he was informed by the

19    arresting agents about that crime.  He had no knowledge of it.

20    He took no part in it.  He did loan his car to a co-conspirator

21    but not aware that the car would be used to commit this

22    January 19, 2014 robbery.  It was loaned to a co-conspirator

23    but Mr. Williams knew nothing of this robbery.  He took no part

24    in it.  And it's our position that it shouldn't be contained

25    within this report.  It doesn't change the guideline

6

F3idwils

Sentence

1   calculation but it makes the report, I believe, inaccurate.

2           THE COURT:  Well, how would it not change the

3   guideline calculation?  I mean, are you saying that a dangerous

4   weapon was not used in connection with any of the robberies to

5   which Mr. Williams pleaded?

6           MR. DeMARCO:  No, your Honor.  I am not saying that.

7           THE COURT:  OK.  So then paragraph 73 is accurate.

8   Oh, I see what you are saying.  You are saying because of

9   Cranford, New Jersey.

10           MR. DeMARCO:  Group 4 -- the Group 4 crime that is

11   contained within the PSR we are objecting to.

12           THE COURT:  OK.  What is the government's position on

13   that?

14           MR. COOPER:  The defendant did not plead to a

15   conspiracy that included that robbery in Cranford, your Honor.

16   It was our view and we agreed with the defense that the

17   defendant's level of knowledge with respect to that robbery was

18   substantially different.  Namely, for all the others he was

19   there and participated.  For this one, he loaned his car to a

20   guy who was a member of the robbery crew before the robbery.

21           So we did not include it in the plea agreement.  We

22   think it can be considered by the Court as relevant conduct in

23   fashioning a sentence, but we didn't include it in the plea

24   agreement and have no objection to Mr. DeMarco's request.

25           THE COURT:  Let me ask you this.  If we delete -- it

F3idwils
Sentence

1    won't make a difference, though, if we delete the Group 4 --

2              MR. DeMARCO:  No, your Honor.  It doesn't change the

3    ultimate guideline calculation.

4              THE COURT:  OK.

5              MR. COOPER:  The reason for that, your Honor, is that

6    the defendant maxes out in terms of grouping.  So any more

7    robberies so long as they are grouped won't increase the

8    guidelines.

9              THE COURT:  In that case, then, paragraphs 72 through

10   and including 78 will be deleted, and in paragraph 85 the

11   material relating to group number 4 will be deleted.

12             Are there any other objections to the presentence

13   report, Mr. DeMarco?

14             MR. DeMARCO:  No, your Honor.

15             THE COURT:  All right.  With respect to the offense

16   level computation, I accept the findings of the presentence

17   report set forth at paragraphs 48 through 58.

18             As to paragraph 59, because there was bodily injury

19   sustained, that paragraph should read plus two.

20             I accept paragraphs 60 through 63.

21             Paragraph 64 should read 28.

22             I accept paragraphs 65 through 71.

23             Paragraph 72 through 78 should be deleted.

24             I accept paragraphs 79 through 84.

25             In paragraph 85 the material relating to group number

F3idwils
                                  Sentence

1    4 should be deleted.

2              Off the record.

3              (Discussion off the record)

4              THE COURT:  I accept paragraphs 86 through 92, which

5    conclude that a total offense level of 29 is appropriate.

6              With respect to the defendant's criminal history, I

7    accept the findings of the presentence report set forth at

8    paragraphs 93 through 101, which conclude that a Criminal

9    History Category of III is appropriate.

10             I have the defense sentencing submission -- I'm sorry,

11   the government's sentencing submission dated March 16, the

12   defense sentencing submission with its attachments dated

13   March 13.  Are there any additional written materials I should

14   be looking at, counsel?

15             MR. DeMARCO:  Your Honor, did you receive a submission

16   from me dated March 16th?  I delivered it by hand to the Court

17   that morning.  It's a letter -- I have a copy for your Honor.

18             THE COURT:  Would you mind handing it up.

19             MR. DeMARCO:  Not at all, your Honor.

20             THE COURT:  Mr. DeMarco, I don't think I see it here.

21   Thank you.

22             MR. DeMARCO:  And, your Honor, I also received three

23   letters from Mr. Williams' wife.  I have provided copies to the

24   government.

