F5E5THOP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                               14 Cr. 130 (LAP)

KENDALL THOMPSON,

            Defendant.

------------------------------x

                                  May 14, 2015
                                  11:05 a.m.

Before:

                HON. LORETTA A. PRESKA,

                                  District Judge

                      APPEARANCES

PREET BHARARA
    United States Attorney for the
    Southern District of New York
BY:   RICHARD A. COOPER
      ANDREA GRISWOLD
      Assistant United States Attorneys

ANTHONY CECUTTI
    Attorney for Defendant

ALSO PRESENT:   DANIEL X. McCAFFREY, Special Agent, FBI

1            (Case called)
2            THE COURT:  Is the government ready?
3            MR. COOPER:  Yes.  Good morning, your Honor.  Richard
4    Cooper and Andrea Griswold.  We are here with Special Agent
5    Daniel McCaffrey from the FBI.
6            THE COURT:  Good morning.
7            Is the defense ready?
8            MR. CECUTTI:  Yes.  Good morning, Judge Preska.
9    Anthony Cecutti with my client Mr. Kendall Thompson.
10           THE COURT:  Thank you.
11           Mr. Cecutti, do I correctly understand that
12   Mr. Thompson wishes to change his plea?
13           MR. CECUTTI:  Yes, your Honor.
14           THE COURT:  Mr. Thompson, would you stand and raise
15   your right hand?
16           (Defendant sworn)
17           THE COURT:  Sir, do you understand that you are now
18   under oath and if you answer my questions falsely, your answers
19   may later be used against you in a prosecution for perjury with
20   the making of a false statement?
21           THE DEFENDANT:  Yes, ma'am.
22           THE COURT:  How old are you, sir?
23           THE DEFENDANT:  31.
24           THE COURT:  Where were you born?
25           THE DEFENDANT:  Brooklyn, New York.

1           THE COURT:  Sir, you are a citizen of the United
2    States?
3           THE DEFENDANT:  Yes, ma'am.
4           THE COURT:  And you read, write, speak and understand
5    English; is that right?
6           THE DEFENDANT:  Yes, ma'am.
7           THE COURT:  How far did you go in school, sir?
8           THE DEFENDANT:  High school, trade school, and some
9    community college.
10          THE COURT:  Excellent.
11          Are you currently or have you recently been under the
12   care of a doctor or a psychiatrist?
13          THE DEFENDANT:  No, ma'am.
14          THE COURT:  Have you been hospitalized or treated
15   recently for alcoholism, narcotic addiction, or any other type
16   of drug abuse?
17          THE DEFENDANT:  No, ma'am.
18          THE COURT:  Have you ever been treated for any form of
19   mental illness?
20          THE DEFENDANT:  No, ma'am.
21          THE COURT:  Are you currently under the influence of
22   any substance such as alcohol, drugs, or any medication that
23   might affect your ability to understand what you are doing here
24   in court today?
25          THE DEFENDANT:  No, ma'am.

Case 1:14-cr-00130-LAP   Document 147   Filed 06/10/15   Page 4 of 18    4
F5E5THOP

1            THE COURT:  Do you feel well enough to understand what
2    you are doing here in court today?
3            THE DEFENDANT:  Yes, ma'am.
4            THE COURT:  Thank you, sir.
5            Have you received a copy of the indictment against
6    you, S4 14 crim 130?
7            THE DEFENDANT:  Yes, ma'am.
8            THE COURT:  Have you gone over it with your attorney?
9            THE DEFENDANT:  Yes, ma'am.
10           THE COURT:  Has Mr. Cecutti explained the charges to
11   you?
12           THE DEFENDANT:  Yes, he has, ma'am.
13           THE COURT:  Have you told Mr. Cecutti everything you
14   know about the matters set out in the indictment?
15           THE DEFENDANT:  Yes, ma'am.
16           THE COURT:  You haven't held anything back from him,
17   have you, sir?
18           THE DEFENDANT:  No, ma'am.
19           THE COURT:  Very good.
20           Counsel, do I correctly understand that there is an
21   agreement between the government and the defendant which is
22   dated May 7, 2015 and which is signed May 14, 2015?
23           MR. COOPER:  Yes, your Honor.
24           THE COURT:  May I ask the government to summarize,
25   please, the terms and conditions in the agreement?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1            MR. COOPER:  Yes, your Honor.

