F8A8ROBS

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          14 Cr. 130 (LAP)

5    SEAN ROBINSON,

6              Defendant.

7    ------------------------------x

8                                      August 10, 2015
                                       11:00 a.m.
9
     Before:
10
                    HON. LORETTA A. PRESKA
11
                                       District Judge
12
                         APPEARANCES
13
     PREET BHARARA
14        United States Attorney for the
          Southern District of New York
15   ANDREA GRISWOLD
     RICHARD COOPER
16        Assistant United States Attorneys

17   LOUIS V. FASULO
          Attorney for Defendant
18

19
     Also present:  DANIEL McCAFFREY, FBI
20                   CHRISTOPHER CAMPBELL, FBI

21

22

23

24

25

F8A8ROBS

1        (Case called)

2        THE COURT:  Is the government ready?

3        MS. GRISWOLD:  Yes.  Good morning, your Honor.  Andrea

4   Griswold and Richard Cooper for the government.  With us at

5   counsel table is paralegal Sarah Stein from our office and

6   Special Agents Daniel McCaffrey and Christopher Campbell with

7   the FBI.

8        THE COURT:  Good morning.

9        Is the defense ready?

10        MR. FASULO:  Yes, your Honor, and good morning.  Louis

11   Fasulo, Fasulo, Braverman & Di Maggio, along with Michael

12   Giordano, a law clerk with our office, and Mr. Sean Robinson

13   sitting in the center.

14        THE COURT:  Good morning.

15        Mr. Fasulo, have you and your client had adequate time

16   to review the presentence report?

17        MR. FASULO:  We have, your Honor.

18        THE COURT:  Is there any reason it should not be made

19   part of the record?

20        MR. FASULO:  There is none, your Honor.

21        THE COURT:  Very well.  Are there any objections to

22   the presentence report?

23        MR. FASULO:  None, your Honor.

24        THE COURT:  Thank you.

25        With respect to the offense level computation, I

F8A8ROBS

1    accept the findings of the presentence report set forth at

2    paragraphs 53 through 103.

3              I will note only the following very minor corrections.

4              Paragraph 77.  That increase is pursuant to Section

5    2B3.1(b)(7)(B).

6              With respect to paragraph 96, the adjusted offense

7    level for group 4 should be 29 and not 28, but it does not

8    affect the units that are assigned to this group, and it

9    certainly does not affect the total offense level.

10             Thus, a total offense level of 37 is appropriate.

11             With respect to the defendant's criminal history, I

12   accept the findings of the presentence report set forth at

13   paragraphs 104 through 122, which include that a criminal

14   history category of III is appropriate.

15             Mr. Fasulo, I have your sentencing memorandum dated

16   July 27, and I have two of your letters, each dated August 6,

17   sending additional letters written on behalf of Mr. Robinson.

18             I also have the government's sentencing memorandum,

19   which is dated August 5.

20             Are there any additional written materials I should be

21   looking at?

22             MS. GRISWOLD:  No, your Honor.

23             MR. FASULO:  No, your Honor.

24             THE COURT:  Very well.

25             Mr. Fasulo, would you like to speak on behalf of Mr.

1   Robinson?

2           MR. FASULO:  If I may, Judge, briefly.

3           THE COURT:  Yes.

4           MR. FASULO:  As the Court is aware, this case was

5   scheduled for trial, and close to the trial date, after months

6   and months of preparation and getting ready for trial, Mr.

7   Robinson entered a plea of guilty, accepted the plea terms from

8   the government, and appeared in this court and gave an

9   allocution.

10          I don't want the sentencing memorandum in any way to

11  reflect that the defendant is not abiding by that plea

12  agreement.  However, I do think it is important for the Court

13  to consider under 3553(a) some of the issues that I have

14  mentioned in my sentencing memo.

