1

F927THOS

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                        14 Cr. 130 (LAP)

5    KENDAL THOMPSON,

6                   Defendant.

7    ------------------------------x
                                         New York, N.Y.
8                                        September 2, 2015
                                         10:00 a.m.
9

10   Before:

11                   HON. LORETTA A. PRESKA
                                         District Judge
12

13                      APPEARANCES

14   PREET BHARARA
          United States Attorney for the
15        Southern District of New York
     BY:  RICHARD COOPER
16        Assistant United States Attorney

17   ANTHONY CECUTTI
     ALEX LESMAN
18        Attorneys for Defendant

19

20

21

22

23

24

25


                    SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

2

F927THOS

1            THE COURT:  Good morning, ladies and gentlemen.  Won't

2     you be seated.

3            (Case called)

4            (In open court)

5            MR. COOPER:  Good morning, your Honor.  Richard Cooper

6     for the government.

7            THE COURT:  Good morning.  Is the defense ready?

8            MR. CECUTTI:  Yes, your Honor.  Good morning.  Anthony

9     Cecutti for Mr. Thompson, and I'm also joined by Alex Lesman.

10           THE COURT:  Good morning.  Mr. Cecutti, have you and

11    your client had adequate time to review the presentence report?

12           MR. CECUTTI:  We have, your Honor.

13           THE COURT:  Is there any reason it should not be made

14    part of the record?

15           MR. CECUTTI:  No.  Your Honor, I do have one issue I

16    would like to raise with respect to the probation report.

17           THE COURT:  Yes, sir.

18           MR. CECUTTI:  I had submitted objections to probation

19    back on July 28, and in my objections one of the objections I

20    made had to do with an offense that Mr. Thompson was involved

21    in back on July 26, 2011.  It's actually paragraph 64 of the

22    final PSR.

23           THE COURT:  Yes, sir.

24           MR. CECUTTI:  And my objection is that the language

25    used to describe the offense is misleading, because it suggests

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

3

F927THOS

1   that Mr. Thompson was in actual possession of a loaded firearm

2   inside a car.  The description actually doesn't even contain

3   the fact that Mr. Thompson was inside a car, and the point that

4   I want to raise in my objection, your Honor, is that

5   Mr. Thompson was inside a car that he did not own, he was not

6   the driver; he was a passenger in that vehicle.  It was unknown

7   to him that a gun was in the car.  The passengers along with

8   Mr. Thompson and the driver were all arrested.  Mr. Thompson

9   was charged with the possession of the firearm along with

10  possession of narcotics, misdemeanor quantity of narcotics.

11  Mr. Thompson ended up being convicted of misdemeanor possession

12  of narcotics, and the gun charge was dismissed.

13          My objection again, your Honor, is that this paragraph

14  is misleading, suggesting Mr. Thompson was in possession of a

15  gun when in fact he was not.

16          THE COURT:  As I read probation's response on page 19,

17  and looking back at paragraph 64, it seemed that probation was

18  simply echoing the police report.

19          MR. CECUTTI:  That may be true, your Honor.

20          THE COURT:  And I don't think it changes the criminal

21  history calculation.

22          MR. CECUTTI:  Correct, yes.

23          THE COURT:  OK.  I have one other question.  In

24  paragraph 70, which is the state arrest apparently in

25  connection with this offense, it says here that Mr. Thompson

(212) 805-0300

4

F927THOS

1   was charged with murder in the second degree.  What was that

2   about?  Nobody was killed.

3           MR. CECUTTI:  Correct, your Honor.  I think that

4   initially Mr. Thompson and the other defendants were charged

5   with that offense incorrectly.

6           THE COURT:  Obviously.

7           MR. CECUTTI:  Right.

8           THE COURT:  OK, so that was just a mistake.

9           MR. CECUTTI:  I believe so, yes.

10           THE COURT:  OK.  Are there any other objections to the

11   presentence report?

12           MR. CECUTTI:  Not from us, your Honor.

13           THE COURT:  Thank you.  With respect to the offense

14   level computation, I accept the findings of the presentence

15   report set forth at paragraphs 49 through 60, which conclude

16   that a total offense level of 29 is appropriate.

