

2009753

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**PROBATION DEPARTMENT**

TO: Honorable Loretta A. Preska
United States District Judge

FROM: Stephanie McMahon
U.S. Probation Officer

RE: Dehoyos, Jamal
Docket #: 14 CR 130-011 (LAP)

DATE: September 12, 2016

Attached is the Presentence Investigation report, including the recommendation and addendum, prepared on August 15, 2016, on the above-named individual, who is scheduled for sentencing on November 3, 2016. Based on objections to the PSI and/or information received after the draft report was disclosed, the attached PSI has been revised as indicated in the addendum.

Respectfully submitted,

Michael J. Fitzpatrick
Chief U.S. Probation Officer

By: Stephanie McMahon
Stephanie McMahon
U.S. Probation Officer
(212) 805-5053

cc: Megan Wolfe Benett, Esq.
Richard A. Cooper, AUSA
Andrea M. Griswold, AUSA

P2009753

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**PRESENTENCE INVESTIGATION REPORT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Dkt. No.: 0208 1:S4 14CR00130-011 (LAP)** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| | ) | |
| **Jamal Dehoyos** | ) | **Sentence Date: 11/03/2016** |
| | ) | |

**Prepared for:** Honorable Loretta A. Preska
U.S. District Judge

**Prepared by:** Stephanie M. McMahon, USPO
212-805-5053
Stephanie_McMahon@nysp.uscourts.gov

**Assistant U.S. Attorney**
Richard A. Cooper
Andrea M. Griswold
One Saint Andrew's Plaza
New York, NY 10007
(212) 637-1027/1205
richard.cooper@usdoj.gov
andrea.griswold@usdoj.gov

**Defense Counsel**
Megan Wolfe Benett, Esq.
750 Third Avenue
New York, NY 10017
(212) 973-3406
mbenett@kreindler.com

**Offense:** Ct. 1: Conspiracy to Commit Hobbs Act Robbery; 18 USC 1951 (Class C Felony)

Not more than 20 years' imprisonment/up to 3 years' supervised release/maximum of a $250,000 fine/$100 special assessment

**Release Status:** Arrested on 2/24/16, and detained.

**Codefendants:** See "Part A. Charges and Convictions"

**Date Report Prepared:** 8/15/16 **Date Report Revised:** 9/12/16

**Identifying Data:**



| | |
|---|---|
| **Date of Birth:** | June 1, 1976 |
| **Age:** | 40 |
| **Race:** | Black or African American |
| **Hispanic Origin:** | Hispanic origin |
| **Sex:** | Male |
| **SSN#:** | 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 |
| **FBI#:** | 94715HB8 |
| **USM#:** | 77198-054 |
| **State ID#:** | NY07165811Y; NJ765476C |
| **Education:** | No HS Diploma or GED |
| **Dependents:** | 1 |
| **Citizenship:** | U.S. Citizen |
| **Address:** | 590 Elton Street<br>Apartment #1B<br>Brooklyn, NY 11208 |

| | |
|---|---|
| **Alias(es):** | None |

***Restrictions on Use and Redisclosure of Presentence Investigation Report.*** Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and federal investigations directly related to terrorist activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

## PART A. THE OFFENSE

### Charges(s) and Conviction(s)

1. Superseding Indictment S4 14 CR 130 (RPP) was filed in the Southern District on New York.

2. Count 1 charges that from at least July 1, 2013, through January 30, 2014, in the Southern District of New York and elsewhere, RALIK HANSEN, a/k/a "Ralik Taylor," a/k/a "Rahlik," a/k/a "Rah," a/k/a "Ratchet," KENDAL THOMPSON, SEAN ROBINSON, a/k/a "Sean Vicks," a/k/a "Luca," a/k/a "Luca Brasi," COURTNEY HARDIN, a/k/a "Mazie," a/k/a "Mozie," RYAN CAMPBELL, a/k/a "Shaky," **JAMAL DEHOYOS** and others, conspired to commit robberies of jewelry and watch stores which sell goods that had been manufactured and shipped in interstate commerce.

   (18 USC 1951)

3. Count 2 charges that from at least on July 1, 2013, through January 30, 2014, in the Southern District of New York and elsewhere, THOMPSON, HANSEN and ROBINSON, during and in relation to a crime of violence for which they may be prosecuted in Court 1, knowingly used, carried, and possessed a firearm that was discharged during one of the robberies.

   (18 USC 924(c)(1)(A)(iii) and 2)

4. Count 3 charges that on July 1, 2013, in the Southern District of New York and elsewhere, ROBINSON and others committed a robbery of a jewelry store located in Atlantic City, NJ, which was engaged in the sales of watches and other items in interstate commerce.

   (18 USC 1951 and 2)

5. Count 4 charges that on October 28, 2013, in the Southern District of New York and elsewhere, ROBINSON, HARDIN and others, committed a robbery of a jewelry store located on Nassau Street in New York, NY, which was engaged in the sales of watches and other items in interstate commerce.

   (18 USC 1951 and 2)

6. Count 5 charges that on November 3, 2013, in the Southern District of New York and elsewhere, ROBINSON, HARDIN and others, committed a robbery of a jewelry store located on Madison Avenue in New York, NY, which was engaged in the sales of watches and other items in interstate commerce.

   (18 USC 1951 and 2)

7. Count 6 charges that on November 6, 2013, in the Southern District of New York and elsewhere, HANSEN, ROBINSON, HARDIN, CAMPBELL and others, committed a robbery of a jewelry store located in New Canaan, CT, which was engaged in the sales of watches and other items in interstate commerce.

(18 USC 1951 and 2)

8. Count 7 charges that on January 9, 2014, in the Southern District of New York and elsewhere, HANSEN, ROBINSON, HARDIN, **DEHOYOS** and others, committed a robbery of a jewelry store located in Cranford, NJ, which was engaged in the sales of watches and other items in interstate commerce.

(18 USC 1951 and 2)

9. Count 8 charges that on January 30, 2014, in the Southern District of New York and elsewhere, HANSEN, HARDIN and others, committed a robbery of a jewelry store located on Fifth Avenue in New York, NY which was engaged in the sales of watches and other items in interstate commerce.

(18 USC 1951 and 2)

10. Forfeiture Allegation as to Count 1: As a result of committing the offense charged in Count 1 of this Indictment, HANSEN, THOMPSON, ROBINSON, HARDIN, CAMPBELL and **DEHOYOS** shall forfeit to the U.S., pursuant to 18 USC 981(a)(1)(C) and 28 USC 2461, all property that constitutes or was derived from proceeds traceable to the commission of the offense.

11. Forfeiture Allegation as to Count 3: As a result of committing the offense charged in Count 3 of this Indictment, ROBINSON shall forfeit to the U.S., pursuant to 18 USC 981(a)(1)(C) and 28 USC 2461, all property that constitutes or was derived from proceeds traceable to the commission of the offense.

12. Forfeiture Allegation as to Count 4: As a result of committing the offense charged in Count 4 of this Indictment, ROBINSON and HARDIN shall forfeit to the U.S., pursuant to 18 USC 981(a)(1)(C) and 28 USC 2461, all property that constitutes or was derived from proceeds traceable to the commission of the offense.