25             THE COURT:  Yes, sir.  Thank you.

F3idwils
Sentence

1          MR. DeMARCO:  I have them for your Honor here.

2          (Pause)

3          THE COURT:  Thank you, Mr. DeMarco.  I have been able

4     to read the numerous letters that you have handed up.

5          Would you like to speak on behalf of Mr. Williams?

6          MR. DeMARCO:  I would, your Honor.

7          THE COURT:  Yes, sir.

8          MR. DeMARCO:  Your Honor, I am going to be brief.  I

9     believe most of what I am about to say is contained in my

10    submissions to this Court, but I just want to highlight some of

11    the things that I did put on paper and submitted to your Honor.

12         Your Honor, Mr. Williams is 36 years old.  He sits

13    here today a 36-year-old man.  In January of 2013, he was

14    released from New York State prison after serving approximately

15    20 years.  When he was 15 years old he received a nine-year to

16    life sentence and he served 20 years.  As a 35-year-old man he

17    is released and put on parole in New York State.

18         Now, 20 years in prison wasn't a total loss for him.

19    He took advantage of programs.  He earned his GED.  He earned a

20    certificate in dog training, which I submitted to your Honor.

21    But most importantly, he met a woman, Maria Williams, who he

22    married, and they eventually had an adorable young son who is

23    approximately 18 months old now, Airam -- 16 months old.

24         Now, when he was released from New York State prison,

25    he was required by New York State Parole to remain in the

F3idwils
Sentence

county where he was convicted, and that was Suffolk County.

Now, Mr. Williams is now 20 years out of jail, has no one in

Suffolk County.  His wife is living in western Pennsylvania,

where she is born and raised.

He first began living in a hotel.  That became too

expensive.  His wife maxed out the credit cards to pay for the

room at the hotel.  And he moved in with a friend in Suffolk

County.  And within two weeks of moving into that home, it was

burned down; it was torched.  It was set ablaze by, according

to the detective investigating the case, the family members of

the young man killed in 1993.

Now, none of this excuses what Mr. Williams has done.

None of this is -- I don't mean to provide an excuse for him.

But after his house was torched there came a time when he was

homeless.  He was living in his wife's car.  He was going from

place to place, and ultimately New York State Parole permitted

him to live in Brooklyn with his mother.  He's trying to find a

job.  No one is hiring him.  When he is taken on by Target for

one day, they learn he has a criminal record and they fire him

the next day.

He's trying to do everything the right way.  He is

abiding by all the conditions of his parole.  He is remaining

in New York State, where he is supposed to remain, only going

to western Pennsylvania when permitted by New York State

Parole.

F3idwils

Sentence

1          He is in Brooklyn.  He learns that his wife is

2    pregnant.  He is not permitted to be with his wife during her

3    pregnancy out in western Pennsylvania, and she has a career

4    firmly established out there as a physical occupational

5    therapist in the Pittsburgh area.  He is not about to go.  He

6    has no job.  His son is born.  And there comes a time where he

7    becomes desperate financially, emotionally, and he commits

8    these robberies.  He accepts this invitation to join this

9    robbery crew to do what are commonly referred to as

10   smash-and-grab robberies -- go into a jewelry store, smash the

11   cases, take the jewelry, and leave.

12          One thing I could say about Mr. Williams, apart from

13   him being extremely bright, soft-spoken, hard-working, he's

14   extremely remorseful.  He is remorseful for committing these

15   crimes.  He is remorseful for putting the people in the jewelry

16   stores through what they went through.  And he is remorseful

17   for not being there for his son, his 16-month old son.  You

18   see, Mr. Williams was raised without a father and he knows what

19   happens to young men who are raised without father figures.

20   They commit crimes.  They end up in New York State jail and

21   federal prison.  He's remorseful.

22          And now, your Honor, I know you probably think I come

23   up here at sentencing for all of my clients and say my client

24   is remorseful.  Sometimes they are; sometimes they are not.  I

25   can tell your Honor that Mr. Williams is genuinely remorseful,

F3idwils
Sentence

1   and he has a plan.  You know, in this case, when he was

2   arrested, he accepted responsibility.  He admitted to his

3   crimes to the arresting officers, and he also accepted

4   responsibility by pleading guilty in a pretty timely fashion.