2            Pursuant to the agreement, the defendant is going to

3   enter a plea of guilty to Count One of the indictment which

4   charges conspiracy to commit Hobbs Act Robbery.  With respect

5   to the offense level, your Honor, the defendant is stipulating

6   to an adjusted applicable guidelines offense level of 29 which

7   is based on, among other things, a seven-level enhancement

8   because a firearm was discharged during the commission of this

9   offense which was the robbery of a jewelry store in Brooklyn,

10  New York, in September 2013, as well as a five-level

11  enhancement because a victim sustained more than serious bodily

12  injury during the course of that robbery.  Essentially, the

13  victim was shot in the leg.

14           In addition, your Honor, the other aspect that I have

15  called the Court's attention to is on page 3 where the parties

16  agree not to seek a sentence outside of the stipulated

17  guidelines range or suggest in any way that the probation

18  office or the Court consider a sentence outside the stipulated

19  guidelines range which in this case is 108 to 135 months.

20           THE COURT:  Yes, sir.

21           Mr. Thompson, are those the terms and conditions of

22  the agreement, as you understand them?

23           THE DEFENDANT:  Yes, ma'am.

24           THE COURT:  Do you understand, sir, that in this

25  agreement, you and the government have agreed to a stipulated

1   guidelines range of 108 to 135 months?
2           THE DEFENDANT:  Yes, ma'am.
3           THE COURT:  Do you understand that you and the
4   government have agreed that neither of you will seek a sentence
5   outside of that 108 to 135-month range?
6           THE DEFENDANT:  Yes, ma'am.
7           THE COURT:  Do you also recall, sir, that in this
8   agreement you have agreed not to appeal or otherwise litigate a
9   sentence within that 108 to 135-month range?
10          THE DEFENDANT:  Yes, ma'am.
11          THE COURT:  Sir, have you had enough time to review
12  the agreement, to go over it with Mr. Cecutti, and to have all
13  of your questions answered?
14          THE DEFENDANT:  Yes, ma'am.
15          THE COURT:  I am holding up the original of the
16  agreement, sir.  I am turning to the last page.  Is that your
17  signature over there on the left-hand side under the words
18  agreed and consented to?
19          THE DEFENDANT:  Yes, ma'am.
20          THE COURT:  Am I correct that your willingness to
21  offer to plead guilty is, in part, a result of this agreement
22  between you and the government?
23          THE DEFENDANT:  Yes, ma'am.
24          THE COURT:  Counsel, are there any additional
25  agreements between the government and Mr. Thompson that are not

1    set forth in the written plea agreement?
2            MR. CECUTTI:  No, your Honor.
3            MR. COOPER:  No, your Honor.
4            THE COURT:  Very well.  The agreement is acceptable to
5    the Court.
6            Mr. Thompson, have you been induced to offer to plead
7    guilty as a result of any fear, pressure, threat, or force of
8    any kind?
9            THE DEFENDANT:  No, ma'am.
10           THE COURT:  Have you been induced to offer to plead
11   guilty as a result of any statements other than in your written
12   plea agreement, to the effect that you would get special
13   treatment or special leniency or some kind of special
14   consideration if you pleaded guilty rather than going to trial?
15           THE DEFENDANT:  No, ma'am.
16           THE COURT:  And, do you understand that you have the
17   right to continue in your plea of not guilty and to proceed to
18   trial?
19           THE DEFENDANT:  Yes, ma'am.
20           THE COURT:  Do you understand that if you do not plead
21   guilty, you have a right to a speedy and public trial by a jury
22   of 12 persons?
23           THE DEFENDANT:  Yes, ma'am.
24           THE COURT:  Do you understand that you have the right
25   to be represented by an attorney at trial and at every stage of