15          As to the acceptance of responsibility, Mr. Robinson

16  has never wavered on the acceptance of responsibility in any

17  way.  The point of the enhancement for the leadership role was

18  that during the course of these robberies, and as the

19  government stated in their letters, the people involved in

20  these robberies had some criminal history and had knowledge and

21  had some background in committing robberies.  They weren't

22  preyed upon, as they state in their memo; they had a role in

23  the commission and the organization of these robberies as well.

24  It doesn't diminish Mr. Robinson's role; however, it does also

25  indicate these were not individuals who were just grabbed up on

F8A8ROBS

1     the street who had no access or history in the criminal justice

2     system, or specifically in these types of robberies.  Saying

3     that, it's hardly mitigation; however, I think it's

4     clarification.

5               Second, Judge, I think that what is important here is

6     also the letter that I refer to in my sentencing memo, which is

7     the letter from the government on May 5, in which the

8     government states that during and in preparation for the trial

9     in this case -- and I can only go by reading of the letter

10    since I was not party to the conversation, but what I think is

11    important, especially in this particular case, based on the

12    allegations and what happened in these robberies, is that

13    during the interview of a witness who participated in the

14    robberies, according to the government, the witness stated, in

15    sum and substance, and in part, that he understood that

16    Robinson preferred to organize "smash and grab" robberies

17    because these types of robberies were in and out and did not

18    require the use of guns.  To me, that mitigates in terms of the

19    nature and the expectations of these offenses, and whether or

20    not Mr. Robinson is known to be a reckless violent person or

21    whether he was hoping to commit these offenses in a way that

22    was nonviolent in some degree.

23               So, I think that although, again, it's not a major

24    mitigation, it is a clarification.  And I think it's an

25    important clarification in this case because of the nature of

F8A8ROBS

1    the offenses that took place.  One, which the defendant readily

2    admits, is that these offenses were in public places where

3    other people were; that in and of itself put the public in

4    harm.  Mr. Robinson admits that.  Two is that they were solely

5    for the greed of the participants in those particular

6    robberies.  Mr. Robinson agrees to that.  And Mr. Robinson also

7    agrees that his participation was one which was an outside

8    participation; he was not in the physical locations of the

9    robberies themselves.

10           So, he understands the nature of the offenses, he

11   understands the seriousness of the offenses, and he took a plea

12   of guilty to that with that full understanding.

13           He comes to you today to say to the Court, if you look

14   at the guidelines and we look at the sentences of the other

15   defendants in this case, specifically, Mr. Williams who was

16   given 108 months by the Court, and Mr. Ratliff who was given a

17   33-month sentence, the guidelines for Mr. Robinson are far

18   beyond the scope of either of those two defendants.  And based

19   on the parity of the participation in these crimes --

20           THE COURT:  But there is some need for parity here.

21   Mr. Ratliff pleaded to participating in only one robbery and

22   Mr. Williams to four.  Mr. Ratliff had a criminal history

23   category of I.  So this doesn't seem to help you much.

24           MR. FASULO:  I understand that in terms of my request.

25           I also have a secondary request, and that is for the

F8A8ROBS

1    Court to look at it in comparison to the two defendants that

2    were sentenced in this case and to what the guidelines indicate

3    that Mr. Robinson should be sentenced to, which is beyond

4    actually, as the Court is aware, the statutory mandatory term.

5            THE COURT:  I am aware of that.

6            MR. FASULO:  So, in terms of the 20-year sentence,

7    that's really what I am hopeful that the Court will have a keen

8    eye on and to look at a sentence more in parity with the other

9    two defendants in this case.

10           I recognize and respect the understanding that Mr.

11   Robinson's sentence may be closer to Mr. Williams's sentence,

12   but certainly it seems to me that the statutory maximum here is

13   far beyond that, and I don't believe that Mr. Robinson put

14   himself in a position to receive that sentence from the Court.

15   And that's why I make that argument.  It's a parity of both of

16   the defendants.  And I understand it doesn't help me in my

17   argument to get a 48-month sentence, as I request in my motion,

18   which I would like you to consider, but it does help in

19   understanding where Mr. Robinson's sentencing may have to be,

20   and we understand that that may be closer to Mr. Williams's

21   sentence.