17           With respect to the defendant's criminal history, I

18   accept the findings of the presentence report set forth at

19   paragraphs 61 through 70, which conclude that a Criminal

20   History Category of III is appropriate.

21           Counsel, I have the defendant's sentencing memorandum

22   dated August 27, I have the government's sentencing submission

23   dated September 1, and I have Mr. Cecutti's letter of August

24   31.  Are there any additional written materials I should be

25   looking at?

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

5

F927THOS

1              MR. COOPER:  No, your Honor.

2              MR. CECUTTI:  No, your Honor.

3              THE COURT:  Thank you.  Mr. Cecutti, would you like to

4     speak on behalf of Mr. Thompson?

5              MR. CECUTTI:  Yes.  Under the plea agreement, your

6     Honor is well aware and the government is well aware that I

7     can't ask for a sentence below 108 months, but I will note that

8     probation does recommend a sentence below the guidelines of 72

9     months, and that's based primarily on a variance related to

10    what the other defendants in this case have received.

11             And I will get into this a little further, your Honor,

12    but to bring it to the court's attention now, Mr. Rafliff was

13    sentenced by Judge Patterson and received a sentence of 33

14    months.  Ryan Campbell most recently by Judge Scheindlin was

15    sentenced to 70 months.  Your Honor is well aware that

16    Mr. Robinson was sentenced to the maximum of 240 months.  And

17    Allen Williams was sentenced by your Honor to 108 months.

18             And I simply ask that your Honor consider the 3553(a)

19    factors, especially those that I highlighted in our submission

20    and impose a sentence today that is sufficient but not greater

21    than necessary.

22             We made an effort, your Honor, to provide a

23    comprehensive set of materials for your Honor to evaluate to

24    consider what the appropriate sentence will be, and I'm not

25    going to get into everything that we had submitted to your

(212) 805-0300

F927THOS

1    Honor back on August 27, however, I do want to raise a couple

2    of points that I think are worth mentioning today.  The first

3    one is the nature of the offense and, secondly, the sentences

4    that were received by the other defendants that I just

5    mentioned.  And I do have some final thoughts as well.

6           With respect to the nature of the offense,

7    Mr. Thompson is 31 years old.  He is a father, he is a son, he

8    is a grandson, he is a close member of his family, and he is

9    also a close member of his church community.

10          He grew up in East New York in Brownsville, an area

11   that still today is plagued with violence and drugs and

12   poverty, and while Mr. Thompson was growing up he didn't

13   succumb to those temptations, if you will.  He was somebody

14   that was raised in single parent households initially by his

15   grandmother and then by his mother.  He was actively involved

16   in his church community while he was a teenager.  He was

17   working as well and in school.  He graduated from high school.

18   He is one of the few people in his neighborhood during that

19   time period that graduated from high school.  And he was on his

20   way to leading a productive, law abiding life, a life that was

21   directed towards dreams and goals that he had.

22          Unfortunately in his early 20s he began to use drugs

23   on an increasing level, to the point where he became arrested a

24   few times for drug related offenses, and things culminated,

25   your Honor, in the summer of 2013.  And I think that Chivonne

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

7

F927THOS

1   Conway, his partner, describes Mr. Thompson's relationship to

2   drugs at that time best when she says that Mr. Thompson was

3   consumed by his addiction.

4          And this is not to excuse what he did on September

5   2013, your Honor, but simply trying to explain why somebody who

6   grew up in a household with strong values and morals would end

7   up today before your Honor.  He was desperate; he was again

8   consumed by his addiction; and he made a very serious mistake.

9   He was also under financial pressure, and he agreed to

10  participate in a robbery.  He was not armed.  He didn't shoot

11  or assault anyone inside the store, and his participation was

12  limited to taking jewelry from the store.

13         Your Honor, I would like to touch on this crew.  The

14  government says in their submission that Mr. Thompson was part

15  of this violent robbery crew.  He was not a member of the crew.