13. Forfeiture Allegation as to Count 5: As a result of committing the offense charged in Count 5 of this Indictment, ROBINSON and HARDIN shall forfeit to the U.S., pursuant to 18 USC 981(a)(1)(C) and 28 USC 2461, all property that constitutes or was derived from proceeds traceable to the commission of the offense.

14. Forfeiture Allegation as to Count 6: As a result of committing the offense charged in Count 6 of this Indictment, HANSEN, ROBINSON, HARDIN and CAMPBELL shall forfeit to the U.S., pursuant to 18 USC 981(a)(1)(C) and 28 USC 2461, all property that constitutes or was derived from proceeds traceable to the commission of the offense.

15. Forfeiture Allegations as to Count 7: As a result of committing the offense charged in Count 7 of this Indictment, HANSEN, ROBINSON, HARDIN and **DEHOYOS** shall forfeit to the U.S., pursuant to 18 USC 981(a)(1)(C) and 28 USC 2461, all property that constitutes or was derived from proceeds traceable to the commission of the offense.

16. Forfeiture Allegation as to Count 8: As a result of committing the offense in Count 8 of this Indictment, HANSEN and HARDIN shall forfeit to the U.S., pursuant to 18 USC 981(a)(1)(C) and 28 USC 2461, all property that constitutes or is derived from proceeds traceable to the commission of the offense.

(18 USC 981 and 1951; 28 USC 2461; and 21 USC 841(a)(1) and 853)

17. On May 16, 2016, **JAMAL DEHOYOS** appeared before the Honorable Loretta A. Preska and pleaded guilty as charged in Count 1 only, pursuant to a written plea agreement which stipulated as follows:

a) The November 1, 2015, edition of the Guidelines Manual is applicable.

b) The guideline applicable to the offense charged is §2B3.1, which provides for a base offense level of 20, pursuant to §2B3.1(a).

c) A four-level increase is warranted because a dangerous weapon (sledgehammer) was used during the course of the instant offense, pursuant to §2B3.1(b)(2)(D).

d) A one-level increase is warranted because the loss amounted to between $20,000 and $95,000, pursuant to §2B3.1(b)(7)(B).

e) Assuming the defendant, in a timely manner, clearly demonstrates acceptance of responsibility to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a three-level reduction will be warranted, pursuant to §3E1.1(a) and (b).

f) In accordance with the above, the applicable offense level is 22.

g) Based upon the information now available to the Government (including representations by the defense), the defendant has five criminal history points and a corresponding Criminal History Category of III.

h) Based upon the calculations set forth above, the defendant's stipulated sentencing Guidelines range is 51 to 63 months' imprisonment. In addition, after determining the defendant's ability to pay, the Court may impose a fine, pursuant to §5E1.2. The applicable fine range is $7,500 to $75,000.

i) Additionally, the parties have stipulated that the defendant admits to the forfeiture allegation contained in the Indictment and agrees to pay restitution in an amount determined by the Court.

18. Sentencing is scheduled for November 3, 2016.

**Status of Co-Defendants**

19. On October 14, 2014, ALLEN WILLIAMS (P368246/J. Thomas) allocuted to his criminal conduct as charged in Count 1 only of superseding Indictment S3 14 CR 130-01 (LAP) [Conspiracy to Commit Hobbs Act Robbery], before the Honorable Debra C. Freeman. The guilty plea was accepted by the Honorable Loretta A. Preska on November 7, 2014. On March 18, 2015, WILLIAMS was sentenced to 108 months' imprisonment to be followed by three years' supervised release, and he was ordered to pay restitution in the amount of $1,091,000.

20. On August 28, 2014, ROBERTO GRANT (P368207/S. McMahon) allocuted to his criminal conduct as charged in Count 1 only of superseding Indictment S3 14 CR 130-02 (LAP) [Conspiracy to Commit Hobbs Act Robbery], before the Honorable James L. Cott. The guilty plea was accepted by the Honorable Robert P. Patterson, Jr. on October 3, 2014. GRANT was scheduled to be sentenced before the Honorable Loretta A. Preska, but died of natural causes on May 29, 2015, in New York, NY.

21. On July 7, 2014, TERRELL RATLIFF (P368189/J. Thomas) allocuted to his criminal conduct as charged in Count 1 only of superseding Indictment S3 14 CR 130-03 (LAP) [Conspiracy to Commit Hobbs Act Robbery], before the Honorable Kevin Nathaniel Fox. On October 23, 2014, RATLIFF was sentenced to 33 months' imprisonment with no term of supervised release, before the Honorable Robert P. Patterson, Jr.

22. On October 17, 2014, TYRONE DEHOYOS (P365843/J. Kim) pleaded guilty as charged in Counts 1 through 4 of superseding felony Information S5 14 CR 130-04 (LAP) [Conspiracy to Commit Hobbs Act Robbery (two counts), Hobbs Act Robbery, and Conspiracy to Distribute and Possess with Intent to Distribute Cocaine], before the Honorable Loretta A. Preska. Sentencing is pending.

23. On February 22, 2016, RONALD MCINTRYE (P395563/S. Belgrave) pleaded guilty as charged in Counts 1 and 5 of superseding Indictment S2 14 CR 130-06 (LAP) [Conspiracy to Commit Hobbs Act Robbery and Hobbs Act Robbery], before the Honorable Loretta A. Preska. Sentencing is scheduled for November 2, 2016.

24. On May 14, 2015, KENDAL THOMPSON (P392511/R. Flemen) pleaded guilty as charged in Count 1 only of superseding Indictment S4 14 CR 130-07 (LAP) [Conspiracy to Commit Hobbs Act Robbery], before the Honorable Loretta A. Preska. On September 2, 2015, THOMPSON was sentenced to 60 months' imprisonment to be followed by three years' supervised release.

25. On May 7, 2015, SEAN ROBINSON (P395541/J. Thomas) pleaded guilty as charged in Count 1 only of superseding Indictment S4 14 CR 130-08 (LAP) [Conspiracy to Commit Hobbs Act Robbery], before the Honorable Loretta A. Preska. On August 10, 2015, ROBINSON was sentenced to 240 months' imprisonment to be followed by three years' supervised release, and he was ordered to pay restitution in the amount of $1,106,000.

26. On July 19, 2016, COURTNEY HARDIN (P2198603/J. Thomas) pleaded guilty as charged in Count 1 only of superseding Indictment S4 14 CR 130-09 (LAP) [Conspiracy to Commit Hobbs Act Robbery], before the Honorable Loretta A. Preska. Sentencing is scheduled for October 19, 2016.

27. On December 31, 2014, RYAN CAMPBELL (P50316/J. Kim) allocuted to his criminal conduct as charged in Count 1 only of superseding Indictment S4 14 CR 130-10 (SAS) [Conspiracy to Commit Hobbs Act Robbery] and Counts 2 and 3 of superseding Indictment S1 14 CR 254-01 (SAS) [Aggravated Identity Theft and Conspiracy to Commit Bank Fraud], before the Honorable Debra C. Freeman. On August 14, 2015, CAMPBELL was sentenced to a total of 94 months' imprisonment to be followed by three years' supervised release, and he was ordered to pay restitution in the amount of $523,751.45, before the Honorable Shira A. Scheindlin.