5          He wants to serve his sentence.  He wants to get on

6   with his life and he has a plan.  His plan is to be there for

7   his young son.  His plan is to relocate to western Pennsylvania

8   to be with his family.  His plan is to find a job counseling

9   youth.  He wants to coach youth football.  He wants to maybe

10  train dogs, which he has trained them.  He has a plan and I

11  truly believe he intends to follow through with that.

12         And you may ask me, well, what gives you that idea?

13  Every time I go visit Allen at the jail we have to pull him up

14  from the kitchen because he seems to work 24 hours a day seven

15  days a week in the MCC kitchen.  His work evaluations that I

16  submitted with my submission indicate that he's an outstanding

17  worker, and I'm convinced that that will carry on, if given the

18  opportunity, when he is released from prison.  If given the

19  opportunity to work, if given him the opportunity to perform, I

20  have no doubt in my mind that Mr. Williams will do that and do

21  it successfully.

22         So I'm going to ask that your Honor take all of this

23  into consideration.  The man on paper is not the man I've come

24  to know for the past few months.  It's just not.  The man with

25  the criminal history, the man who committed these crimes is not

F3idwils
Sentence

1    the man that I've sat across numerous times at the jail across

2    the street.  If given the opportunity, if someone takes a

3    chance on him, he will prosper.  I just ask that the Court

4    sentence him to something that is reasonable.

5            Thank you.

6            THE COURT:  Thank you, counsel.

7            Mr. Williams, would you like to speak on your own

8    behalf?

9            THE DEFENDANT:  Thank you, your Honor, for giving me

10   the opportunity.

11           I've made some bad decisions in my life and I regret a

12   lot of them.  And I pray -- you know, I apologize to the people

13   that was present during my robberies.  I apologize to you and

14   the rest of the people that's here for me taking up their time.

15           I know I have to do some time.  I just want the

16   opportunity to get back to my son before he is too old and

17   starts asking questions about what happened and how did I get

18   here.

19           That's all I have, your Honor.  But I'm sorry for what

20   I've done.

21           THE COURT:  Thank you, sir.

22           THE DEFENDANT:  Thank you, your Honor.

23           THE COURT:  Does the government wish to be heard?

24           MR. COOPER:  Briefly, your Honor.  Our position is

25   laid out in our papers, which the Court has.

F3idwils
Sentence

1          We believe that a guideline sentence is entirely

2     reasonable in this case for two main reasons.  One, the

3     seriousness and the gravity of these crimes and the actual

4     details of the robberies.  They were violent robberies, your

5     Honor.  Smashing display cases in the middle of the day, not

6     before customers were present, not at the end of the day, but

7     when employees and customers were in the stores.

8          And I briefly touched on this in the sentencing

9     submission, but in the Richmond, Virginia, robbery, one of the

10    robbers -- we don't believe it was Mr. Williams but he was

11    there for the robbery -- one of his partners in crime used a

12    stun gun to knock out cold a female store employee.  We've seen

13    surveillance video from that robbery.  She was not resisting.

14    There was no need to deploy the stun gun on her but one of the

15    robbers did.  So people did get hurt here.

16         Your Honor is aware of another robbery in the same

17    conspiracy that occurred in Brooklyn.  This defendant was not

18    involved in that robbery.  It is not part of his conduct, but

19    it is part of the overall conspiracy.  And as your Honor is

20    aware from the suppression hearing we had on Monday, the store

21    owner was shot in the leg in the course of that robbery.  So

22    these were very dangerous crimes.

23         The other point that we make, and I just want to

24    underline, is the deterrence point.  The defendant got out on

25    parole in January of 2013.  Not six months later he was already

F3idwils
Sentence

1  engaging in these crimes.  The crime for which he is serving --

2  he had gotten out is the most serious of crimes -- murder.  And

3  rather than turn away from violent crimes, as Mr. DeMarco

4  points out, out of financial desperation he engaged in further

5  violent crimes.  So clearly something did not work in the past

6  with respect to specific deterrence and this defendant.

7           For those reasons primarily, your Honor, we believe

8  that a guidelines' sentence here really is appropriate.  Thank

9  you.