1    the proceedings including an appeal, and if you cannot afford
2    an attorney, one will be appointed to represent you free of
3    charge?
4         THE DEFENDANT:  Yes, ma'am.
5         THE COURT:  Do you understand that if your plea of
6    guilty is accepted, there will be no further trial of any kind?
7         THE DEFENDANT:  Yes, ma'am.
8         THE COURT:  Do you understand that if you pleaded not
9    guilty and went to trial, that you would have -- at that trial
10   you would be presumed innocent unless and until the government
11   proved your guilt beyond a reasonable doubt to all 12 jurors?
12        THE DEFENDANT:  Yes, ma'am.
13        THE COURT:  Do you understand that upon such a trial
14   you would have the right to confront and cross-examine all of
15   the witnesses called by the government against you?
16        THE DEFENDANT:  Yes, ma'am.
17        THE COURT:  Do you understand that at such a trial you
18   would have the right to remain silent and no inference could be
19   made against you by reason of your silence or, if you wanted
20   to, you could take the stand and testify in your own defense?
21        THE DEFENDANT:  Yes, ma'am.
22        THE COURT:  Do you understand that at such a trial you
23   would have the right to subpoena witnesses and evidence for
24   your own defense?
25        THE DEFENDANT:  Yes, ma'am.

1  THE COURT:  Do you understand that if your offer to
2  plead guilty is accepted, there will be no further trial of any
3  kind?
4  THE DEFENDANT:  Yes, ma'am.
5  THE COURT:  Do you understand that if you wanted to
6  and if the government agreed, you could have a trial before a
7  judge without a jury, in which event the burden of proof would
8  still be on the government and you would still have the same
9  constitutional rights?
10  THE DEFENDANT:  Yes, ma'am.
11  THE COURT:  Sir, do you understand that upon your plea
12  of guilty to this charge the Court has the power to impose upon
13  you a maximum sentence of 20 years' imprisonment, a maximum
14  period of supervised release of three years, a maximum fine of
15  the greatest of $250,000, twice the gross pecuniary gain
16  derived from the offense or twice the gross pecuniary loss
17  resulting from the offense, together with a $100 special
18  assessment?
19  THE DEFENDANT:  Yes, ma'am.
20  THE COURT:  Sir, do you also understand that in
21  addition to those other punishments that I just mentioned, upon
22  your plea of guilty to this charge, the Court must order you to
23  make restitution?
24  THE DEFENDANT:  Yes, ma'am.
25  THE COURT:  Sir, do you understand that if the terms

1    and conditions of supervised release are violated, you may be
2    required to serve an additional period of imprisonment which is
3    equal to the period of supervised release with no credit for
4    time off for time you have already spent on supervised release?
5             THE DEFENDANT:  Yes, ma'am.
6             THE COURT:  Have you discussed the sentencing
7    guidelines with your attorney?
8             THE DEFENDANT:  Yes, ma'am.
9             THE COURT:  Do you understand that the Court will not
10   be able to determine exactly what guideline applies to your
11   case until after a presentence report has been complete and you
12   and your attorney and the government have a chance to review it
13   and to challenge the facts that are set out there by the
14   probation officer?
15            THE DEFENDANT:  Yes, ma'am.
16            THE COURT:  Sir, do you understand that in determining
17   a sentence, it is the Court's obligation to calculate the
18   applicable sentencing guidelines range and then to consider
19   that range, possible departures from that range under the
20   guidelines, and other sentencing factors set out in the statute
21   18 United States Code, Section 3553(a)?
22            THE DEFENDANT:  Yes, ma'am.
23            THE COURT:  Do you understand that under some
24   circumstances, as set forth in your plea agreement, you or the
25   government might have the right to appeal whatever sentence is

F5E5THOP

1  imposed?

2  THE DEFENDANT:  Yes, ma'am.

3  THE COURT:  Do you understand that parole has been
4  abolished so if you are sentenced to prison, you will not be
5  released on parole?

6  THE DEFENDANT:  Yes, ma'am.

7  THE COURT:  Do you understand that you will not be
8  able to withdraw your plea on the ground that your lawyer's
9  prediction or anybody else's prediction as to the applicable
10  guidelines range, or as to the actual sentence, turns out not
11  to be correct?

12  THE DEFENDANT:  Yes, ma'am.

13  THE COURT:  Do you understand that the offense to
14  which you are pleading guilty is a felony?

15  THE DEFENDANT:  Yes, ma'am.

16  THE COURT:  Are you fully satisfied with the advice,
17  counsel, and representation given to you by your attorney
18  Mr. Cecutti?