22           THE COURT:  Mr. Williams was not a leader or an

23   organizer, and he didn't participate in the robberies that

24   involved firearms, right?  Mr. Robinson has a lot more on his

25   plate than either of these other two individuals.

F8A8ROBS

1      MR. FASULO:  That is true, Judge.  However, Mr.

2  Robinson also wasn't present at the scene of the incidents

3  themselves and did not conduct any of the violence.

4      THE COURT:  I am not sure that argues in his favor,

5  Mr. Fasulo.  He was putting those other people out there in

6  harm's way while he was standing back at a safe distance, and

7  then relieved them of the proceeds of the robberies immediately

8  after the robberies.  I am not sure that argues in his favor;

9  it emphasizes his leadership role.

10      MR. FASULO:  I would agree with that, except that if I

11  look at it in conjunction with the statement that the

12  government is aware of the codefendant that was involved in

13  these robberies, and who was one of the people who said that

14  Mr. Robinson was organizing, and one of the people the

15  government was relying on in the prosecution of this case, that

16  individual in and of himself says that Mr. Robinson was not

17  interested in the violent nature of these robberies and didn't

18  want to commit these types of robberies because they were in

19  and out.  So the only inference from that would be that Mr.

20  Robinson would prefer that these robberies occur in a way that

21  were nonviolent.  He takes responsibility for it because he was

22  involved in it.

23      THE COURT:  He obviously pleaded to the use of

24  firearms.

25      MR. FASULO:  He takes responsibility for it, but

F8A8ROBS

1   doesn't necessarily mean that he was involved in the planning

2   of the bringing of that gun to that robbery or the alleged

3   shooting that occurred at that robbery in addition.

4          THE COURT:  All right.

5          MR. FASULO:  There may be knowledge that it could have

6   happened, but it seems to me the witnesses would indicate that

7   it wasn't his intent to have that violence occur.

8          THE COURT:  Except the witness indicates that he

9   really doesn't have that much knowledge of what went on in any

10   event.

11          MR. FASULO:  Only of that one robbery.

12          THE COURT:  That was the part deleted from his letter.

13          MR. FASULO:  Only in that one letter.

14          THE COURT:  We have Mr. Hansen who was recruited by

15   Mr. Robinson, who had a prior violent criminal history,

16   including armed robberies.  So it can't be that it's not

17   foreseeable.

18          MR. FASULO:  I have read that also in the government's

19   papers.

20          THE COURT:  All right.

21          MR. FASULO:  That's my clarification as to where we

22   were in the plea and what Mr. Robinson is accepting

23   responsibility for, and I just wanted that to be clear.

24          THE COURT:  Yes, sir.

25          MR. FASULO:  Finally, I just want to talk a little bit

F8A8ROBS

1    about Mr. Robinson, his family and his future.

2         It is true that he is in category III.  As the Court

3    is aware, if you look at the underlying offenses that put him

4    there, they were not of the most violent nature of offenses.  I

5    think we have just talked about the points that Mr. Robinson

6    received, and two points came from a petty larceny case back in

7    2000, one for a marijuana case where he got time served in

8    2006, and one again for a petty larceny case in 2008.

9         THE COURT:  But in paragraph 107, he got no points

10   having used physical force to remove property from the

11   complainant.  In paragraph 110, he cut the complainant with a

12   razor blade while robbing him; he got no points for that.  In

13   paragraph 112, he and two others pointed a firearm at the

14   complainant and fired a shot; he got no points for that.

15        MR. FASULO:  That is true.  All those offenses are on

16   his record.  I understand that.

17        THE COURT:  Yes, sir.

18        MR. FASULO:  Saying that, I do believe that it is

19   something the Court can consider because, in fact, those

20   offenses, which bring him to the point just under the

21   guidelines now of category III, those were the specific

22   offenses that brought him there.