16  The members consisted of Williams, Hanson, Roberto Grant, Sean

17  Robinson.  The government also points out in previous

18  submissions that this crew recruited both violent people and

19  people who were vulnerable, violent people like Bradley Hanson

20  who had multiple convictions for robberies, people like Allen

21  Williams, who had a prior murder conviction and other robbery

22  convictions.  Roberto Grant is another example.

23         The government point out that there were some people

24  who were recruited by this crew who were vulnerable, and

25  Mr. Thompson was one of those individuals, and the government

(212) 805-0300

F927THOS

1    doesn't challenge that.  He was a vulnerable person.  Again, he

2    was afflicted with a serious disease, his addiction, he was

3    under a serious financial pressure, and he was desperate.  He

4    compromised his values, and again, your Honor, committed the

5    worst mistake of his life and -- I feel confident in saying

6    this -- the worst mistake that he will ever make in his life.

7    He also participated in only one robbery that this crew

8    committed, and he has no prior criminal history for any kind of

9    violence.

10          There is no doubt, your Honor, that the victims here

11   suffered, and it appears that they have continued to suffer,

12   and I understand that, but I think that in all of these

13   robberies victims suffered and continue to suffer.  I point to

14   the woman who was hit with a stun gun and knocked unconscious.

15   I'm sure she suffers on a daily basis based on what these

16   individuals did, as well as the victims in the other robberies.

17          With respect to the sentences that other defendants

18   have received, we tried our best to provide for your Honor the

19   sentences that they received along with the actual offense that

20   they committed.  And I think it's worth touching on at this

21   point again what these defendants received in terms of their

22   sentences.

23          Allen Williams, as you know, your Honor, received a

24   sentence of 108 months after he participated in four or

25   possibly five robberies, and he had a prior murder conviction.

(212) 805-0300

9

F927THOS

1    And the loss amount connected to him was approximately a

2    million dollars.

3         Mr. Rafliff received a sentence from Judge Patterson

4    of 33 months, and he participated in a single robbery; however,

5    in that robbery he was armed, and he also had an open robbery

6    at the time, a state robbery where he had been charged and

7    indicted for robbery in the first degree, which in my

8    understanding would mean that he either caused serious physical

9    harm to somebody as part of that robbery and/or was in

10   possession of a deadly weapon, so a quite serious offense.  And

11   the loss amount connected to him was $200,000.

12        Ryan Campbell was recently sentenced by Judge

13   Scheindlin, and he received a sentence of 70 months, and he

14   participated in one robbery.  My understanding is that he may

15   have been a career offender.  He was certainly in Criminal

16   History Category VI.

17        Again, Mr. Thompson has participated in one robbery,

18   and he received absolutely nothing from this.  He hoped to gain

19   $500.  And he was found in possession of one ring at the time

20   that he was arrested.

21        With respect to the guidelines, your Honor, the court

22   is well aware -- and I don't need to remind your Honor -- that

23   the guidelines are advisory and that the court must consider

24   all the factors under 3553(a).

25        And I simply point out that the government says that

(212) 805-0300

F927THOS

 1   all the defendants that have been sentenced have received

 2   guideline sentences.  Obviously I'm not disputing that, but I

 3   think that the guidelines don't fully capture all the 3553(a)

 4   factors.  Particularly, they don't capture everything related

 5   to Mr. Thompson, for instance, how he has conducted himself

 6   while he has been in jail, his family who is in the audience,

 7   including his mother and grandmother, and everyone else,

 8   including members of their church community that are also

 9   present, his history of substance abuse and his motivations

10   related to the robbery that he had committed, and the impact of

11   a lengthy sentence on his family, especially on his children.

12   The guidelines simply don't capture those things that are

13   important here today.

14           Finally, your Honor, I want to point out that the

15   Mr. Thompson who is sitting right now and who will be standing

16   before you shortly today on September 2, 2015 is not the same

17   Mr. Thompson when he was arrested on September 23, 2013.  He

18   has been in jail for approximately two years, and during that

19   time period he has done the best that he possibly can in an

20   environment, a prison environment where there are all kinds of

21   temptations.  There's drugs, there's violence, there is real

22   danger in prison, and yet he has the not succumbed to that.  In

23   fact he has done the exact opposite.  He has been drug free.