28. On October 31, 2014, RALIK HANSEN committed suicide in Brooklyn, NY.

**Adjustment to Incarceration**

29. According to information furnished by the U.S. Bureau of Prisons, Dehoyos has been incarcerated at MCC New York since February 24, 2016, and he has not incurred any known disciplinary sanctions to date.

**The Offense Conduct**

30. The investigation of the offense was jointly conducted by the FBI, NYPD, and other local police departments.

31. In late 2013, law enforcement agents began investigating a pattern of robberies of jewelry stores across several states that included New York, New Jersey and Virginia. During the course of these robberies, the robbers, identified as ALLEN WILLIAMS, ROBERTO GRANT, TYRONE DEHOYOS, RALIK HANSEN, TERRELL RATLIFF, RONALD MCINTRYE, KENDAL THOMPSON, SEAN ROBINSON, COURTNEY HARDIN, RYAN CAMPBELL and **JAMAL DEHOYOS** would enter jewelry stores during business hours when customers and employees were present, target the high-end watch display cases, take out hammers they had concealed, and use those hammers to smash the cases. They would grab as many watches as they could and then run out of the store into awaiting cars. The following pertains only to the robbery in which **JAMAL DEHOYOS** was involved.

The January 9, 2014, Robbery in Cranford, NJ

32. On January 9, 2014, GRANT, TYRONE DEHOYOS, HANSEN, HARDIN and others participated in the robbery of Martin Jewelers located in Cranford, NJ. A review of the store's surveillance footage showed that on January 9, 2014, at approximately 12:51 p.m., three robbers, one wearing a gray sweatshirt, entered the store while customers and employees were present. One robber used a hammer to smash a display case where high-end watches were displayed. The robbers then grabbed several high-end watches, valued at a total of approximately $36,000. The robbers exited the store after the store's owner discharged a firearm in their direction. The individuals who entered the store were subsequently identified as DEHOYOS, HANSEN and HARDIN.

33. A Cranford police officer who was on patrol near Martin Jewelers at the time of the robbery, heard a loud bang and observed TYRONE DEHOYOS exit the jewelry store wearing latex gloves and a gray sweatshirt. DEHOYOS attempted to evade the officer, but he was subsequently arrested. Following the robbery, Cranford police officers identified the license plate number of the vehicle they believed to have fled the scene of the robbery. An inquiry of the license plate number determined that it was registered to a vehicle belonging to WILLIAMS. WILLIAMS was later arrested on January 30, 2014, and admitted to lending his vehicle to GRANT for use during the robbery.

34. **JAMAL DEHOYOS** was subsequently identified as another driver who was present during the robbery; his car was one of the vehicles used during the crime. **DEHOYOS** did not enter the store during the robbery.

Arrests

35. On January 30, 2014, ALLEN WILLIAMS and ROBERTO GRANT were arrested in Brooklyn, NY.

36. On February 11, 2014, TYRONE DEHOYOS was arrested.

37. On February 18, 2014, TERRELL RATLIFF was arrested.

38. On April 15, 2014, KENDAL THOMPSON was arrested

39. On April 22, 2014, RYAN CAMPBELL was arrested.

40. On April 23, 2014, RONALD MCINTYRE and SEAN ROBINSON were arrested.

41. On February 24, 2016, **JAMAL DEHOYOS** was arrested.

42. On March 16, 2016, COURTNEY HARDIN was arrested.

Loss Amounts and Culpability Levels

43. ROBINSON was an organizer or leader of a robbery that involved five or more participants. No aggravating- or mitigating-role adjustments are warranted for any of the other defendants.

44. SEAN ROBINSON participated in six robberies and is responsible for the total loss amount of $1,106,000.

45. ALLEN WILLIAMS and ROBERTO GRANT participated in five robberies and are responsible for a total loss of $1,091,000.

46. TERRELL RATLIFF only participated in one robbery and is responsible for a total of $200,000. RYAN CAMPBELL only participated in one robbery and is responsible for losses amounting to between $50,000 and $250,000. **JAMAL DEHOYOS** only participated in one robbery and is responsible for a total loss of $36,000.

47. Information concerning the loss amounts for the other defendants has not been provided by the Government to date.

48. According to the Government, the robbery of Martin Jewelers on January 9, 2014, caused a loss of approximately $36,000. A hammer was used to smash the display cases in the jewelry store. No weapons were used against the store employees or customers, or threats made against them, and no injuries were sustained. Additionally, no individuals were restrained during the course of the offense.

**Victim Impact**

49. The provisions of the Mandatory Victim Restitution Act of 1996 apply to this Title 18 offense. The victims of the January 9, 2014, robbery are the owners of Martin Jewelers, which sustained a total loss of $36,000. A victim impact statement was requested from the store's owner, Ellen Ramer; however, it has not been furnished to the Probation Office to date.

**Adjustment for Obstruction of Justice**

50. The probation officer has no information indicating the defendant impeded or obstructed justice.

**Adjustment for Acceptance of Responsibility**

51. On the advice of defense counsel, Dehoyos declined to make a statement regarding his involvement in the instant offense during the presentence interview, and he instead opted to rely on his plea allocution. Defense counsel advised that a written statement may be furnished on or before August 15, 2016; it has not been received to date.

52. A copy of the defendant's plea allocution has been requested from the Government; however, it has not been furnished to the Probation Office to date.

**Offense Level Computation**

53. The August 1, 2016, Guidelines Manual, incorporating all guideline amendments, was used to determine the defendant's offense level, pursuant to §1B1.11.

Count 1: Conspiracy to Commit Hobbs Act Robbery; 18 USC 1951

54. **Base Offense Level:** The guideline for a violation of 18 USC 1951 is found in §2B3.1, which provides for a base offense level of 20, pursuant to §2B3.1(a). **20**

55. **Specific Offense Characteristics:** A four-level is warranted because a dangerous weapon, specifically a sledgehammer, was used during the course of the offense, pursuant to §2B3.1(b)(2)(D). **+4**

56. **Specific Offense Characteristics:** A one-level increase is warranted because the loss for which the defendant is accountable amounted to $36,000, pursuant to §2B3.1(b)(7)(B). **+1**

57. **Victim Related Adjustment:** None. **0**

58. **Adjustment for Role in the Offense:** None. **0**

59. **Adjustment for Obstruction of Justice:** None. **0**

60. **Adjusted Offense Level (Subtotal):** **25**

61. **Chapter Four Enhancement:** None. **0**

62. **Acceptance of Responsibility:** The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels, pursuant to §3E1.1(a). **-2**

63. **Acceptance of Responsibility:** The defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level, pursuant to §3E1.1(b). **-1**

64. **Total Offense Level:** **22**

## PART B. THE DEFENDANT'S CRIMINAL HISTORY

65. Available information indicates that the defendant was represented by counsel in all matters resulting in conviction, unless otherwise noted. (Since 1965, the right to legal representation has been mandated by Article 18-B of the New York State Counties Law.)