10          THE COURT:  Thank you.

11          Anything to add, Mr. DeMarco?

12          MR. DeMARCO:  Just briefly, your Honor.

13          With respect to the stun gun and the taser used, I

14  just want the record to be clear.  Mr. Williams understands

15  that he's responsible for the acts of his co-conspirators, but

16  he was not aware that a stun going or that a taser were being

17  brought to the robbery or that it would be used against anyone.

18  So I just want that to be clear.  He's responsible for it but

19  he was unaware that it was going to be used or possessed by one

20  of the co-conspirators.

21          THE COURT:  Thank you, sir.

22          Anything else, counsel?

23          MR. COOPER:  No, your Honor.

24          THE COURT:  Very well, then.  Thank you, counsel.

25          As you have heard, I calculated the guidelines and

Sentence

1   have taken them into account.  The total offense level

2   accurately reflects the nature and circumstances of the

3   offense.

4          With respect to the history and characteristics of the

5   defendant, Mr. Williams is in Criminal Category III, which he

6   earned fair and square by his prior crime.  The fact that

7   Mr. Williams reverted to violent crime so quickly after his

8   release is of great concern and does indicate a need to address

9   respect for the law and to keep the public safe from this

10  defendant.  So I take all of that into account.

11         Certainly I will take into account the letters which

12  have been submitted on behalf of Mr. Williams and his splendid

13  work record at the MCC.

14         With respect to the paragraph 2 factors, it seems that

15  a lengthy period of incarceration is required here to reflect

16  the seriousness of the offense, to provide respect for the law,

17  and to provide just punishment for the offense.  It is also

18  necessary for public deterrence.  But as I mentioned, in light

19  of Mr. Williams' reversion to violent crime so quickly after

20  having been released from a very lengthy jail sentence, a

21  lengthy period of incarceration is required to protect the

22  public from other crimes of this defendant.

23         With respect to Paragraph D, providing the defendant

24  with needed educational, vocational training and the like,

25  those matters are less important in this sentencing.

F3idwils
Sentence

1          I've considered the paragraph 3, 4 and 5 factors.  I

2    do not believe there will be a perceived discrepancy, whether

3    warranted or not, but any discrepancy among similarly-situated

4    defendants.

5          The government is seeking restitution, is that right?

6          MR. COOPER:  That is correct, your Honor.

7          THE COURT:  OK.  Taking all of those factors into

8    account, it is my intention to impose a sentence of 108 months

9    incarceration followed by a period of three years of supervised

10   release.  It is my intention to adopt the recommended special

11   conditions of supervised release, including a search, providing

12   financial information, and not incurring new credit charges.

13         With respect to fine, I do not impose a fine on the

14   finding that Mr. Williams is not able to address a fine.

15         It is my intention to impose the restitution amount

16   of $1,091,000.

17         And it is my intention to impose the mandatory $100

18   special assessment.

19         Counsel, is there any reason such a sentence should

20   not be imposed?

21         MR. COOPER:  No, your Honor.

22         MR. DeMARCO:  No, your Honor.

23         THE COURT:  Very well, then.

24         Mr. Williams, you are sentenced, sir, to a period of

25   108 months incarceration.  Following that time, you will spend

F3idwils
Sentence

1    a period of three years on supervised release.

2              During the period of supervised release, you will

3    comply with all of the standard terms and conditions of

4    supervised release.  Among them are that you not commit another

5    federal, state or local crime; you not illegally possess a

6    controlled substance, and you not possess a firearm or other

7    destructive device.

8              In addition to those, and all of the other standard

9    terms and conditions of supervised release, during that period

10   you will submit your person, residence, place of business,

11   vehicle, or any other premises under your control and any

12   electronic devices under your control to a search on the basis

13   that the probation officer has reasonable belief that

14   contraband or evidence of a violation of the terms and

15   conditions of your release may be found there.  The search must

16   be conducted at a reasonable time and in a reasonable manner.

17   Failure to submit to such a search might be grounds for

18   revoking your supervised release.

19             It will be your obligation to inform any other

20   residents of the premises or users of the electronic devices

21   that those items might be subject to search under this

22   condition.

23             In addition, sir, during the period of supervised

24   release, you will provide the probation officer with access to

25   any requested financial information.  Also during that time,

F3idwils
                              Sentence

1    you will not incur any new credit charges or open any

2    additional lines of credit without the approval the probation

3    officer unless you are in compliance with the installment

4    payment schedule.