19  THE DEFENDANT:  Yes, ma'am.

20  THE COURT:  Am I correct that you are offering to
21  plead guilty because you are in fact guilty?

22  THE DEFENDANT:  Yes, ma'am.

23  THE COURT:  Mr. Thompson, if you wish to plead guilty
24  I am going to ask you to tell me what you did and, as you can
25  see, your answers will be made in Mr. Cecutti's presence and

1    your answers will be recorded on the record.  I remind you

2    again, sir, you are still under oath so if you answer falsely,

3    your answers may later be used against you.

4            Do you understand, sir?

5            THE DEFENDANT:  Yes, ma'am.

6            THE COURT:  Do you still wish to plead guilty?

7            THE DEFENDANT:  Yes, ma'am.

8            THE COURT:  Tell me what you did, Mr. Thompson.

9            THE DEFENDANT:  On September 23rd, 2013, while inside

10   the Litan Jewelry Store, I agreed with others to participate in

11   a robbery.  At this time this robbery was clearly foolish and

12   wrong and I made a terrible decision in my life.  I was

13   experiencing significant financial pressure and I was

14   unemployed and abusing marijuana and other drugs.  My life was

15   going in the wrong direction and I became desperate, and I

16   sincerely regret my decision I made on September 23rd, 2013.

17           I take full responsibility and recognize that because

18   of my actions, I contributed to innocent people being hurt.  I

19   am truly sorry to them and their families.  I accept the

20   consequence of my actions which I know include my sentence and

21   the shame and embarrassment that I feel.  I let down my family

22   and disappointed, in particular my children, my partner, my

23   mother, and my grandfather.

24           Upon my release I am committed to being a responsible

25   person and I will positively contribute to my family,

1     community, and society and am going to provide and sacrifice
2     for my children and raise them the right way so that they will
3     not follow in my mistakes.
4              THE COURT:  Yes, sir.
5              Sir, you knew that that activity that you undertook
6     that day in Brooklyn was unlawful, didn't you, sir?
7              THE DEFENDANT:  Yes, ma'am.
8              THE COURT:  Is there anything further by way of
9     allocution, please?
10             MR. COOPER:  Yes, your Honor.
11             In terms of the charges, the robbery conspiracy
12    charges, Hobbs Act robbery is the object of the offense so a
13    few of the elements that we would request, your Honor, I will
14    follow up on.
15             First, that the defendant obtained or took or
16    attempted to obtain or take property of another.  I can
17    represent to the Court and what we ask the Court to follow up
18    with the defendant on is that this was an armed robbery where
19    three individuals went into the Litan Jewelry Store in
20    Brooklyn, New York.  During the course of the robbery, certain
21    of the robbers smashed display cases and took merchandise
22    including rings from the store.  One of the robbers -- two of
23    the robbers produced and brandished firearms.  One of the
24    robbers fired a shot at one of the victims, the store owner's
25    son.  Another robber, during the course of the robbery, fired a

1     shot at the store owner and struck him in the leg.

2              So, in terms of the first element of Hobbs Act

3     robbery, we would ask the Court to confirm with the defendant

4     that the object was to obtain or take property of another.

5              The second element here is that the property was

6     obtained through force of violence or fear of injury.

7              The third element is that the actions, potentially or

8     actually, obstructed interstate or foreign commerce.  I can

9     represent to the Court that, at trial, the government would

10    have evidence sufficient to prove beyond a reasonable doubt

11    that the jewelry had moved in interstate commerce prior to

12    attempting to being stolen by the defendant and his

13    co-conspirators.

14             THE COURT:  Thank you, Mr. Cooper.

15             MR. COOPER:  Thank you.

16             THE COURT:  Mr. Thompson, when you and the people you

17    were working with went into that jewelry store in Brooklyn, it

18    was your intention to take property by show of force; is that

19    right?

20             MR. CECUTTI:  A moment, your Honor?

21             THE COURT:  Yes, sir.

22             (Defendant and counsel conferring)

23             THE DEFENDANT:  Your Honor, will you repeat the

24    question, please?  I apologize.