23        Furthermore, he is not a young man.  He has his family

24   here.  His wife and the mother of his two children are here,

25   both Sean, his youngest son; the mother of his daughter is here

F8A8ROBS

1    as well.  His sister is here as well as his nephew.  They are

2    all willing to provide the resources necessary for Sean to get

3    out of jail, get himself organized again, get back into the

4    music and clothing business, one which he was exploring when he

5    was arrested for these offenses, and to lead a much more

6    law-abiding life.

7            There is no doubt and we are not standing here

8    thinking Mr. Robinson doesn't deserve a significant sentence in

9    this case.  I understand that.  And I understand that would

10   serve the needs of a fair sentence in this matter.  But the

11   question is, where is that significant sentence?  And based on

12   these offenses, we would ask the Court to consider a sentence

13   closer in range to the defendants who were already sentenced in

14   this case rather than to the statutory mandatory 20 years.

15           THE COURT:  Yes, sir.  Thank you.

16           Mr. Robinson, do you wish to speak on your own behalf?

17           THE DEFENDANT:  Yes, your Honor.

18           THE COURT:  Yes, sir.

19           THE DEFENDANT:  I just wanted to say to your Honor, to

20   the Court, that I am very sorry for involving myself in these

21   crimes, committing these crimes.  Truthfully, I'm not a bad

22   person.

23           Again, I am truly sorry for committing these crimes

24   and involving myself in these crimes.  I was on the right path

25   trying to do my clothing stuff and my music, but I got caught

F8A8ROBS

1    up, as you know, being around the wrong individuals in my

2    neighborhood, and it led me to this place here.

3          I just really want to be there for my kids and my

4    family that truly need me there.  My kids, they are at a

5    certain age where it's really hurting them that I am not there

6    for them.  I am just truly sorry for everything that happened.

7    I just really want to get back to life and put this behind me

8    and stay on the right track and just basically work and provide

9    for my family and my kids.  I just want to truly say I am sorry

10   for everything that happened, your Honor.

11          THE COURT:  Yes, sir.  Thank you.

12          Does the government wish to be heard?

13          MS. GRISWOLD:  We do, your Honor.

14          We would like to begin by playing a very short clip

15   from a 911 call, if we may.

16          THE COURT:  Yes, ma'am.

17          (Audiotape played)

18          MS. GRISWOLD:  Your Honor, we wanted to start with

19   that clip because the victims in this case are very real

20   victims.  None of them elected to come to talk to your Honor or

21   submit a letter.  Most of these robberies were over two years

22   ago, and they want to move on with their lives, and we

23   understand that.

24          That 911 call is from a robbery where the robbers

25   didn't even make it into the store, and we thought we would

F8A8ROBS

1    play that one to illustrate the emotional trauma that the

2    victims had to endure in this case.  On the other end of the

3    spectrum is the September 23, 2013 robbery, where they did gain

4    entrance to the store, which was a family operated smaller

5    store, where, as your Honor knows, the owner ended up being

6    pistol-whipped and shot in the leg while his son, who was also

7    shot at, looked on.  These are very important instances in

8    these people's lives, and so we wanted to start there.

9            We put a submission in to your Honor articulating why

10   we think a guideline sentence is appropriate in this case

11   because of the nature of the conduct and the defendant's role

12   here.  But what we want to focus on today, because we know that

13   the Court has read our submission, we want to focus on the

14   defendant's role, and specifically the defendant's attempt to

15   kind of recast history in our view with respect to his role and

16   history and the conspiracy here.

17           Now, we understand that every defendant who comes

18   before the Court wants to cast themself in the best possible

19   light, and that's understandable and that makes sense.  But

20   here we believe that there has been an attempt to recast

21   history inaccurately and to change what actually happened here.

22   And from our view, that's not OK because the facts of what

23   really happened do matter.  So I would like to just take a

24   minute and step back and talk about the conspiracy and the

25   investigation here.

F8A8ROBS

1          This was truly an interstate robbery crew, where we

2    had robberies in different states, very properly federally

3    charged here.  And the prosecutors in this case, because we got

4    so close to trial, we spent a lot of time going to the

5    individual police precincts meeting with victims.  And what we

6    came to learn is that each of these robberies was investigated

7    at the precinct level, and they might originally catch one of

8    the in-store robbers who left his DNA on the glass, but Mr.