24   He has worked hard, as indicated by his work evaluation.  He

25   has been productive.  He has tried to help other inmates as

(212) 805-0300

F927THOS

1    well, and tried to be an example to them over the past couple

2    of years.  And during that time period he has also reconnected

3    with his family and his church community.

4            So, based upon all of this, your Honor, the factors

5    under 3553(a), we simply ask that your Honor impose a sentence

6    that is sufficient but not greater than necessary.  Thank you.

7            THE COURT:  Thank you.

8            Mr. Thompson, would you like to speak on your own

9    behalf?

10           THE DEFENDANT:  Yes, ma'am.

11           THE COURT:  Would you do it now, please.

12           THE DEFENDANT:  Yes, ma'am.

13           First I would like to apologize to the victims of not

14   only my robbery but all the robberies that took place during

15   this Hobbs Act conspiracy.

16           Second, I would like to apologize to my family.  The

17   reason for that is because not only have I embarrassed them, I

18   have embarrassed myself and my children.

19           Like Mr. Cecutti said, I am not the same person I was

20   on September 23, 2013.  I have changed.  I am no longer

21   addicted to drugs.  I am fully aware of the wrongs that I have

22   committed, and I am fully aware of the things that I must do in

23   order to change that, and in order to be effective in the lives

24   of my children and my family.

25           I also want your Honor to please take note that even

(212) 805-0300

F927THOS

1    though I committed this offense, I am somewhat grateful for

2    this situation, because it has changed me, and it has made me a

3    better person, and because of that I can actually live with

4    myself, and I feel thankful because I can actually be the son

5    that my mother raised me to be.

6           There is not too much I can say or show how apologetic

7    I am, but I truly am sorry.  And if it's possible, I would ask

8    that your Honor allow me to get home to my children and my

9    family sooner than later, because I don't want my son to grow

10   up how I grew up without a father figure.

11          I have already missed key times in his life and my

12   daughter's life, like their first day of school, teaching them

13   how to read, how to write, how to count, and things such as

14   just playing catch.  These are things where in my environment

15   where I'm from we are limited to, and before my incarceration I

16   was not able to see that.

17          So, to say the least, I embrace my punishment

18   wholeheartedly because again it has made me who I am today, and

19   I will continue to be productive, whether free or incarcerated,

20   and I will continue to be a positive role model free or

21   incarcerated.

22          I would like to say to my mother I am truly sorry,

23   because she has gone through so much, and I have let her down.

24          And like Mr. Cecutti said, the guidelines do not take

25   into consideration these things, but these things are who I am,

(212) 805-0300

F927THOS

1    and these things are what made me the person that I will

2    continue to be once I am free and let back into society.  Thank

3    you.

4              THE COURT:  Thank you, sir.

5              Mr. Cecutti, I read that Ms. Garner and Ms. Conway

6    wish to speak.

7              MR. CECUTTI:  They do, your Honor.

8              THE COURT:  Yes, sir.

9              MR. CECUTTI:  Can they go up to the podium, your

10   Honor?

11             THE COURT:  Yes, sir.

12             Good morning, ma'am.

13             MS. CONWAY:  Good morning, your Honor.  My name is

14   Chivonne Conway.  Thank you for the opportunity to speak.

15   Since Kendal and I have got back together, I have seen him

16   grow.  He is sorry for what he did, and is ready to live his

17   life according to the morals and values that he was raised

18   with.  Kendal is not perfect.

19             We have had our tough times, but I want you to know

20   that he has turned his life around, and I ask that you please

21   consider the changes that he made while he was incarcerated and

22   his true desire to be a loving and engaging father to our six

23   year old son.  Thank you.

24             THE COURT:  Yes, ma'am.  Thank you.

25             Ms. Garner?

(212) 805-0300

F927THOS

1            MS. GARNER:  Good morning, your Honor.  I'd like to

2    thank you for this opportunity to allow me to speak on behalf

3    of my son.