**Juvenile Adjudication(s)**

66. None.

**Adult Criminal Conviction(s)**

| | Date of Arrest | Conviction/Court | Date Sentence Imposed/Disposition | Guideline | Pts |
|---|---|---|---|---|---|
| 67. | 6/3/92 (Age 16) | Attempted Criminal Possession of a Weapon - 3rd Deg./ Queens County Supreme Court, Jamaica, NY Ind. #2536-92 | 3/26/93: Adjudicated a Youthful Offender following a guilty plea; Sentenced to 5 years' probation<br><br>2/26/98: Probation revoked; Resentenced on a violation to 16 months to 4 years' imprisonment<br><br>7/6/00: Paroled | 4A1.1(a) 4A1.2(e)(1) | 3 |

11/6/01:
MED

According to correspondence received from the NYPD, the arrest record has been sealed due to the fact that this is a juvenile offense. Additionally, according to correspondence received from the New York City Probation Department in Queens County, NY, the prior presentence report and all related records have been purged due to the age of the case. Court records were requested from Queens County Supreme Court, but have not been received to date. As such, the specific details of this offense are unknown.

Parole records received did not include any information pertaining to this time period, but rather detail Dehoyos' most recent release to the New York State Division of Parole, which has been addressed in paragraph 70.

| | | | | | |
|---|---|---|---|---|---|
| 68. | 6/17/97 (Age 21) | Attempted Criminal Sale of a Controlled Substance - 3rd Deg./ Kings County Supreme Court, Brooklyn, NY Ind. #6725-97 | 10/24/97: Pleaded guilty<br>3/2/98: Sentenced to 1 year of imprisonment | 4A1.2(e)(3) | 0 |

According to the NYPD arrest report and criminal complaint, on June 17, 1997, at approximately 9:35 p.m., in front of 185 Wortman Avenue, Brooklyn, NY, the defendant and a separately charged individual sold a quantity of crack to an undercover police officer in exchange for a sum of U.S. currency. Court records received confirmed the disposition noted above.

| | | | | | |
|---|---|---|---|---|---|
| 69. | 4/17/02 (Age 25) | Shoplifting/ Jersey City Municipal Court, Jersey City, NJ Dkt. #S-02-1727 | 5/16/02: Pleaded guilty; Sentenced to 10 days' community service and payment of a $250 fine | 4A1.2(e)(3) | 0 |

According to information furnished by the U.S. Probation Office in the District of New Jersey, on April 17, 2002, at approximately 4:15 p.m., at a mall located in Jersey City, NJ, Dehoyos was apprehended for shoplifting by officers on patrol. No further details are known.

| | | | | | |
|---|---|---|---|---|---|
| 70. | 5/27/06 (Age 29) | Criminal Possession of a Weapon - 2nd Degree; Criminal Possession of a Firearm - 3rd Degree; and Criminal Possession of a Weapon - 4th Degree/ Kings County Supreme Court, Brooklyn, NY Ind. #04090-2006 | 6/14/07: Pleaded guilty<br><br>9/11/07: Sentenced to a total of 6 years' imprisonment and 5 years' post-release supervision<br><br>1/18/13: Paroled (maximum expiration date of 1/18/18) | 4A1.1(a) 4A1.2(e)(1) | 3 |

According to the NYPD arrest report and criminal complaint, on May 27, 2006, at approximately 4:06 p.m., in front of 634 Franklin Avenue, Brooklyn, NY, the defendant, using the name "Jamal K. Dehoyas," pulled out a loaded firearm in public and began to fire at an individual with the intent to cause serious physical harm and/or death. The defendant was apprehended by police officers who witnessed the shooting. Authorities recovered a loaded .40-caliber Taurus pistol with one live round in the chamber, one spent round, and eight rounds of ammunition inside the magazine of the gun. According to the presentence report prepared by the New York City Department of Probation, Dehoyos denied ownership of the gun and explained that he pleaded guilty in order to avoid "more [jail] time." Court records received confirmed the disposition noted above.

Dehoyos was released to the New York State Division of Parole on January 18, 2013. According to parole records received, in addition to the standard conditions of supervision, the defendant was required to adhere to the following special conditions: seek, obtain, and maintain employment; comply with all court orders; support dependent children; refrain from seeking a driver's license; comply with substance abuse testing, anger management, and a curfew established by the parole officer; and refrain from associating with gangs. Information indicates that Dehoyos exhibited a poor adjustment to supervision, whereby he failed to report as directed and ultimately absconded, sustained several re-arrests, and became involved with domestic disputes with several of his family members resulting in legal action.

According to a revocation specialist with the New York State Division of Parole, a warrant for the defendant's arrest was lodged on February 1, 2016, for failure to report after Dehoyos absconded. The defendant's final parole violation hearing was held at MCC New York on March 8, 2016, following his arrest on federal charges, during which he pleaded guilty to a 12-month sentence which expires on February 1, 2017. Although a national records check indicates that Dehoyos' term of parole supervision is set to expire on January 18, 2018, parole officials have advised that after taking into account all of the defendant's delinquency time, he will not be discharged from parole until July 21, 2020, at the earliest.

**Criminal History Computation**

71. The criminal convictions above result in a subtotal criminal history score of six.

72. The defendant committed the instant offense while on parole; therefore, two points are added, pursuant to §4A1.1(d).

73. The total criminal history score is eight. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of eight establishes a Criminal History Category of IV.

**Pending Charges**

| | Date of Arrest | Charge | Agency | Disposition |
|---|---|---|---|---|
| 74. | 2/5/14 (Age 37) | Aggravated Harassment - 2nd Degree (3 counts); Harassment - 2nd Degree; Equipment Violation; and Driving Without a Seatbelt | Queens County Criminal Court, Kew Gardens, NY Dkt. #2014QN006826 and 6827 | 2/6/14: Arraigned<br><br>4/3/14: Bench warrant issued (active); disposition pending |

According to the NYPD arrest report and criminal complaint, on February 5, 2014, at approximately 3:00 p.m., the defendant was arrested at the intersection of Archer Avenue and 160th Street in Jamaica, NY, while operating a 2012 Nissan automobile with tinted windows and not wearing a seatbelt. Dehoyos was transported to the 105th Precinct, located at 92-08 222nd Street, Queens Village, NY, were it was determined that he had an outstanding complaint on a harassment charge.

Specifically, several weeks prior on January 6, 2014, between 3:30 p.m. and 4:30 p.m., inside of 145-81 224th Street, Springfield Gardens, NY, the defendant's mother received several calls from Dehoyos on her cellular telephone, during which he allegedly threatened to harm her and the other members of the family if she did not give him money.

| | | | | |
|---|---|---|---|---|
| 75. | 2/6/14 (Age 37) | Aggravated Harassment - 2nd Degree (by Telephone); and Harassment - 2nd Degree | Brooklyn Criminal Court, Brooklyn, NY Dkt. # 2014KN009308 | 2/6/14: Arraigned<br><br>3/6/14: Bench warrant issued (active); disposition pending |

According to the NYPD arrest report, on February 6, 2014, at approximately 12:52 p.m., the defendant was arrested at the 70th Precinct, located at 154 Lawrence Avenue, Brooklyn, NY, after being arraigned on harassment charges in Queens County Criminal Court. Information indicates that a complaint was filed on March 23, 2013, alleging that Dehoyos called a female victim more than 30 times and left her threatening voicemail messages and texts. Court records were requested from Brooklyn Criminal Court, but have not been received to date.