5            As I mentioned, I do not impose a fine but do impose

6    the restitution amount of $1,091,000.  The restitution amount

7    is joint and several with the other defendants, and payments

8    should begin within one month of the filing of the judgment in

9    this action.

10           If you are engaged in non-UNICOR work, you will pay

11   $25 per quarter toward these financial penalties.  If you are

12   engaged in UNICOR work at a Level 1 through 4, you'll pay

13   50 percent of your earnings toward the criminal financial

14   penalties.  Payments should be made every 30 days.  Upon

15   release, payments shall continue to be made every 30 days but

16   at a rate no less than 10 percent of your gross monthly income.

17   All payments should be made to the Clerk of the Court, United

18   States District Court, Southern District of New York, 500 Pearl

19   Street, New York, New York  10007, and will be disbursed by the

20   Clerk from time to time to the victims of the offense.

21           By the way, I see that I have neglected to ask if

22   there are any victims who wish to be heard.  Are there any

23   victims who wish to be heard?

24           MR. COOPER:  No, your Honor.

25           THE COURT:  Thank you.

F3idwils
Sentence

1        And, finally, sir, I must impose and do impose the

2   $100 special assessment and that should be paid promptly.

3        Sir, it is my duty to inform you that unless you have

4   waived it, you have the right to appeal this sentence and you

5   might have the right to appeal in forma pauperis, which means

6   as a poor person, with the waiver of certain fees and expenses.

7        Mr. DeMarco, did you wish a designation near New York?

8        MR. DeMARCO:  Your Honor, I am just going to ask that

9   your Honor recommend the northeast region.

10        THE COURT:  It is the Court's recommendation that

11   Mr. --

12        MR. DeMARCO:  No.  No recommendation, your Honor.

13        THE COURT:  All right.  Thank you.

14        Is there anything further, counsel?

15        MR. COOPER:  The government, your Honor, moves to

16   dismiss all open counts and underlying indictments.

17        THE COURT:  So ordered.

18        MR. DeMARCO:  Just two things, your Honor, briefly.

19        THE COURT:  Sir.

20        MR. DeMARCO:  Mr. Williams was arrested by -- he was

21   arrested on January 30, 2014, by I believe NYPD, and he was

22   brought into the Southern District on February 18th of 2014.  I

23   am going to ask that the time that he spent on Rikers Island,

24   he receive credit for that.

25        And, also, when he was arrested, the government seized

F3idwils
Sentence

1  a car that Mr. Williams was driving.  The car actually is owned

2  and registered in the name of his wife, Maria Williams.  We are

3  going to ask that the car be released and returned and made

4  available for Ms. Williams to pick up.  She is having some

5  difficult financial times and she can use the car.

6          THE COURT:  Mr. Cooper.

7          MR. COOPER:  Your Honor, my understanding is that the

8  car was initially seized because it was used in the commission

9  of various of these robberies, and so the government's view was

10  that that would be appropriately subject to forfeiture as

11  property used in the commission of the crimes.  The Court

12  ordered restitution today but not forfeiture, so given that, I

13  can contact the agents and see about the release of the car.

14          THE COURT:  All right.  Thank you.

15          MR. COOPER:  Thank you, your Honor.

16          THE COURT:  Anything else, counsel?

17          MR. DeMARCO:  No.  Thank you, your Honor.

18          MR. COOPER:  No, your Honor.

19          THE COURT:  Mr. Williams, I know you are disappointed

20  in the sentence.

21          THE DEFENDANT:  I'm not.

22          THE COURT:  But I have to tell you, sir, had it not

23  been for your words today and the letters that were written in

24  support of you, it would have been the top of the guidelines.

25  So you served yourself well, and you sound like you are serving

F3idwils
                        Sentence

1    yourself very well by working hard and staying in touch with

2    your friends.

3              So I encourage you to do that.  You certainly look

4    like you have all the ability to be a productive citizen, sir,

5    and I hope you'll take advantage of that and do it with respect

6    to your son.

7              THE DEFENDANT:  Thank you.

8              THE COURT:  Thank you, counsel, for your assistance.

9              MR. COOPER:  Thank you, your Honor.

10

11                              -   -   -

12

13

14

15

16

17

18

19

20

21

22

23

24

25