25             THE COURT:  Yes, sir.

1          When you and the other individuals you were working
2 with went into the Litan Jewelry Store in Brooklyn that day, it
3 was your plan and your intention to take property of the
4 jewelry store owners by using show of force; is that right,
5 sir?
6          THE DEFENDANT:  Once inside the jewelry store, your
7 Honor, yes, that was the plan.
8          THE COURT:  And two of the individuals with you took
9 out their firearms; is that right, sir?
10         (Defendant and counsel conferring)
11         THE DEFENDANT:  That's my understanding, your Honor.
12         THE COURT:  Is it your understanding as well, sir,
13 that one or more individuals in the store were shot in that
14 escapade?
15         THE DEFENDANT:  Yes, your Honor.
16         THE COURT:  Is it the fact, sir, and is it your
17 understanding, that some of the folks you were working with
18 smashed the jewelry cases and took jewelry out?
19         THE DEFENDANT:  Yes, your Honor.
20         THE COURT:  And Mr. Cecutti, we don't have any issue
21 about interstate commerce here, do we?
22         MR. CECUTTI:  No, your Honor.
23         THE COURT:  Mr. Cooper?
24         MR. COOPER:  I would also proffer, with respect to
25 venue, your Honor, that this is a conspiracy charge and that

1   acts in furtherance of the conspiracy occurred in the Southern
2   District of New York.
3            THE COURT:  Mr. Thompson, is it the fact that when
4   planning the robbery or after the robbery, certain actions took
5   place in here in New York, that is, the Southern District of
6   New York -- that's Manhattan or the Bronx -- in connection with
7   that robbery?  Is that right?
8            THE DEFENDANT:  Yes.
9            THE COURT:  I think I asked you this before but I will
10  ask you again:  You knew that that activity was unlawful,
11  right, sir.
12           THE DEFENDANT:  Yes, ma'am.
13           THE COURT:  Thank you.
14           Mr. Cecutti, do you know of any valid legal defense
15  that would prevail if you went to trial?
16           MR. CECUTTI:  No, your Honor.
17           THE COURT:  Do you know of any reason why Mr. Thompson
18  should not plead guilty?
19           MR. CECUTTI:  No, your Honor.
20           THE COURT:  Very well, then.  The plea is accepted.
21           It is the finding of the Court in the case of the
22  United States against Kendall Thompson that the defendant is
23  fully competent and capable of entering an informed plea, and
24  that his plea of guilty is knowing and voluntary and is
25  supported by an independent basis in fact containing each and

Case 1:14-cr-00130-LAP   Document 147   Filed 06/10/15   Page 17 of 18    17
F5E5THOP

1   every essential element of the offense.
2           My findings are based upon Mr. Thompson's allocution
3   and, in addition, on my observations of Mr. Thompson here in
4   Court today.
5           The plea of not guilty is withdrawn, the plea of
6   guilty is accepted and shall be entered.  The defendant is now
7   adjudged to be guilty of the offense.
8           Now, Mr. Thompson, as you know, you will be required
9   to meet with the probation officer and to give the officer
10  certain information to be included in the presentence report.
11  Mr. Cecutti may be present with you when you visit with the
12  officer if you want, but certainly both you and he and the
13  government will have a chance to read the presentence report
14  prior to sentencing.
15          Sentencing will be on --
16          THE DEPUTY CLERK:  September 2nd at 10:00 a.m.
17          THE COURT:  Is there anything further today, counsel?
18          MR. COOPER:  Your Honor, there is also a forfeiture
19  allegation in the indictment and pursuant to the plea
20  agreement, the defendant is admitting to the forfeiture
21  allegation.  We would just ask the Court to confirm with the
22  defendant that he is admitting to the forfeiture allegation in
23  the indictment.
24          (Defendant and counsel conferring)
25          THE COURT:  Mr. Thompson?

(212) 805-0300

F5E5THOP

1           THE DEFENDANT:  Yes, ma'am.
2           THE COURT:  In the indictment there is an allegation
3   where you agree that in committing the offense, the robbery
4   that we have been talking about, you have agreed to forfeit all
5   proceeds of that robbery in your possession.
6           Do you recall that, sir?
7           THE DEFENDANT:  Yes, ma'am.
8           THE COURT:  And you agree to that too, right?
9           THE DEFENDANT:  Yes, ma'am.
10          THE COURT:  Thank you, sir.
11          Mr. Cooper, is there anything further?
12          MR. COOPER:  No.  Thank you, your Honor.
13          THE COURT:  Mr. Cecutti, anything else?
14          MR. CECUTTI:  No, your Honor.  Thank you.
15          THE COURT:  Thank you, counsel.  Good morning.
16          Thank you, Mr. Marshal.
17          THE DEFENDANT:  Thank you.
18                              o0o