9    Robinson never would have been caught in this case had it not

10   been for the interstate robbery team at the FBI.  And he very

11   deliberately planned these robberies in that manner on purpose,

12   so that he wouldn't be in the store and he wouldn't be caught.

13          Now, he comes before the Court, and repeatedly in his

14   submission and in his counsel's remarks today points to the

15   fact that he wasn't present as something that should mitigate

16   against a significant sentence.  We think quite the contrary.

17   His role here as the leader, who set up this -- he even said it

18   best when he came and pled guilty.  He was the leader in spades

19   here.  He planned the robberies, he chose the locations, he

20   recruited vulnerable individuals, and he had the connections to

21   fence these goods.  And because of the extraordinary

22   investigation the FBI did here, they were able to put it

23   together.  He was not charged in the original indictment in

24   this case, but through cell site evidence and working piece by

25   piece, we were able to put together a picture of what happened

F8A8ROBS

1    here.  And what happened here was that Mr. Robinson recruited

2    dangerous individuals to go into stores and commit dangerous

3    robberies.

4           One point I want to respond to, that defense counsel

5    pointed out that he is not a violent individual.  The

6    guidelines here reflect exactly what Mr. Fasulo is arguing.  He

7    pled guilty to a Hobbs Act robbery with a gun enhancement for

8    the one robbery where a gun was used.  And that's the

9    guidelines we are asking you to apply here.

10          I also just want to focus on the chronology here.  We

11   have the September 23, 2013 robbery where a store owner was

12   shot.  And then after that, we have four more robberies, where

13   individuals Mr. Robinson has recruited are going into stores.

14   And any number of things can happen, as we know, when a store

15   is robbed during the daylight with the store owners, employees

16   and customers in the store.  After that robbery, the same

17   individuals who had gone into that store, including Mr. Ralik

18   Hansen who we believe had the gun, he recruited to do

19   additional robberies.  So the idea that he was not being

20   reckless about the violence and the damage that could ensue

21   from the following robberies, we take issue with that.

22          I will end by responding to this point, and it's clear

23   that your Honor was pushing back a little bit on this earlier.

24   But in terms of the guideline sentences, and they were

25   guideline sentences, that were imposed on Mr. Ratliff and Mr.

F8A8ROBS

1    Williams, we do believe that it would be an unwarranted

2    sentencing disparity for Mr. Robinson to get a large variance

3    from the guideline sentence what should be imposed here, which

4    is 240 months.  He pointed out that these individuals that he

5    committed these robberies with, that he recruited, also are

6    responsible, and they are, and they have taken responsibility,

7    and they have been sentenced in line with their guidelines, and

8    that's what we are asking the Court to do here.

9              Thank you.

10             THE COURT:  Thank you.

11             Mr. Fasulo, anything else to add, sir?

12             MR. FASULO:  No, your Honor.

13             THE COURT:  Thank you.

14             Counsel, as you have heard, I have calculated the

15   guidelines and certainly have taken them into account.

16             The guidelines accurately reflect, and especially the

17   total offense level accurately reflects the nature and

18   circumstance of the offense.  And to repeat, in part, what

19   counsel have said here, these were very serious offenses, with

20   very serious consequences to the victims of the offenses, to

21   the bystanders and the like.

22             With respect to the history and characteristics of the

23   defendant.  As I noted while talking with counsel, this

24   defendant has a lengthy criminal history, and he hasn't even

25   gotten credit for all of it, as reflected in the calculation of

F8A8ROBS

1    his criminal history category.

2              As I have noted, at an early age, as reflected in

3    paragraph 107, the defendant robbed an individual using

4    physical force and causing physical injury.

5              Paragraph 110 reflects the defendant cutting a

6    complainant with a razor blade resulting in serious injury to

7    the complainant during the robbery.  No criminal history

8    points.