4            THE COURT:  Yes, ma'am.

5            MS. GARNER:  I love my son, and I just wanted you to

6    know that in his character he has a good heart, a heart of

7    gold.  He has always been a family caretaker.  He has cared for

8    his little brother while I worked two jobs and went to school.

9    He cared for his grandmother, and he cared for his children the

10   first years of their lives.

11           Kendal graduated high school; he worked all through

12   high school.  He kept a job, and he helped me provide for the

13   household.  At the time that Kendal was arrested, I did notice

14   from the age of 20 some changes in my son, and being in

15   recovery myself I approached my son about his drug addiction,

16   and of course he denied it in denial, so I went to Adam Street

17   Courthouse, and I obtained a mental hygiene warrant, because

18   that was the only way I knew to get my son the help that he

19   needed in a drug program.  And the following week he was

20   arrested.

21           Now perhaps I waited too long.  I'm a parent, I made

22   mistakes, I'm not perfect, but my son is a victim of my

23   addiction, and I pray that he no longer reaps what I had sown.

24   I have 25 years clean and sober, I work for the New York City

25   Department of Education, I attended the College of New

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F927THOS

1    Rochelle.  People can change and grow up.

2            Kendal needs a chance, an opportunity to arrest his

3    disease, not the man, the disease of addiction, so that he can

4    become a productive member of society once again.

5            During the visits, I visit my son over the course of

6    these two years, I have seen his spirit restored, I see the

7    remorsefulness in him, I see growth and maturity, and for this

8    I'm grateful.  I thank you for this opportunity.

9            THE COURT:  Yes, ma'am.

10           Does the government wish to be heard?

11           MR. COOPER:  Briefly, your Honor.  The court is

12   familiar with the nature of this case from the prior

13   proceedings.  I'm not going to rehash all of that.  I just want

14   to underscore a couple of points that we make in our submission

15   and make one further point.

16           First, in terms of the profound effect that this

17   particular robbery, not any of the others in the conspiracy,

18   but the September 2013 robbery had on the victims, the

19   government met with the store owner, his son and a woman who

20   also worked in the store in preparation for trial, because we

21   did get fairly close to trial in this case.  This was the most

22   traumatic event in their lives.  One of them was shot, a second

23   one was shot at, and the third, the employee, was absolutely

24   terrorized.

25           We spoke to them again more recently in preparation

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F927THOS

1    for this proceeding at Mr. Robinson's sentencing.  As you are

2    aware, none of them elected to submit letters or show up in

3    court because they just wanted nothing more to do with this

4    case.  But the PSR does reflect victim statements from the

5    store owner's son, which are quite serious and really reflect

6    the physical and emotional harm that this robbery wrought.

7            The second point, Mr. Cecutti didn't focus on in his

8    remarks today, but I do feel I need to respond because it's in

9    his submission, about the defendant's attempt to recast his

10   role in this robbery as believing that he was going to do a

11   credit card fraud and being surprised or having no advanced

12   knowledge that weapons were going to be used.  To be clear, we

13   have no direct evidence that controverts that.  Probation is

14   skeptical of those claims as they note on page 22 of the PSR,

15   and we believe that the undisputed facts do reflect -- or the

16   fair inference from those facts reflects that the defendant was

17   a full and knowing participant in all aspect of his robbery.

18           And also to be clear, we don't believe that he was

19   armed with a firearm that day, but almost immediately after the

20   three robbers entered the store, the other two individuals

21   produced firearms.  Notwithstanding that, the defendant

22   proceeded, jumped with a co-defendant over a jewelry case, had

23   the presence of mind to grab jewelry and take one ring -- and

24   stash it securely enough in his shoe that it was not found

25   until later that day when the police searched him prior to

(212) 805-0300

17

F927THOS

1    putting him into a holding cell at the police precinct -- and

2    then he fled along with the others.

3           We believe that the fair inference from all of that is

4    that he knew what was going to happen, and when firearms were

5    produced he didn't flinch, and he proceeded with what they

6    intended to do that day.