**Miscellaneous**

76. According to a national criminal records check, the defendant has two temporary protections orders against him which were issued on March 6, 2014, and April 3, 2014, and do not have a date of expiration noted. Information indicates that while the first aforementioned order is "subject to Supreme and/or Family Court orders regarding issues of custody and visitation," the latter order was issued to Dehoyos' mother and prohibits him from communicating with or, among other things, threatening or harassing her in any way. Both orders preclude the defendant from possessing and/or purchasing a firearm. It is noted that Dehoyos was also the subject of several cleared temporary orders of protection.

77. Dehoyos reported that he possessed a valid New York State driver's license at the time of his arrest; however, according to information furnished by the New York State Department of Motor Vehicles, there is no licensing information on file pertaining to him.

## PART C. OFFENDER CHARACTERISTICS

### Personal and Family Data

78. Jamal Kareem Dehoyos was reportedly born on June 1, 1976, in Brooklyn, NY, to the marital union of Ernesto Francisco Dehoyos, age 65, and Maria Dehoyos, nee Cross, age 65. The defendant stated that his parents are both natives of Panama who immigrated to the U.S. when his father joined the U.S. Army at the age of 20 and his mother was only 17 years old; they both subsequently became naturalized U.S. citizens. Dehoyos informed that his father ultimately went AWOL from the military and succumbed to "street life;" the defendant has never maintained regular contact with him and they last spoke in 2013. The defendant's mother resides in a rented house located at 145-81 224th Street, Springfield Gardens, NY. Dehoyos informed that he has not spoken to his mother since his arrest. According to the defendant, both of his parents previously suffered from brain aneurysms, but fully recovered and are in good health to his knowledge.

79. The defendant reported the following biological siblings: Tyrone Dehoyos, age 38, a co-defendant in the instant offense who is also awaiting sentencing; Krystal Dehoyos, age 32, who resides in Springfield Gardens, NY, and works as a home attendant; and Tiffany Dehoyos, age 30, who lives in Flushing, NY, and is employed by the U.S. Post Office. Additionally, the defendant informed that his father has approximately 10 other children, ranging in age from 11 to adulthood, as a result of various prior consensual relationships.

80. Dehoyos described a tumultuous childhood, beginning when he was five years old and his father was sentenced to a five-year term of incarceration for promoting prostitution. The defendant stated that his father was a "pimp" who introduced Dehoyos' mother to drugs, including crack and cocaine, and also forced her into prostitution. Dehoyos stated that because his parents were absent from the home most of the time, he was left to fend for his younger siblings as the oldest of the group. The defendant related that he and his siblings oftentimes lacked even the basic necessities, whereby all of their parents' earnings were used to purchase drugs. Dehoyos recalled that his father at one time sold their television in order to acquire funds for narcotics. The defendant explained that the abuse from his parents came in the form of neglect.

81. The defendant's childhood home was located at 240 Cozine Avenue, Apartment #5D, a unit contained in the "Linden Houses," a low-income housing development situated in the East New York section of Brooklyn. Dehoyos informed that other than a two-year period of time when he was sent to Panama between the ages of 8 and 10, he has always lived in Brooklyn, NY.

82. The defendant reported that his maternal grandmother, Susana Cross, a former nurse at New York Presbyterian Hospital in New York, NY, who is now deceased, knew about the goings-on in their household and maintained a presence in their lives; however, she was "powerless to stop it." Dehoyos informed that during a period of time when his father was in jail or otherwise absent, a maternal uncle lived with their family. He was reportedly a bad influence with a prior criminal record, and was both physically and mentally abusive towards Dehoyos and his siblings. The defendant cites his uncle as the reason why he left home at the age of 13 and resorted to criminal activity. Dehoyos informed that he was raised in the Catholic faith; however, parole records obtained revealed that he subsequently converted to Islam.

83. Dehoyos reported no martial history and he is not currently involved in a romantic relationship.

84. The defendant reported one child, namely Tahjanae Dehoyos, age 20, who resides in Brooklyn, NY, attends college courses through an online curriculum, and works as a home attendant. Dehoyos explained that he was "high school sweethearts" with Tahjanae's mother, Latisha Powell, a 41-year-old teacher, but that they broke up two years after the birth of their daughter due to his prior legal problems. Tahjanae is reported to be in good health.

85. From May 2006 to January 2013, the defendant was incarcerated with the New York State Department of Corrections in connection with a prior criminal conviction. The defendant reported that while on parole supervision from January 2013 until his arrest in the instant offense in February 2016, he lived with his daughter in a rented apartment located at 590 Elton Street, Apartment #1B, Brooklyn, NY, where she continues to reside. The defendant informed that his daughter is the leaseholder for the residence and that the monthly rent payment is $975.

86. According to parole records and contrary to the defendant's statements, Dehoyos was initially released to his mother's residence, located at 145-81 224th Street, Springfield Gardens, NY. After absconding and following a series of domestic disputes with his parents, information indicates that the defendant moved into his sister Tiffany's residence, a rented apartment located at 154-05 71st Avenue, Apartment #6B, Flushing, NY; that is the last reported address on file for Dehoyos. As the defendant is facing a significant term of imprisonment and it is unclear where he will be residing upon his release, a home inspection has not been conducted.

87. Dehoyos related that his entire family is aware of his current legal situation and has been emotionally supportive. The defendant stated that his daughter visits him regularly at the correctional facility, and that he also maintains regular telephone contact with his sisters.

88. On September 8, 2016, Tahjanae Dehoyos was interviewed via telephone, during which time the defendant's daughter described her father as a "good person," who is reliable, fun to be around, and someone who would "never hurt anyone." Ms. Dehoyos stated that she was surprised to learn of her father's arrest and believes that her uncle, co-defendant Tyrone Dehoyos, "set [the defendant] up" by asking her father for a ride; she maintains that the defendant had no knowledge of the planned robbery. Ms. Dehoyos expressed anger towards her uncle, whom she blames for her father's arrest and stated that the legal situation has caused dissention in their family. The defendant's daughter informed that she was forced to quit school following Dehoyos' incarceration in order to acquire a second job to "make ends meet." In addition to working as a part-time home attendant, Ms. Dehoyos stated that she is also employed at a group home, where she works with adults who have "special needs."