9              Paragraph 112 reflects that the defendant and two

10   others pointed a firearm at the complainant and fired one shot

11   in an attempt to cause death.  Defendant received no criminal

12   history points for that.

13             The literature seems to indicate that often defendants

14   age out of criminal activity.  That has not happened here.  As

15   the presentence report indicates, defendant had his first

16   encounter with the criminal justice system in 1986, at the age

17   of 15.  He continues today.  I believe Mr. Robinson is 43 and

18   these offenses happened in the very recent past.

19             The presentence report indicates convictions at 29, 35

20   and 37, and an additional arrest at age 36 for receiving stolen

21   property and burglar tools.

22             I also note, with respect to the history and

23   characteristics of the defendant, that in contrast to what both

24   Mr. Fasulo and Mr. Robinson have said about Mr. Robinson's

25   desire to return to his family, the presentence report does not

F8A8ROBS

indicate any particular support for Mr. Robinson's various

families other than some sneakers and clothing.  It does note

he hasn't been required to pay child support, but doesn't note

that he has paid any.

        With respect to the paragraph 2 factors, counsel are

correct that a serious sentence is required here to reflect the

seriousness of the offense.  I note in the presentence report

that the presentence officer states, "Robinson's involvement in

the instant offense reflects his total disregard for the law."

In order to teach Mr. Robinson some respect for the law, a

serious sentence is required.

        The paragraph B factor of public deterrence is always

present and is certainly present in this case.

        With respect to paragraph C, protecting the public

from further crimes of this defendant, as I have noted, this

defendant has continued his violent activities beginning at age

15 and extending through the current time.

        To the extent that the defendant notes that he was not

present at the scene of these crimes, it is clear from the

investigation, and as reflected in the presentence report, Mr.

Robinson planned and organized all of these robberies.  He

chose the individuals to participate in them, including Ralik

Hansen, an individual with a violent criminal history that

included armed robberies of jewelry stores.

        Mr. Robinson gave the instructions.  Mr. Robinson

F8A8ROBS

     1   chose the locations of the robberies.  And Mr. Robinson was in

     2   contact with the robbers by cell phone as the robberies

     3   proceeded.  He met the robbers immediately after each robbery

     4   and relieved them of the proceeds of the robberies.

     5          So, Mr. Robinson's history indicates a very serious

     6   need to protect the public from further crimes of this

     7   defendant.

     8          The paragraph D factors pale in comparison to all the

     9   rest.

    10          I have considered the paragraph 3, 4 and 5 factors.

    11          With respect to paragraph 6, the need to avoid

    12   unwarranted sentencing disparities, I have listened to Mr.

    13   Fasulo, and I have read the submission with respect to the

    14   other two individuals.  But if Mr. Robinson were granted a

    15   serious variance here, it would indeed be an unwarranted

    16   sentencing disparity.  I note that Mr. Ratliff pleaded guilty

    17   to participating in only one robbery as to opposed to the six

    18   on Mr. Robinson's plate, and he had a criminal history category

    19   of I.  He was sentenced to a guideline sentence.  Mr. Williams

    20   pleaded guilty to participating in four robberies and had a

    21   criminal history category of III.  He was sentenced to a

    22   guideline sentence.  So, to the extent that counsel is seeking

    23   a wide variance for Mr. Robinson, that would be, in my view, an

    24   unwarranted sentencing disparity.

    25          Paragraph 7 is of lesser import here in light of the

F8A8ROBS

1   reality of Mr. Robinson's financial situation.

2          Taking all of those factors into account, counsel, it

3   is my intention to follow the recommendation of the presentence

4   report and to sentence Mr. Robinson to 240 months'

5   incarceration.  That will be followed by a period of three

6   years of supervised release.

7          It is my intention to adopt the special conditions of

8   supervised release that are recommended:  Participation in a

9   drug program, submission to a search, providing requested

10  financial information, and not incurring new credit charges

11  unless in compliance with the installment payment schedule.

12         It is my intention not to impose a fine but to impose

13  the restitution amount of $1,106,000.