7           The last point that I want to make is that all of this

8    is the reason that the government felt it important in this

9    plea agreement to have the defendant agree not to seek a

10   sentence outside the guidelines range, and the reason is that

11   the guidelines reflect this offense.

12          To Mr. Cecutti's point, there are other factors that

13   of course the court should consider, and Mr. Cecutti and the

14   defendant have laid them out for the court, as have the letters

15   and the speeches.  But the guidelines here reflect the profound

16   impact on the victims and the fact that but for a few strokes

17   of luck the store owner and his son could be in a much, much

18   different position than they are today.  And that's why we felt

19   it important to enter into this type of plea agreement for this

20   type of crime based on this type of evidence.

21          Unless the court has any further questions, that's all

22   we have to say.

23          THE COURT:  Thank you very much.

24          MR. COOPER:  Thank you, your Honor.

25          THE COURT:  Is there anything further, Mr. Cecutti?

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F927THOS

1              MR. CECUTTI:  Your Honor, if I may, to share a brief

2      story I had with the late Judge Patterson, I knew Judge

3      Patterson over a few years, and he and I would have a couple of

4      conversations after certain appearances like conferences, and I

5      remember having a conversation with him maybe three or four

6      months before he passed away, and we had a very brief

7      discussion about the guidelines, and he said, you know what,

8      Mr. Cecutti?  I said, what's that, Judge Patterson?  He said,

9      the guidelines don't capture everything about a person; they're

10     a mathematical formula; they're a grid; and the guidelines are

11     not based upon what our country holds dearly, such as

12     forgiveness and mercy.

13             I thought that was a very insightful comment, and I

14     just simply wanted to share it, since the government is

15     emphasizing that a guideline sentence is the appropriate thing.

16     I simply ask your Honor that you consider again all the factors

17     under 3553(a), this story, and impose a sentence that is

18     sufficient but not greater than necessary.  Thank you.

19             THE COURT:  Anything else from the government?

20             MR. COOPER:  No.  Thank you, your Honor.

21             THE COURT:  Thank you.

22             Counsel, as you have heard, I have in fact calculated

23     the guidelines and do take them into account.

24             I find that the total offense level accurately

25     describes the nature and circumstances of the offense.

(212) 805-0300

19

F927THOS

1            As both of the parties have confirmed, the total

2    offense level does reflect the very serious nature of this

3    offense.

4            Whatever the fact is about Mr. Thompson's knowledge or

5    lack of knowledge about the other defendants having firearms,

6    the fact is that the guidelines calculation of the total

7    offense level is appropriate because of the nature of the

8    offense.

9            As the government noted, and as is noted in the

10   presentence report, the victims were terrorized, one was

11   terribly injured.  They ended up closing the jewelry store and

12   have not gone back into the business, and it was a business

13   they had for a decade or more.  So, it is a serious offense,

14   and I will say there was no one here today who is denying that.

15           With respect to the history and characteristics of the

16   defendant, the Criminal History Category III which Mr. Thompson

17   is in is of course accurate.  I do note that Mr. Thompson has

18   never been to jail before, which is something that is unusual

19   for a defendant in Criminal History Category III.

20           I also note, as defense counsel noted, that there are

21   factors with respect to the history and characteristics of this

22   defendant that are not reflected anywhere in the guidelines.

23   The ones that I see as being relevant here are Mr. Thompson's

24   extraordinary remorse.  I also note his completely changed way

25   of thinking.  When he says he is a different man, I think that

(212) 805-0300

F927THOS

1    the facts before us in the presentence report and in the

2    letters attached to the defense sentencing submission do

3    reflect that.

4            The fact that Mr. Thompson sees more clearly now what

5    I think most normal people see about crime and about the need

6    to care for one's family and adhere to the moral values of this

7    country is a huge step in the right direction, and I take that

8    into account.

9            Going back for one moment to the nature and

10   circumstances of the offense.  While we all agree that the

11   calculation of the total offense level is legally appropriate,

12   I also take into the account the fact that Mr. Thompson himself

13   was not armed and did not impose any injury upon any of the

14   victims.