89. During the course of the telephone interview, the defendant's daughter provided contradictory information to that which was reported by Dehoyos during the presentence interview. Specifically, while Ms. Dehoyos initially reported that her father resided with her in Brooklyn, NY, during the entirety of his release on parole supervision prior to his arrest, when confronted with the information furnished by parole authorities, she admitted that her father previously resided with her grandmother and aunt in two separate residences in Queens County, NY. According to the defendant's daughter, Dehoyos has another child whom he did not disclose during the presentence interview, namely Tyler Dehoyos, age 13, who resides with her mother in Brooklyn, NY; the defendant is reportedly no longer romantically involved with Tyler's mother. Although the defendant reported himself to be in good health during the presentence interview, Ms. Dehoyos maintains that her father currently suffers from unspecified medical conditions afflicting his heart and liver, which he developed in jail. Additionally, while the defendant reported an extensive substance abuse history, his daughter was adamant that Dehoyos never abuse drugs or alcohol. Finally, while the defendant reported that he worked as a boiler repairman while on parole supervision for the three years prior to his arrest, Ms. Dehoyos stated that he was employed at a local deli and as a part-time babysitter for his sister's children.

**Physical Condition**

90. The defendant stands 6'1" tall, weighs 250 pounds, and he has brown eyes and shaved head. Dehoyos wore a mustache and a goatee during the presentence interview, and he exhibited the following tattoos: the name of his daughter with a cross and the year of her birth (1996), the names of his parents and grandmother, and a skeleton, all located on his right arm; a depiction of a Black Jesus Christ on his back; and the phrase "laugh now, cry later" on his chest.

91. Dehoyos exhibited a five-inch scar on his left leg, which was reportedly incurred when his uncle pushed him down into a manhole grate when the defendant was 13 years old in 1989. The defendant was reportedly treated for the injury at Kings County Hospital in Brooklyn, NY. Medical records have been requested and are awaited.

92. The defendant reported no history of serious illnesses or medical conditions. Additionally, he is not presently under the care of a doctor or taking any prescription medication. Dehoyos appeared to be healthy based upon outward appearance.

**Mental and Emotional Health**

93. Dehoyos reported no history of mental or emotional problems, and he has never been treated for such problems. The defendant appeared alert and cooperative during the presentence interview, responding appropriately to all inquiries.

94. While incarcerated at MCC New York, the defendant has reportedly completed several self-study courses on various topics in the library at the correctional facility. He is also reportedly on the waiting list for the Residential Drug Abuse Treatment Program (RDAP), and has a job in food services which pays $20 per month. Dehoyos related that he has also voluntarily intervened in attempted suicides at the jail, during which he stopped two inmates from trying to hand themselves in their cells. Defense counsel advised that the Probation Office would be furnished with a letter of verification upon receipt from MCC, as well as copies of certificates which Dehoyos has earned to date, all of which is awaited.

**Substance Abuse**

95. The defendant admittedly first smoked marijuana at the age of 13 in 1989, and with the exception of prior periods of incarceration, continued to use it daily through his arrest in the instant offense in February 2016. Dehoyos explained that he initially tried one of his father's "joints" and then was encouraged to use it by his uncle, whereby drugs were routinely smoked in the defendant's home during his upbringing.

96. Dehoyos stated that he tried cocaine on one occasion at the age of 20 in 1996, while socializing with friends. While the defendant was unable to describe its exact effects, he stated that he did not like cocaine and stopped using it because of the way it has adversely affected the lives of his parents.

97. The defendant stated that he used Molly (also known as MDMA and Ecstasy) as a sexual stimulant from 2013 until his arrest in February 2016. Dehoyos explained that after serving six years in jail, he engaged in an "active romantic life" following his release.

98. Dehoyos informed that he only consumed alcohol occasionally while out at a bar or party. The defendant stated that he typically drank two-to-three glasses of the cognac Hennessy per outing. Dehoyos reported no prior history of excessive alcohol consumption.

99. While previously incarcerated with the New York State Department of Corrections at varying times, the defendant reportedly attended and completed the Alcohol and Substance Abuse Treatment (ASAT) program in both 1999 and 2012. Dehoyos informed that subsequently, while last on parole supervision between 2013 and 2016, he attended and completed an out-patient substance abuse treatment program at the Center for Community Alternatives, located in Brooklyn, NY. The defendant informed that the program consisted of both group and individual counseling. According to treatment records furnished by the facility, Dehoyos completed intake on May 22, 2013, but was only scheduled to attend weekly anger management meetings, as opposed to the "Crossroads for Men" drug treatment program. The defendant's last day of attendance was August 15, 2013.

100. As the defendant is incarcerated, a urinalysis was not conducted.

**<u>Educational, Vocational and Special Skills</u>**

101. Dehoyos reported that he previously attempted to acquire his GED while incarcerated with the New York State Department of Corrections, but lost his spot on the waiting list when he sustained an unspecified disciplinary sanction.

102. As verified by school records, from February 26, 1992, to November 18, 1993, the defendant attended Samuel J. Tilden High School, located in Brooklyn, NY, and completed a portion of the ninth grade before being discharged. Contrary to school records, Dehoyos reported completing the ninth through a portion of the 11th grade, before quitting school when his uncle dragged him into "street life." Information indicates that the defendant earned a cumulative average of 49-percent during his matriculation.

103. Dehoyos reported that from 1988 to 1991, he attended and graduated from George Gershwin Junior High School, located in Brooklyn, NY, following completion of the seventh and eighth grades. Correspondence received from the school indicates that the defendant was never a matriculating student, and no specific information regarding his junior high school of record was furnished.

104. As verified by school records, from September 10, 1981, to March 9, 1987, the defendant attended and graduated from Public School #306, located in Brooklyn, NY, following completion of kindergarten through sixth grade. No further information is known.

105. In terms of specialized training or skills, Dehoyos informed that he acquired knowledge of plumbing, heating, and boiler repair while incarcerated with the New York State Department of Corrections. Additionally, the defendant is bilingual and fluent in both Spanish and English.

**Employment Record**

106. From approximately May 2006 to January 2013, the defendant was incarcerated with the New York State Department of Corrections in connection with a prior criminal conviction.

| | Start Date | End Date | Employer | Gross/Other Monthly Income | Hours/ Week |
|---|---|---|---|---|---|
| 107. | 1/1/13 | 2/24/16 | Fixed Right Brooklyn, NY | $1,950.00 | 40 |

Dehoyos reported that from 2013 until his arrest on February 24, 2016, he was employed as a boiler repairman at "Fixed Right," located at 500 Park Place, Brooklyn, NY. The defendant stated that he worked full-time and completed residential job assignments in Brooklyn and Queens County, NY, as well as on Long Island, for which he earned between approximately $450 and $4,500 per week. As a listing could not be found for this business using a "Yellow Pages" search, the request for employment records was sent to the address provided by Dehoyos; however, it was ultimately returned to the Probation office as "undeliverable."

108. The defendant reported no prior employment history.

**Financial Condition: Ability to Pay**

109. Dehoyos reported no assets or liabilities. The defendant reported that he was financing a 2012 Nissan Maxima prior to his arrest; however, it was subsequently seized by law enforcement authorities. As Dehoyos is incarcerated, he has no monthly income or expenses.

110. An Equifax credit report dated July 18, 2016, revealed one charged-off installment account with an outstanding balance of $9,233.