14         Is the government seeking any forfeiture here?

15         MS. GRISWOLD:  No, your Honor.

16         THE COURT:  It is also my intention to impose the

17  mandatory $100 special assessment.

18         Is there any reason, counsel, why such a sentence

19  should not be imposed?

20         MS. GRISWOLD:  No, your Honor.

21         MR. FASULO:  No, your Honor.

22         THE COURT:  Very well then.

23         Mr. Robinson, you are sentenced, sir, to a period of

24  240 months' incarceration.

25         Following that time, you will spend a period of three

F8A8ROBS

         1    years on supervised release.  During the period of supervised

         2    release, you will comply with all of the standard terms and

         3    conditions of supervised release.  Among them are that you not

         4    commit another federal, state or local crime; you not illegally

         5    possess a controlled substance; and you not possess a firearm

         6    or other destructive device.

         7              In addition to those and all of the other standard

         8    terms and conditions of supervised release, during that period

         9    you will participate in an outpatient treatment program

        10    approved by the probation officer.  That program will include

        11    testing to determine whether you have returned to the use of

        12    drugs or alcohol.

        13              The Court authorizes the release of available drug

        14    treatment evaluations and reports, including the presentence

        15    investigation report, to the substance abuse treatment

        16    provider.

        17              Sir, you might be required to pay some or all of the

        18    costs of that program depending on your ability to pay and the

        19    availability of third party payment.

        20              In addition, during the period of supervised

        21    release -- I can't see you, Mr. Robinson, if you're hiding

        22    behind that computer screen.

        23              THE DEFENDANT:  I am not hiding; I had my head down.

        24              THE COURT:  In that period, you will submit your

        25    person, residence, place of business, vehicle, electronic

F8A8ROBS

devices or other premises under your control to a search on the
ground that the probation officer has reasonable belief that
contraband or evidence of a violation of the terms and
conditions of your release can be found there.  Such a search
must be conducted at a reasonable time and in a reasonable
manner.  Failure to submit to such a search may be grounds for
revoking your supervised release.  It will be your obligation
to inform other residents of the premises or users of the
electronic devices that they might be subject to a search under
this condition.

        In addition, sir, during the period of supervised
release, you will provide the probation officer with access to
any requested financial information.

        In addition, during that period, you will not incur
any new credit charges or open any additional lines of credit,
without the approval of the probation officer, unless you are
in compliance with the installment payment schedule.

        As I mentioned, I do not impose a fine, but do impose
restitution in the total amount of $1,106,000.

        Payments on the restitution amount shall begin 30 days
after the entry of judgment in this case.  Payment will be
made, pursuant to the Bureau of Prisons' regulations, monthly.
All payments shall be made monthly to the clerk of the court,
United States District Court, 500 Pearl Street, New York, New
York  10007.  The clerk shall disburse payments from time to

F8A8ROBS

1    time to the victims listed at page 32 of the presentence report

2    pro rata according to their losses.  Following release, sir,

3    you will pay 15 percent of your gross monthly income as

4    restitution, also payment monthly, also to the clerk of the

5    court.

6           Finally, I must impose and do impose the $100 special

7    assessment, and that should be paid promptly.

8           It is my duty to inform you, sir, unless you have

9    waived it, you have the right to appeal this sentence, and you

10   might have the right to appeal in forma pauperis, which means

11   as a poor person with the waiver of certain fees and expenses.

12          Counsel, is there anything further?

13          MS. GRISWOLD:  The government would move to dismiss

14   the open counts on this indictment and dismiss the underlying

15   indictment.

16          THE COURT:  So ordered.

17          Mr. Fasulo, did you wish a recommendation?

18          MR. FASULO:  Someplace close to New York City.

19          THE COURT:  It is the Court's recommendation that Mr.

20   Robinson be designated to a facility as close as possible to

21   New York City so that his families are able to visit with him.

22          Anything else?

23          MR. FASULO:  No, your Honor.

24          THE COURT:  Thank you, counsel.  Good morning.

25                                oOo