15           With respect to the paragraph two factors, we have all

16   agreed that an incarceratory sentence is necessary to reflect

17   the very serious nature of this offense.  It can't be denied

18   that an incarceratory sentence is necessary for public

19   deterrence.

20           With respect to paragraph C though, I am persuaded

21   that there is no need for extensive incarceration to protect

22   the public from further crimes of this defendant.  I take

23   Mr. Thompson at his word, and I take Ms. Conway and Ms. Garner

24   at their words that Mr. Thompson is not going to stray from the

25   law ever again.

(212) 805-0300

21

F927THOS

1         The paragraph D factors are less important here.  I

2    have taken into account of course the paragraph 3, 4 and 5

3    factors.

4         With respect to paragraph 6, the need to avoid

5    unwarranted sentencing disparities, that is a concern here, as

6    pointed out both by the probation department and the defense

7    submissions.

8         I note the government's position -- which in my view

9    is a well founded position -- that in this plea agreement

10   Mr. Thompson was not permitted to argue for a below-guideline

11   sentence, and I understand that position.  However, I do note

12   the disparities in the other sentences in this case.

13        I particularly note the sentence that Judge Scheindlin

14   imposed on Mr. Campbell, who was a participant in a single

15   robbery, albeit I think not this robbery.  So, of course the

16   violence in that robbery was less than this robbery.

17        On the other hand, Mr. Campbell was in Criminal

18   History Category VI, and Mr. Campbell will receive 70 months.

19   I have some concern about that.

20        I have no concern of course about Mr. Robinson who was

21   fully entitled to the sentence he received, but I have concern

22   about the sentencing disparities.

23        I am, of course, aware that in considering sentencing

24   disparities it is my obligation to consider all similar crimes,

25   not just the ones in this case, but I do take this case into

(212) 805-0300

F927THOS

1    account.

2              And, finally, paragraph 7 is of lesser import here.

3              Taking all of these factors into account, counsel, and

4    particularly taking into account the support network that

5    Mr. Thompson has between his relatives, his partner and his

6    church, it is my intention to impose a sentence of 60 months'

7    incarceration.

8              It is also my intention to impose the recommended

9    period of supervised release of three years.

10             It is my intention to impose the recommended special

11   conditions of participation in an outpatient drug program and

12   submission to the search provision.

13             It is not my intention to impose a fine.  I'm finding

14   that Mr. Thompson is not able to address a fine.

15             It is my intention to impose the $100 special

16   assessment.

17             Counsel, is there any reason such a sentence should

18   not be imposed?

19             MR. COOPER:  No, your Honor.

20             MR. CECUTTI:  No, your Honor.

21             THE COURT:  Very well.

22             Mr. Thompson --

23             THE DEFENDANT:  Yes, ma'am.

24             THE COURT:  -- you are sentenced, sir, to a period of

25   60 months' incarceration.  Following that time you will spend a

(212) 805-0300

F927THOS

1  period of three years on supervised release.  During that

2  period you will comply with all of the standard terms and

3  conditions of supervised release; among them are that you not

4  commit another federal, state or local crime; you not illegally

5  possess a controlled substance; and you not possess a firearm

6  or other destructive device.

7         In addition to those and all of the other standard

8  terms and conditions of supervised release, during that period

9  you will participate in an outpatient substance abuse program.

10  That program will include testing to determine whether you have

11  returned to the use of drugs.  The court authorizes the release

12  of available drug treatment evaluations and reports to the

13  substance abuse treatment provider as approved by the probation

14  officer.  At the probation officer's approval, the PSR may also

15  be disclosed.

16         Sir, you might be required to contribute some or all

17  of the cost of the program, depending on your ability to pay

18  and availability of third-party payment.

19         In addition, during that period you will submit your

20  person, residence, vehicle, place of business, electronic

21  devices, and any other premises under your control to a search

22  on the ground that the probation officer has reasonable belief

23  that contraband or evidence of a violation of the terms and

24  conditions of your release can be found there.