111. An IRS check for the years 2013 to 2015, revealed that the defendant has not filed federal income tax returns.

## PART D. SENTENCING OPTIONS

### Custody

112. **Statutory Provisions:** The maximum term of imprisonment is 20 years, pursuant to 18 USC 1951.

113. **Guideline Provisions:** Based upon a total offense level of 22 and a Criminal History Category of IV, the guideline imprisonment range is 63 to 78 months.

### Impact of Plea Agreement

114. The plea agreement does not take into account a Youthful Offender conviction sustained by the defendant for Attempted Criminal Possession of a Weapon in the Third Degree, which has been assessed three criminal history points. As such, the Probation Office has calculated a total of eight criminal history points, which results in a Criminal History Category of IV, as opposed to a total of five points and a Criminal History Category of III, which was stipulated by the parties.

### Supervised Release

115. **Statutory Provisions:** The Court may impose a term of supervised release of not more than three years, pursuant to 18 USC 3583(b)(2).

116. **Guideline Provisions:** Since the offense is a Class C Felony, the guideline range for a term of supervised release is one to three years, pursuant to §5D1.2(a)(2).

### Probation

117. **Statutory Provisions:** The defendant is eligible for not less than one nor more than five years' probation because the offense is a Class C Felony, pursuant to 18 USC 3561(c)(1).

118. **Guideline Provisions:** Since the applicable guideline range is in Zone D of the Sentencing Table, the defendant is ineligible for probation, pursuant to §5B1.1, comment.(n.2).

### Fines

119. **Statutory Provisions:** The maximum fine is $250,000, pursuant to 18 USC 3571(b). A special assessment of $100 is mandatory, pursuant to 18 USC 3013.

120. **Guideline Provisions:** The fine range for this offense is from $7,500 to $75,000, pursuant to §5E1.2(c)(3) and §5E1.2(h)(1).

121. Costs of prosecution shall be imposed on the defendant as required by statute, pursuant to §5E1.5. In determining whether to impose a fine and the amount of such fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed, pursuant to §5E1.2(d)(7) and 18 USC 3572(a)(6). These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. The most recent advisory from the Administrative Office of the United States Courts, dated June 16, 2015, provides the following monthly cost data:

| | **Bureau of Prisons Facilities** | **Community Correction Centers** | **Supervision by Probation Officer** |
|---|---|---|---|
| Daily | $84.00 | $79.00 | $11.00 |
| Monthly | $2,552.00 | $2,417.00 | $326.00 |
| Annually | $30,621.00 | $28,999.00 | $3,909.00 |

**Restitution**

122. **Statutory Provisions:** Pursuant to 18 USC 3663A, restitution in the total amount of $36,000 is owed to Martin Jewelers and shall be ordered in this case. Payments should be forwarded as follows:

Martin Jewelers
12 N Avenue W
Cranford, NJ 07016
Attn: Ellen Ramer, Owner
(Business ph.) 908-276-6718
Re: Jamal Dehoyos
Dkt. #S4 14 CR 130 (LAP)

123. **Guideline Provisions:** Restitution shall be ordered, pursuant to §5E1.1.

**Forfeiture**

124. As a result of committing the offense alleged in Count 1 of the Indictment, the defendant shall forfeit to the U.S., pursuant to 18 USC1963(a)(1), (a)(2), and (a)(3), all property that constitutes or was derived from proceeds traceable to the commission of the offense.

125. Pursuant to Rule 32.2, "[t]he Court must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture at sentencing. The Court must also include the forfeiture order, directly or by reference, in the judgment."

**PART E. FACTORS THAT MAY WARRANT DEPARTURE**

126. The probation officer has not identified any factors that would warrant a departure from the applicable sentencing guideline range.

**PART F. FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM**

127. The probation officer has not identified any factors that would warrant a sentence outside of the advisory guideline range.

Respectfully Submitted,

Michael J. Fitzpatrick
Chief U.S. Probation Officer

Stephanie M. McMahon

By: Stephanie M. McMahon
USPO

Approved:

9.12.16

Thomas J. McCarthy
SUSPO

**ADDENDUM TO THE PRESENTENCE REPORT**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
**UNITED STATES V. JAMAL DEHOYOS, DKT. 0208 1:14CR00130-011 (LAP)**

**REVISIONS**

1. The Facesheet and paragraph 18 now reflect the current sentence date.

2. Paragraph 49 now indicates that a victim impact statement has not been received.

3. Paragraph 67 has been amended to indicate that criminal history records were unable to be obtained.

4. Paragraph 88 has been amended and paragraph 89 has been added to include the details of a collateral interview conducted with the defendant's daughter.

5. Paragraphs 124 and 125 have been added to include the forfeiture provisions.

**OBJECTIONS**

**By the Government**

The Government does not have any objections.

**By the Defendant**

Defense counsel advised that objections to the presentence report would be provided by September 9, 2016; however, no information has been received to date.

Respectfully Submitted,

Michael J. Fitzpatrick
Chief U.S. Probation Officer

Stephanie M. McMahon

By: Stephanie M. McMahon
USPO

Approved:

9-12-16

Thomas J. McCarthy
SUSPO

## SENTENCING RECOMMENDATION

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
UNITED STATES V. JAMAL DEHOYOS, DKT. 0208 1:14CR00130-011 (LAP)**

| | |
|---|---|
| **TOTAL OFFENSE LEVEL** | **22** |
| **CRIMINAL HISTORY CATEGORY** | **IV** |

| | Statutory Provisions | Guideline Provisions | Recommended Sentence |
|---|---|---|---|
| **CUSTODY:** | 20 years maximum | 63 to 78 months | **63 months** |
| **SUPERVISED RELEASE:** | 3 years maximum | 1 to 3 years | **3 years** |
| **PROBATION:** | 1 to 5 years | Ineligible | **Not Recommended** |
| **FINE:** | $250,000 maximum | $7,500 to $75,000 | **Not Recommended** |
| **RESTITUTION:** | $36,000 | $36,000 | **$36,000** |
| **FORFEITURE:** | Unspecified | Unspecified | **Unspecified** |
| **SPECIAL ASSESSMENT:** | $100 | $100 | **$100** |

**Justification:**

Jamal Dehoyos stands before the Court awaiting sentence after having been convicted of Conspiracy to Commit Hobbs Act Robbery.

The instant offense represents the defendant's fifth criminal conviction. Dehoyos has previously been convicted of Attempted Criminal Possession of a Weapon (twice), Attempted Criminal Sale of a Controlled Substance, and Shoplifting. The defendant was on parole supervision at the time of the instant offense, after having served a six-year term of imprisonment in connection with his last weapon offense; Dehoyos was in possession of a loaded firearm, which he was observed firing at an individual.

According to information obtained from the New York State Division of Parole, Dehoyos exhibited a poor adjustment to supervision, whereby he failed to report as directed and ultimately absconded, sustained several re-arrests, and became involved with domestic disputes with several of his family members resulting in legal action. The defendant's final parole violation hearing was held following his arrest on federal charges, during which he pleaded guilty to a 12-month sentence which expires on February 1, 2017.