25         Such a search must be conducted at a reasonable time

(212) 805-0300

24

F927THOS

1    and in a reasonable manner.  Failure to submit to such a search

2    may be grounds for revoking your supervised release.

3         It will be your obligation to inform other residents

4    of the premises or users of the electronic devices that this

5    premises or the devices might be subject to a search.

6         As I mentioned, I did not impose a fine, but I do

7    impose the mandatory $100 special assessment, and that should

8    be paid promptly.

9         It is my duty to inform you, sir, that unless you have

10   waived it, you have the right to appeal this sentence, and you

11   might have the right to appeal in forma pauperis, which means

12   as a poor person, with the waiver of certain fees and expenses.

13        Mr. Cecutti, did you wish a recommendation?

14        MR. CECUTTI:  Yes, Judge.  I am requesting a

15   recommendation to the RDAP program, and specifically three

16   different facilities:  Danbury, Fort Dix and Fairton, please.

17   And if Mr. Thompson is not permitted participate in RDAP, I

18   request that he be recommended to Otisville.

19        THE COURT:  It is the court's recommendation that

20   Mr. Thompson be permitted to participate in the Bureau of

21   Prisons' RDAP program.  He seems particularly an appropriate

22   candidate for that.  It is also the court's recommendation that

23   he be permitted to do so either at the Danbury, Fort Dix or

24   Fairton facility.

25        If the Bureau of Prisons sees fit not to follow this

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F927THOS

1    recommendation, it is the court's recommendation that

2    Mr. Thompson be designated to the Otisville facility.

3            MR. CECUTTI:  Your Honor, I have another application.

4    I'm not sure if your Honor can recommend this, but I make this

5    request based upon Mr. Thompson's work history at the MDC.

6            As your Honor knows, he has worked very hard at the

7    MDC, and it has been brought to my attention that he may be

8    able to work at whatever facility as a work cadre.  I'm not

9    sure if your Honor can recommend that, but I raise it now in

10   the event that you can.

11           THE COURT:  It's the court's recommendation that in

12   light of Mr. Thompson's excellent work reports while at the

13   MDC, he be permitted to work in the work cadre at the

14   designated facility.

15           MR. CECUTTI:  Thank you.

16           THE COURT:  Anything else from the government?  Yes,

17   Mr. Cecutti.

18           MR. CECUTTI:  Your Honor, just one point of

19   clarification.  Your Honor's sentence of 60 months, does that

20   take into account the seven months that Mr. Thompson spent

21   while he was in state custody?  I'm not sure if it does, and I

22   want to raise it now so we are all on the same page.

23           THE COURT:  I think it probably does.

24           Mr. Cooper, do you have a view on that?

25           MR. COOPER:  I don't know, your Honor.  I'm not sure

(212) 805-0300

26

F927THOS

1   whether the BOP will count it.

2        THE COURT:  OK.  Because the seven months was on the

3   same crime, it's the court's recommendation that BOP include

4   that seven months in its calculation of Mr. Thompson's time.

5        MR. CECUTTI:  Thank you.

6        THE COURT:  Anything else?

7        MR. COOPER:  Your Honor, there are open counts and

8   underlying indictments.  The government moves to dismiss those.

9        THE COURT:  So ordered.

10       MR. COOPER:  Thank you.

11       THE COURT:  Mr. Thompson.

12       THE DEFENDANT:  Yes, ma'am.

13       THE COURT:  You are one lucky man.  You have one good

14  family and a lot of good friends and one good church behind

15  you.  Don't screw it up.  Let me know what you're doing.  Write

16  me a card from time to time.  But I do not expect to see you

17  sitting there next to Mr. Cecutti on any occasion.

18       THE DEFENDANT:  No, ma'am.

19       THE COURT:  You seem to have gotten the message.  Now

20  do what you have to do.

21       THE DEFENDANT:  Yes, ma'am.

22       THE COURT:  Yes, sir.  Good morning, counsel.  Thank

23  you for your assistance.

24       Ladies and gentlemen, thank you for being present.

25                              * * *


                    SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300