Additionally, Dehoyos currently has cases pending in both Queens County Criminal Court and Brooklyn Criminal Court, both of which involve charges of aggravated harassment. Bench warrants were issued in each case, which remain active, and the dispositions are pending.

In the instant offense, Dehoyos and several other co-conspirators, including his brother Tyrone Dehoyos, committed a series of robberies of jewelry stores across several states, including New York, New Jersey, and Virginia. The offense caused at least $1,091,000 in losses to five victim retailers, and in one instance a victim was subdued with a stun gun and sustained bodily injury.

The defendant's conduct was limited to participation in one robbery that took place on January 9, 2014, at Martin Jewelers in Cranford, NJ, during which approximately $36,000 worth of high-end watches were stolen. While a hammer was used to smash the display cases in the jewelry store, no weapons were used against the store employees or customers, or threats made against them, and no injuries were sustained. Additionally, no individuals were restrained during the course of the offense. Dehoyos served as a driver who was present during the robbery and his car was identified as one of the vehicles used during the course of the crime. The defendant did not enter the store during the robbery.

Although the defendant declined to make a statement during the presentence interview, it appears that he was motivated by monetary gain. According to Dehoyos' daughter, her uncle and co-defendant Tyrone Dehoyos, asked her father for a ride on the day of the crime and she maintains that he had no knowledge of the planned robbery.

Jamal Dehoyos is 40 years old and has a ninth grade education. The defendant reported that prior to his arrest, he resided with his 20-year-old daughter in a rented apartment in Brooklyn, NY, and worked as a boiler repairman. According to parole records, Dehoyos was last living with his sister in Queens County, NY. Additionally, Dehoyos' daughter informed that her father was working at a local deli and also earned income as a part-time babysitter.

We believe that a sentence of imprisonment as contemplated by the guidelines is appropriate in this case in light of the violent nature of the offense, albeit the defendant only participated in one of the five robberies and his role was limited to that of a driver. Dehoyos is not a first-time offender, whereby he has a history of prior felony offenses beginning at the age of 16. The defendant was on parole supervision following service of his most lengthy sentence to date (six years' imprisonment) when he was arrested for his involvement in the instant offense. It is clear that his proclivity to engage in criminal activity has been unaffected by significant punishments thus far, and he has exhibited a poor adjustment to community-based supervision. The seriousness of the offense, as well as the substantial losses and harm caused to the victims cannot be overlooked.

As such, we respectfully recommend a sentence of 63 months' imprisonment to be followed by three years' supervised release. We hope that this sentence will serve to provide adequate punishment, protection of the community, and deterrence of future criminal activity, as well as to monitor the defendant upon his return to the community. The defendant is also required to pay the mandatory $100 special assessment and joint and several restitution in the amount of $36,000, as well as comply with an unspecified forfeiture order. As the offense involved the theft and possession of stolen property, we believe that a search condition is appropriate. Additionally, special financial conditions have also been recommended in order to monitor the payment of criminal monetary penalties imposed at sentencing.

*Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, for offenses committed after September 13, 1994, the court shall require that all offenders on probation, parole, or supervised release submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 USC 3563 (a) (5) / 3583 (d).*

**Drug Risk Analysis**

Dehoyos reported a long-term addiction to marijuana, as well as prior use of other drugs including cocaine and Ecstasy, prior to his arrest. As such, we believe that the defendant poses a significant risk of future substance abuse and recommend a special condition of substance abuse treatment and testing.

**Recommendation**

We respectfully recommend that Your Honor impose a sentence of 63 months' imprisonment to be followed by three years' supervised release.

**Mandatory Conditions**

If a period of probation/supervised release is ordered, the following conditions are mandatory:

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

The defendant shall not possess a firearm or destructive device.

The mandatory drug testing condition is suspended due to imposition of a special condition requiring drug treatment and testing.

The defendant shall cooperate in the collection of DNA as directed by the probation officer.

**Standard and Special Conditions**

The standard conditions of supervision (1-13) are recommended with the following special conditions:

The defendant will participate in an outpatient treatment program approved by the United States Probation Office, which program may include testing to determine whether the defendant has reverted to using drugs or alcohol. The defendant shall contribute to the cost of services rendered based on the defendant's ability to pay and the availability of third-party payments. The Court authorizes the release of available drug treatment evaluations and reports, including the presentence investigation report, to the substance abuse treatment provider.

The defendant shall submit his/her person, residence, place of business, vehicle, and any property or electronic devices under his control to a search on the basis that the probation officer has reasonable suspicion that contraband or evidence of a violation of the conditions of the defendant's probation/supervised release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the installment payment schedule.

The defendant shall provide the probation officer with access to any requested financial information.

The defendant is to report to the nearest Probation Office within 72 hours of release from custody.

If the defendant is sentenced to any period of supervision, it is recommended that the defendant be supervised by the district of residence.

**Special Assessment**

It is further ordered that the defendant shall pay to the United States a special assessment of $100, which shall be due immediately.

**Restitution**

Restitution in the amount of $36,000 is owed to Martin Jewelers, for which Dehoyos is jointly and severally liable. Payments should be forwarded as follows:

Martin Jewelers
12 N Avenue W
Cranford, NJ 07016
Attn: Ellen Ramer, Owner
(Business ph.) 908-276-6718
Re: Jamal Dehoyos
Dkt. #S4 14 CR 130 (LAP)

If the defendant is engaged in a BOP non-UNICOR work program, the defendant shall pay $25 per quarter toward the criminal financial penalties. However, if the defendant participates in the BOP's UNICOR program as a grade 1 through 4, the defendant shall pay 50% of his monthly UNICOR earnings toward the criminal financial penalties, consistent with BOP regulations at 28 C.F.R. 545.11.

The balance of the restitution shall be paid in monthly installments of 20-percent of gross monthly income over a period of supervision to commence 30 days after the date of the judgment or the release from custody if imprisonment is imposed.

No further payment shall be required after the sum of the amounts actually paid by all defendants has fully covered all of the compensable injuries. Any payment made by the defendant shall be divided among the persons named in proportion to their compensable injuries.

The defendant shall notify the United States Attorney for this district within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

**Fines**

In light of the outstanding restitution obligation and unspecified forfeiture order, which will serve to disgorge the defendant of any ill-gotten gains, we do not believe that he has the ability to pay an additional fine and recommend that it be waived. The factors in 18 USC 3572 were considered in formulating this recommendation.

**Forfeiture**

The defendant shall forfeit his interest in the following property to the United States:

All property that constitutes or was derived from proceeds traceable to the commission of the offense.

Pursuant to Rule 32.2, "[t]he Court must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture at sentencing. The Court must also include the forfeiture order, directly or by reference, in the judgment."

**Voluntary Surrender**

The defendant has been detained without bail since his arrest on February 24, 2016. He is not a candidate for voluntary surrender because of the provisions found in 18 USC 3143(a)(2).

Respectfully Submitted,

Michael J. Fitzpatrick
Chief U.S. Probation Officer

By: Stephanie M. McMahon
USPO

Approved:

9.12.16

Thomas J. McCarthy
SUSPO